FILED
JUL 03 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULA BIRD, *et al.*,

        Plaintiffs,

        v.

WILLIAM BARR,

        Defendant.

Civil Action No. 19-cv-1581

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION AND ORDER

Eleven of the sixteen plaintiffs in this lawsuit have filed a third motion to proceed under pseudonyms in their instant suit against the Department of Justice alleging, individually and on behalf of a class of female New Agent Trainees and Intelligence Analyst Trainees, violations by the Federal Bureau of Investigation ("FBI") of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, *et seq. See* Compl. ¶ 1. The plaintiffs' original motion to proceed under pseudonyms was denied on June 6, 2019, because the moving plaintiffs failed to provide sufficient detail to assess the privacy interests at stake and therefore failed to meet their burden of showing that those privacy interests outweighed the public's presumptive and substantial interest in knowing the details of judicial litigation. *See* Memorandum & Order, *Bird v. Barr*, 19-cv-1581 (D.D.C. June 6, 2019) at 4–5, ECF No. 3. All sixteen plaintiffs, were, however, permitted to seal their home addresses in light of their "risk of being targeted for threats of violence or retaliation from subjects of [an] investigation." *Id.* at 8 (internal quotation marks and citation omitted). The plaintiffs' second motion to proceed under pseudonyms was also denied on June 26, 2019. *See* Min. Order (June 26, 2019) (noting that

1

second motion appeared to be in "draft" form, with the majority of supporting declarations undated and unsigned, with attempts to reach counsel telephonically unsuccessful).

The moving plaintiffs' third motion supplies additional facts, supported with sworn declarations, concerning each plaintiff's reasons for seeking to proceed under a pseudonym. Each moving plaintiff, with the exception of L.M., highlights the concomitant risks posed to her safety and career in law enforcement and intelligence agencies, and potential operations of those agencies, should her name, position, location, and other personal details be made publicly available. For the reasons set forth below, the moving plaintiffs' motion is granted in part and denied as to L.M., subject to any further consideration by the United States District Judge to whom this case is randomly assigned.[1]

## I. BACKGROUND

The plaintiffs allege that, since April 10, 2015 and continuing to the present, while attending the FBI's Training Academy in Quantico, Virginia, they were sexually harassed, subjected to a hostile work environment and outdated gender stereotypes, terminated, constructively discharged, or otherwise subjected to retaliation in whole or in part because of their gender or disability. Compl. ¶ 1. Eight of the eleven moving plaintiffs seeking to proceed under pseudonyms currently work in law enforcement or the intelligence communities and fear that disclosure of their identities will put their safety at risk, damage their reputation at work, inhibit their ability to complete undercover assignments or other investigations in which their true identities must be shielded, possibly jeopardizing the success of such assignments and investigations, or will violate policies requiring that their work and/or identities be kept confidential. *See* Pls.' Mem. Supporting Mot. to Proceed

---

[1] Under Local Civil Rule 40.7(f), the Chief Judge "shall . . . hear and determine . . . motion[s] to file a pseudonymous complaint." LCvR 40.7(f).

2

Anonymously ("Pls.' Mem.") at 6–9. Further, the plaintiffs allege that two of the named plaintiffs in this case have already been retaliated against for their participation in this lawsuit, including one plaintiff who has been threatened with dismissal, and that they therefore have a reasonable fear of retaliation if their names are exposed. *See id.* at 2–5.

## II. LEGAL STANDARD

Generally, a complaint must state the names of the parties and address of the plaintiff. FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties."); LCvR 5.1(c)(1) ("The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party," and "[f]ailure to provide the address information within 30 days of filing may result in the dismissal of the case against the defendant."); LCvR 11.1 (same requirement as LCvR 5.1(c)(1)). These rules promote the public's interest "in knowing the names of [ ] litigants" because "disclosing the parties' identities furthers openness of judicial proceedings," *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014); *see also Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992) (per curiam) ("This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties."). Thus, the D.C. Circuit has instructed that "parties to a lawsuit must typically openly identify themselves in their pleadings," with "[b]asic fairness dictat[ing] that those among the defendants' accusers who wish to participate . . . as individual party plaintiffs must do so under their real names." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463–64 (D.C. Cir. 1995) (per curiam) (internal quotation marks and citations omitted, alteration in original).

The reasons that public disclosure of litigants' identities is generally required include that "[p]ublic openness may cause all trial participants to perform their duties more

3

conscientiously," *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.* ("*OPM Breach Litig.*"), No. 17-5217, 2019 WL 2552955, at *28 (D.C. Cir. June 21, 2019) (Williams, J., concurring in part and dissenting in part) (internal quotation marks and citations omitted); such openness "induce[s] unknown witnesses to come forward with relevant testimony," *id.* (internal quotation marks and citation omitted); requiring parties to disclose their identities "foster[s] an appearance of fairness, thereby heightening respect for the judicial process," *id.* (internal quotation marks and citation omitted); and disclosure of litigants' identities is "a matter of 'basic fairness,'" *id.* (quoting *Microsoft Corp.*, 56 F.3d at 1463 (alteration omitted), because a "case brought anonymously can let a winning plaintiff inflict 'disgrace' on a defendant and can let a losing plaintiff launch defamatory charges 'without shame or liability,'" *id.* (quoting *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005)), creating a "structural asymmetry that can tilt the scales unfairly," *id.*

Notwithstanding these good reasons for public openness about litigants' identities, "a district court has discretion to 'grant the 'rare dispensation' of anonymity against the world,'" *id.* (quoting *Microsoft Corp.*, 56 F.3d at 1464 (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993))), and the Federal Rules recognize that privacy protections may be necessary for filings made with the Court. Specifically, in 2007, Federal Rule of Civil Procedure 5.2 was adopted in response to the E-Government Act of 2002, which "requires the Supreme Court to prescribe rules 'to protect privacy and security concerns relating to electronic filing of documents and the public availability . . . of documents filed electronically.'" FED. R. CIV. P. 5.2, Adv. Comm. Note (2007) (quoting Pub. L. No. 107-347, § 205(c)(3)). To this end, Rule 5.2, for example, requires, "[u]nless the court orders otherwise," that certain personal information be redacted as well as that only a "minor's initials" be used, FED. R. CIV. P.

5.2(a)(1)–(4), and further authorizes the court, "[f]or good cause," to issue a protective order that "require[s] redaction of additional information" or restricts "a nonparty's remote electronic access to a document filed with the court," *id.* 5.2(e).

Courts have employed two different but analogous multi-factor tests in determining whether a party may be permitted "to proceed anonymously" by evaluating whether "the impact of the plaintiff's anonymity" outweighs "the public interest in open proceedings" and the "fairness to the defendant." *Nat'l Ass'n of Waterfront Emp'rs v. Chao* ("*Chao*"), 587 F. Supp. 2d 90, 99 (D.D.C. 2008) (RMC). The first test consists of the six factors set forth in *United States v. Hubbard*, 650 F.2d 293, 317–21 (D.C. Cir. 1980):

> (1) the need for public access to the documents at issue; (2) the extent to which the public had access to the document prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purpose for which the documents were introduced.

*Doe v. CFPB* ("*Doe I*"), No. 15-cv-1177 (RDM), 2015 WL 6317031, at *2 (D.D.C. Oct. 16, 2015). In other cases, a "five-part test to balance the concerns of plaintiffs seeking anonymity with those of defendants and the public interest" has been applied. *Eley v. District of Columbia*, No. 16-cv-806 (BAH), 2016 WL 6267951, at *1 (D.D.C. Oct. 25, 2016). These five factors, drawn from *James*, 6 F.3d at 238, are:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Chao*, 587 F. Supp. 2d at 99 (citing *Yacovelli v. Moeser*, No. 1:02CV596, 2004 WL 1144183, at *6–8 (M.D.N.C. May 20, 2004) (quoting *James*, 6 F.3d at 238)); *Roe v. Doe*, No.

5

18-cv-666 (CKK), 2019 WL 1778053, *2 (D.D.C. Apr. 23, 2019); *Doe v. Teti*, No. 15-mc-01380 (RWR), 2015 WL 6689862, at *2 (D.D.C. Oct. 19, 2015); *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 96 (D.D.C. 2015) (TSC); *Doe v. U.S. Dep't of State*, No. 15-cv-01971 (RWR), 2015 WL 9647660, at *2 (D.D.C. Nov. 3, 2015); *Doe v. Cabrera*, 307 F.R.D. 1, 5 (D.D.C. 2014) (RBW).

The *James* and *Hubbard* factors address the same general concerns regarding the "[s]trength of the [g]eneralized [p]roperty and [p]rivacy [i]nterests" involved and "the possibility of prejudice" to those opposing disclosure. *Hubbard*, 650 F.2d at 320–21. Thus, in exercising discretion "to grant the rare dispensation of anonymity . . . the court has 'a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted' . . . tak[ing] into account the risk of unfairness to the opposing party, as well the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Microsoft Corp.*, 56 F.3d at 1464 (quoting *James*, 6 F.3d at 238 (other internal citations and quotation marks omitted)); *see also OPM Breach Litig.*, 2019 WL 2552955, at *29 (Williams, J., concurring in part and dissenting in part) (the district court must "conduct[] an inquiry into whether the circumstances justify an 'extraordinary break' with the normal method of proceeding—openly—in federal court" (quoting *Microsoft Corp.*, 56 F.3d at 1464)).[2]

---

[2] Concern has been expressed about "a trend permitting adult plaintiffs to litigate incognito, with little more than pro-forma gatekeeping, if any, by the district courts," *OPM Breach Litig.*, 2019 WL 2552955, at *28 (Williams, J., concurring in part and dissenting in part), bolstered by the observation that, in comparison to a period of time before the advent of the Internet, "[j]ust last year, in this district alone, at least six published district court decisions featured 'John Doe' as the lead or sole plaintiff. . . . to say nothing of the twenty or so other orders that permitted Doe and the like to (anonymously) level accusations against others; many of those orders were sealed or lacked any reasoning at all," *id.* at *29 (footnotes omitted). Review of publicly available orders cited as examples of those lacking reasoning, *see id.* at *29 n.3, reveals that the basis for the order is amply explained in the supporting motion, which was, in some cases, unopposed. *See, e.g.*, Pls.' Unopposed Mot. to Proceed Under Pseudonyms, *Dora v. Sessions*, 18-cv-1938 (PLF/RC) at 4–6, ECF No. 1 (D.D.C. Aug. 17, 2018) (citing the "intractably intertwined" privacy interests of a minor child who is seeking asylum and the child's parents and pointing to the plaintiffs' reasonable fear of violence, harm, and possible death in their native countries); Mem. Supp. Pls.' Mot. to Proceed Anonymously, *Damus v. Nielsen*, 18-cv-578 (JEB) at 2–4, ECF No. 1-1 (D.D.C. Mar. 15, 2018) (asylum applicants fleeing gang violence fear that exposure of their identities

## III. DISCUSSION

At this stage of the litigation, this Court is persuaded that all but one of the moving plaintiffs have met their burden of showing that their privacy interests outweigh the public's presumptive and substantial interest in knowing the details of judicial litigation such that the use of pseudonyms is warranted. The moving plaintiffs' third motion contains additional detail as to each plaintiff's need for proceeding in this lawsuit under a pseudonym in order to protect her safety and be able to maintain her career in law enforcement or in the intelligence community.[3]

---

risks death or harm to themselves or their family); Min. Order, *Garcia Ramirez v. U.S. Immigration & Customs Enforcement*, 18-cv-508 (RC) (D.D.C. Aug. 30, 2018) (granting unopposed motion). Lack of opposition does not obviate the judicial duty to inquire whether use of a pseudonym should be permitted, but certainly indicates that the circumstances are not viewed as unfair by the defendant and likely warrant granting the motion.

Moreover, concern about the rise in pseudonymous filings, *OPM Breach Litig.*, 2019 WL 2552955, at *28 (Williams, J., concurring in part and dissenting in part), fails to acknowledge legal and technical changes that often underlie findings of good cause. Ironically, the case in which this concern was expressed arises from a 2014 cyberattack on government databases that resulted in the alleged theft of "sensitive personal information—including birth dates, Social Security numbers, addresses, and even fingerprint records—of a staggering number of past, present, and prospective government workers." *Id.* at *1 (per curiam); *id.* at *6 ("It hardly takes a criminal mastermind to imagine how such information could be used to commit identity theft."). The adoption of electronic case management systems and mandatory e-filing, combined with ever-greater access to powerful Internet search tools and publicly available databases, have many benefits for the transparency of the judicial system and for society at large. Those advances, however, also heighten the risks of misuse of a litigant's identity, which risks led to the provision of the E-Government Act of 2002 that prompted adoption of Federal Rule of Civil Procedure 5.2

In an analogous situation, the Supreme Court, in considering whether disclosure of state referendum petitions that included the names and addresses of signatories violated the First Amendment, acknowledged that "[p]laintiffs explain[ed] that once on the Internet, [their] names and addresses can be combined with publicly available phone numbers and maps in what will effectively become a blueprint for harassment and intimidation." *John Doe No. 1. v. Reed*, 561 U.S. 186, 190, 200 (2010) (internal quotation marks omitted). Yet, the Court had not been asked to examine disclosure with respect to "particularly controversial petitions," but rather the much broader question of "disclosure in general," and thus plaintiffs had failed to show that "any burdens imposed by disclosure of typical referendum petitions would be remotely like the burdens [they] fear in this case," *id.* at 200–01. As in *Reed*, plaintiffs who seek to proceed under pseudonyms must establish, on an individual basis, that disclosure of their identities in relation to a particular lawsuit poses a more significant burden than disclosure of a typical litigant's identity in a typical lawsuit. Indeed, the plaintiffs' first motion in this action was denied precisely because the plaintiffs failed to make this requisite showing. *See* Memorandum & Order, *Bird v. Barr*, 19-cv-1581 (D.D.C. June 6, 2019) at 4–5. In short, an increase in the number of cases in which dispensation for pseudonymous filing is deemed warranted is not, standing alone, reason to suspect that the district court is failing to perform the requisite inquiry for its "gatekeeping" role.

[3] The moving plaintiffs also posit that, because at least one named plaintiff has already been threatened with dismissal, allegedly due to her association with this lawsuit, the plaintiffs have a concrete, reasonable fear of retaliation if their identities are disclosed. *See* Pls.' Mem. at 3–6 (noting that after the Complaint was filed, named plaintiff Erika Wesley's supervisor was told that "Ms. Wesley should be dismissed because she filed this

As to the first *Chao* factor, the plaintiffs appear to concede that their sexual harassment claims do not involve the type of personal, intimate, and in some instances private medical or psychological details that otherwise warrant the use of a pseudonym in cases involving sexual assault. *See* Pls.' Mem. at 5; *cf. Doe 1 v. George Wash. Univ.*, 369 F. Supp. 3d 49, 63–64 (D.D.C. 2019) (drawing a distinction between allegations of sexual harassment and sexual assault, and agreeing with the proposition that "sexual harassment is not typically considered a matter so highly personal as to warrant proceeding by pseudonym" (internal quotation marks, alteration, and citation omitted)); *Doe v. De Amigos, LLC*, No. 11-cv-1755 (ABJ), 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012) (permitting the use of a pseudonym for a plaintiff alleging sexual assault out of concern that "graphic material about the assault . . . including details of the sexual assault, plaintiff's genital anatomy, hospital examinations . . . and consequent psychiatric treatment" would be discussed).

Nevertheless, the moving plaintiffs posit that being publicly associated with this case poses "a very real risk of inflicting grave injury on their livelihoods, financial prospects, career opportunities, and reputation in the . . . federal law enforcement and intelligence

---

complaint, [because] '[s]he is a probationary employee and she spends all her time doing her [Equal Employment Opportunity] complaints and is busy suing the bureau instead of doing her job,'" and referring to attached declarations that corroborate the plaintiffs' allegations of retaliation against Wesley). The plaintiffs also cite, as evidence of retaliation, the FBI's alleged refusal to correct health insurance billing mistakes with respect to both a named plaintiff and an anonymous plaintiff in this case, arguing that "[a]lthough it's possible that the initial billing was merely a result of incompetence . . . [t]he continued billing and [a] negative credit reference suggest that these actions were retaliatory." *Id.* at 4. In general, however, pseudonymous treatment is not warranted unless "identification poses a risk of retaliatory *physical or mental harm* to the requesting party." *Chao*, 587 F. Supp. 2d at 99 (emphasis added). The retaliatory allegations asserted by the plaintiffs are more akin to the types of job-related retaliation supporting their claims. The plaintiffs presume that retaliation against a named plaintiff will dissuade other similarly situated plaintiffs from coming forward. *See* Pls.' Mem. at 3–6. Yet that presumption undergirds any claim of Title VII retaliation, *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006), and falls short of warranting pseudonymous treatment. In fact, allowing a plaintiff to use a pseudonym does nothing to prevent an employer determined to retaliate against an employee from doing so, since in most cases, including the instant action, the defendant already is aware of the plaintiff employee's identity and allegations. *See* Pls.' Mem. at 9–10. Thus, the plaintiffs' allegations of retaliation against the named plaintiffs in this case are better treated as evidence supportive of their claims, rather than as a factor supporting pseudonymous treatment.

communities," Pls.' Mem. at 5, and that "Courts in this District have allowed plaintiffs to proceed under pseudonyms based solely on the risk of reputational and career damage," *id.* Each moving plaintiff has now submitted a declaration detailing how her safety and career could be jeopardized if her name were to be revealed. Eight of these plaintiffs are current or prospective federal law enforcement or intelligence community employees who attest that their job requires them to remain anonymous and to minimize public exposure. For example, G.T. is a contract employee of the Central Intelligence Agency ("CIA") whose "work and identity must remain confidential," as must "her association with the CIA." Pls.' Mem. at 7. W.M. is "in an undercover position" and her "effectiveness [at] her job demands that she remain anonymous and not have her real identity associated with the FBI." *Id.* P.E. currently "works with foreign military personnel and fears her interaction with them could be impaired if her role in this case were known." *Id.* More saliently, she is applying for a "surveillance position" with another federal agency "in which she must keep out of the media and keep a small footprint in social media outlets." *Id.* at 7–8. D.C. is "a member of the intelligence community, [who] is obligated to keep her identity confidential." *Id.* at 8.[4] D.A. is "a member of the intelligence community, on a counterterrorism squad" who fears that "disclosure of her identity may threaten her current employment." *Id.* Specifically, she claims that "public exposure could make [her] a target for foreign intelligence collection" or could, if she is reinstated as a Special Agent, prevent her from "operat[ing] confidential informants, perform[ing] undercover, or engag[ing] in other operational activities that require a protected and secure personal identity." Declaration of D.A. ¶ 4. B.A. declares that she will soon be "certified to work in an undercover capacity and has specifically been told that she

---

[4] The Court adopts "D.C.", as used in Pls.' Mem. at 8, Compl. ¶ 14, and Declaration of D.C. ¶ 2, as opposed to the pseudonym "D.G.", which was included in a table accompanying the plaintiffs' motion.

9

will likely be assigned undercover" and therefore "[d]isclosure of her name in this litigation could harm not only her effectiveness, but her safety." Pls.' Mem. at 8–9. S.B. is currently employed at the FBI on probationary status. *Id.* at 9. The sexual harassment she allegedly experienced is the subject of an internal investigation and "she has been warned not to publicly mention it." *Id.* B.G. asserts that she "is a former member of the . . . Defense Intelligence Agency and her role must be kept confidential." *Id.* at 9. Further, she fears that "public exposure could directly interfere with her cases . . . supporting NYC's Counter-Terrorism squad." Declaration of B.G. ¶ 4.

Three moving plaintiffs are no longer employed in federal law enforcement or the intelligence community, but assert that anonymity is required for other reasons. L.S. attests that she is currently pursuing reinstatement at the FBI, making it "imperative that [her] identity be protected, so that [she is] able to operate confidential informants, perform undercover, or engage in other operational activities that require a protected and secure personal identity." Declaration of L.S. ¶ 4. In addition, she "has been the victim of a stalker," Pls.' Mem. at 8, making it "extremely important to [her] to minimize the amount of information that is publicly available" about her. Declaration of L.S. ¶ 4. C.S. is a local law enforcement employee who hopes to be reinstated at the FBI. Pls.' Mem. at 9. She fears retaliation at her current job and asserts that public information from this lawsuit may be used against her by defense attorneys. *Id.* She also expresses concern, similar to that expressed by D.A., that if her identity were revealed, it would affect her ability to "operate confidential informants, perform undercover, or engage in other operational activities that require a protected and secure personal identity." *See* Declaration of C.S. ¶ 4.

By contrast to L.S. and C.S., who have expressed concern about their physical safety, their ability to perform safely certain law enforcement jobs should their identities as plaintiffs be exposed, and whether such disclosure might compromise law enforcement operations, L.M. is a psychiatric counselor and has expressed concerned only that "disclosure of her identity could hurt her effectiveness as a counselor," Pls.' Mem. at 8, particularly when treating "patients who are mentally unstable and become obsessive due to a lack in boundaries," Declaration of L.M. ¶ 4.[5] L.M.'s situation does not appear to rise to the level warranting permission to proceed using a pseudonym because her work-related fears are too far attenuated from the subject of this lawsuit and are, unlike L.S.'s prior experience as a victim of a stalker, too speculative. Moreover, L.M. has already been permitted to seal her address, see Memorandum & Order, *Bird v. Barr*, 19-cv-1581 (D.D.C. June 6, 2019) at 8, so her privacy has already been shielded to an appropriate extent.

The third *Chao* factor, concerning the ages of the persons whose privacy interests are sought to be protected, remains of limited relevance to this motion because the plaintiffs are not proceeding on behalf of minor children. *See Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 153 (D.D.C. 2011).

The fourth and fifth *Chao* factors ask whether the action is against a governmental or private party and for an analysis of the risk of unfairness to the opposing party in allowing an action to proceed against it anonymously. The plaintiffs assert that allowing them to proceed under pseudonyms will have no impact on private rights, as the only defendant is a government officer named in his official capacity as head of the Department of Justice. *See* Pls.' Mem. at 9–10. Further, in connection with anti-discrimination complaints, the plaintiffs

---

[5] The Court adopts "L.M.", as used in Pls.' Mem. at 8, the accompanying table, and Compl. ¶ 17, as opposed to the pseudonym "M.L.", which was listed in the Declaration of L.M. ¶ 2.

11

have already previously disclosed their identities so the defendant already "[h]as [f]ull [k]nowledge" of these facts. *Id.* at 9. These factors weigh in favor of allowing the plaintiffs to file under pseudonyms, because anonymity would not compromise the defendant's ability to defend the action and does not presently pose a "risk of unfairness to the opposing party." *Chao*, 587 F. Supp. 2d at 99. The United States District Judge to whom this case is assigned will, however, be in the best position to reassess whether anonymity continues to be both necessary and fair as the case proceeds.

In sum, the new facts and arguments presented in the moving plaintiffs' third motion to proceed under pseudonyms have demonstrated that, with the exception of L.M., these plaintiffs' significant interests in maintaining their anonymity at this early stage in the litigation are sufficient to overcome the general presumption in favor of open proceedings. *See Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("If there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time.'" (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989))).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiffs' Motion to Proceed Anonymously is **GRANTED IN PART AND DENIED IN PART**, subject to any further consideration by the United States District Judge to whom this case is randomly assigned, and that the case may proceed using the pseudonyms "B.A.", "B.G.", "C.S.", "D.A.", "D.C.", "G.T.", "L.S.", "P.E.", "S.B.", and "W.M.", as designated by the sealed attachment to or, in the case of D.C., the memoranda supporting the plaintiffs' motion; and it is further

**ORDERED** that the plaintiffs' motion is **DENIED** as to L.M.; and it is further

**ORDERED** that the plaintiffs' motion and supporting exhibits shall remain under seal until further order of the Court; and it is further

**ORDERED** that the defendant is prohibited from publicly disclosing the identities of "B.A.", "B.G.", "C.S.", "D.A.", "D.C.", "G.T.", "L.S.", "P.E.", "S.B.", and "W.M.", or any personal identifying information about these plaintiffs that could lead to their identification by nonparties, except for the purposes of investigating the allegations contained in the Complaint and for preparing an answer or other dispositive motion in response.

**SO ORDERED.**

Date: July 3, 2019

*Beryl A. Howell*

BERYL A. HOWELL
Chief Judge