# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PAULA BIRD, *et al*.,          )
                                   )
        Plaintiffs,      )
                                   )
v.                                )     Civil Action No. 1:19-cv-01581-KBJ
                                   )
WILLIAM P. BARR, in his official capacity as  )
Attorney General of the United States of    )
America,                           )
                                   )
        Defendant.      )
                                   )

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PARTIAL MOTION TO DISMISS FOR LACK OF JURISDICTION
## AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 3

STANDARD OF REVIEW ................................................................................................... 8

    I.      Motion to Dismiss for Lack of Jurisdiction (FED. R. CIV. P. 12(b)(1)) ...................... 8

    II.     Motion to Dismiss for Failure to State a Claim (FED. R. CIV. P. 12(b)(6)) ................. 9

ARGUMENT ...................................................................................................................... 11

    I.      Plaintiffs Lack Standing to Seek the Requested Declaratory and Injunctive
         Relief ...................................................................................................................... 11

    II.     Plaintiffs Lauren Rose, "L.S.", "B.A.", "S.B.", "P.E.", and "C.S." – Should Be
         Dismissed as Plaintiffs for Failure to Timely Pursue Their Claims. ......................... 13

        A.     Plaintiffs Lauren Rose and "L.S." Failed to File Their Claims Within 90
             Days of Receipt of Final Agency Action ............................................................... 13

        B.     Plaintiffs "B.A.", "S.B.", "P.E.", and "C.S." Failed To Initiate Contact
             with the Agency Within 45 Days of the Allegedly Discriminatory Conduct ....... 16

    III.    The Class Claims Should Be Dismissed Because the Complaint Fails to
         Allege a Plausible Claim for Class-wide Relief ........................................................ 18

        A.     The Definitions of the Agent Trainee and Analyst Trainee Subclasses are
             Fatally Overbroad .................................................................................................. 19

        B.     Plaintiffs Cannot Establish Commonality or Typicality for Either the
             Agent Trainee or the Analyst Trainee Subclass .................................................... 22

         C.     The Putative Subclasses Fail to Meet the Requirements of Rule 23(b) ................ 32

             1.     Final injunctive or declaratory relief would not provide
                   appropriate class-wide relief because Plaintiffs lack standing
                   and their claims depend upon unique facts ......................................... 32

             2.     Common issues could not possibly predominate because the
                   claims depend upon highly individualized facts ................................. 35

    IV.    Plaintiffs' Claims Alleging a Pattern or Practice of Disparate Treatment and
         Disparate Impact Should Be Dismissed For Lack of a Specific Policy, Pattern,
         or Practice Being Challenged .................................................................................... 36

i

A.      Counts One and Three Should Be Dismissed for Lack of Any Pattern or
        Practice Resulting in Disparate Treatment of Female Trainees............................ 37

B.      Counts Two and Four Should Be Dismissed for Lack of Any Pattern or
        Practice Resulting in Disparate Impact on Female Trainees ................................ 38

V.     Plaintiffs Have Failed To State a Claim for Injunctive Relief Because They
       Have Failed To Plead with Requisite Specificity the Grounds for This Relief .......... 40

CONCLUSION ..................................................................................................................... 43

# TABLE OF AUTHORITIES

## CASES

*ACLU Found. of S. Cal. v. Barr*,
    952 F.2d 457 (D.C. Cir. 1991) ........................................................................... 9

*Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*,
    642 F.3d 1137 (D.C. Cir. 2011) .................................................................... 3, 9

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................ 35

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ........................................................................................ 22

*Anderson v. Zubieta*,
    180 F.3d 329 (D.C. Cir. 1999) ....................................................................... 37

*Aracely, R. v. Nielsen*,
    319 F. Supp. 3d 110 (D.D.C. 2018) ............................................................... 42

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 9, 10

*Baloch v. Kempthorne*,
    550 F.3d 1191 (D.C. Cir. 2008) ..................................................................... 20

*Bayer v. U.S. Dep't of Treasury*,
    956 F.2d 330 (D.C. Cir. 1992) ....................................................................... 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 9, 10

*Borum v. Brentwood Village, LLC*,
    324 F.R.D. 1 (D.D.C. 2018) ........................................................................... 19

*Bowden v. United States*,
    106 F.3d 433 (D.C. Cir. 1997) ....................................................................... 11

*Brady v. Livingood*,
    360 F. Supp. 2d 94 (D.D.C. 2004) ................................................................. 38

*Brooks v. Dist. Hosp. Partners, L.P.*,
    606 F.3d 800 (D.C. Cir. 2010) ....................................................................... 15

*Brown v. Coach Stores, Inc.*,
   163 F.3d 706 (2d Cir. 1998) ................................................................. 38

*Brown v. Marsh*,
   777 F.2d 8 (D.C. Cir. 1985) ................................................................. 16

*Bynum v. Dist. of Columbia*,
   217 F.R.D. 43 (D.D.C. 2003) ................................................................ 32

*Chaplaincy of Full Gospel Churches v. U.S. Navy (In re Navy Chaplaincy)*,
   697 F.3d 1171 (D.C. Cir. 2012) ..................................................... 11, 12

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .......................................................... 8, 11, 12, 33

*Colbert v. Potter*,
   471 F.3d 158 (D.C. Cir. 2006) .............................................................. 13

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi Ltd.*,
   15 F. Supp. 2d 1 (D.D.C. 1997),
   *aff'd on other grounds*, 159 F.3d 636, No. 97-7225,
   1998 U.S. App. LEXIS 7871 (D.C. Cir. Apr. 17, 1998) ........................... 42

*Cooper v. Fed. Reserve Bank of Richmond*,
   467 U.S. 867 (1984) ............................................................................ 23

*Cruz v. Am. Airlines, Inc.*,
   356 F.3d 320 (D.C. Cir. 2004) .............................................................. 34

*Curtin v. United Airlines, Inc.*,
   275 F.3d 88 (D.C. Cir. 2001) ............................................................... 18

*Davis v. Cintas Corp.*,
   717 F.3d 476 (6th Cir. 2013) ............................................................... 25

*Davis v. Dist. of Columbia*,
   925 F.3d 1240 (D.C. Cir. 2019) ................................................. 36, 38, 39

*Davis v. Dist. of Columbia*,
   949 F. Supp. 2d 1 (D.D.C. 2013) .......................................................... 37

*D.L. v. Dist. of Columbia*,
   713 F.3d 120 (D.C. Cir. 2013) ................................................. 22, 24, 31

*D.L. v. Dist. of Columbia*,
   860 F.3d 713 (D.C. Cir. 2017) .............................................................. 34

*EEOC v. St. Francis Xavier Parochial Sch.,*
    117 F.3d 621 (D.C. Cir. 1997) ....................................................................................... 10

*Eubanks v. Billington,*
    110 F.3d 87 (D.C. Cir. 1997) ......................................................................................... 32

*Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.,*
    28 F.3d 1268 (D.C. Cir. 1994) ................................................................................. 11, 12

*Farris v. Rice,*
    453 F. Supp. 2d 76 (D.D.C. 2006) ................................................................................. 42

*Foster v. Gueory,*
    655 F.2d 1319 (D.C. Cir. 1981) ..................................................................................... 15

*Garcia v. Veneman,*
    211 F.R.D. 15 (D.D.C. 2002) ................................................................... 26, 28, 29, 39

*Gen. Telephone Co. of Southwest v. Falcon,*
    457 U.S. 147 (1982) ................................................................................................. 22, 28

*Gill v. Dist. of Columbia,*
    872 F. Supp. 2d 30 (D.D.C. 2012) ......................................................................... 13, 14, 15

*Grand Lodge of the Fraternal Order of Police v. Ashcroft,*
    185 F. Supp. 2d 9 (D.D.C. 2001) ..................................................................................... 9

*Griggs v. Duke Power Co.,*
    401 U.S. 424 (1971) .................................................................................................... 36-37

*Haase v. Sessions,*
    835 F.2d 902 (D.C. Cir. 1987) ....................................................................................... 13

*Hartman v. Duffey,*
    19 F.3d 1459 (D.C. Cir. 1994) ....................................................................................... 29

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984) .......................................................................................................... 9

*In re Lorazepam & Clorazepate Antitrust Litigation,*
    202 F.R.D. 12 (D.D.C. 2001) ......................................................................................... 34

*In re McCormick & Co.,*
    217 F. Supp. 3d 124 (D.D.C. 2016) ......................................................................... 18, 19

*In re Fuel Surcharge Antitrust Litig.* ("*In re Rail Freight I*"),
    725 F.3d 244 (D.C. Cir. 2013) ..................................................................... 36

*In re Fuel Surcharge Antitrust Litig.* ("*In re Rail Freight II*"),
    934 F.3d 619 (D.C. Cir. 2019) ..................................................................... 36

*Int'l Brotherhood of Teamsters v. United States*,
    431 U.S. 324 (1977) ..................................................................................... 37

*Jianqing Wu v. Special Counsel, Inc.*,
    54 F. Supp. 3d 48 (D.D.C. 2014) ................................................................. 38

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) ....................................................................... 18

*Johnson v. Dist. of Columbia*,
    248 F.R.D. 46 (D.D.C. 2008) ...................................................... 12, 33-34, 36

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ....................................................................................... 8

*Krodel v. Young*,
    748 F.2d 701 (D.C. Cir. 1984) ................................................................. 38-39

*Little v. Wash. Metro. Area Transit Auth.*,
    249 F. Supp. 3d 394 (D.D.C. 2017) ............................................................. 35

*Love v. Johanns*,
    439 F.3d 723 (D.C. Cir. 2006) ............................................................... 29, 34

*Love v. Johanns*,
    493 F.3d 723 (D.C. Cir. 2006) ..................................................................... 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................... 8, 9

*Mackinac Tribe v. Jewell*,
    87 F. Supp. 3d 127 (D.D.C. 2015),
    *aff'd*, 829 F.3d 754 (D.C. Cir. 2016) ........................................................... 10

*Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*,
    540 F. Supp. 2d 231 (D.D.C. 2008) ............................................................. 10

*McCrary v. Stifel, Nicolaus, & Co.*,
    687 F.3d 1052 (8th Cir. 2012) ................................................................. 18, 19

*McReynolds v. Merrill Lynch,*
    672 F.3d 482 (7th Cir. 2012) ............................................................... 24

*McReynolds v. Sodexho Marriott Servs., Inc.,*
    349 F. Supp. 2d 1 (D.D.C. 2004) ......................................................... 37

*Meacham v. Knolls Atomic Power Lab.,*
    554 U.S. 84 (2008) ............................................................................... 39

*Mueller v. CBS, Inc.,*
    200 F.R.D. 227 (W.D. Pa. 2001) ......................................................... 33

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) ............................................................................. 16

*NB ex rel. Peacock v. District. of Columbia,*
    682 F.3d 77 (D.C. Cir. 2012) ............................................................... 11

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ............................................................................. 11

*Palmer v. Shultz,*
    815 F.2d 84 (D.C. Cir. 1987) ............................................................... 37

*Payne v. Salazar,*
    619 F.3d 56 (D.C. Cir. 2010) ............................................................... 16

*Perez v. D.C. Dep't of Employment Servs.,*
    305 F. Supp. 3d 51 (D.D.C. 2018) ....................................................... 11

*Pilgrim v. Universal Health Card, LLC,*
    660 F.3d 943 (6th Cir. 2011) .......................................................... 18, 19

*Prado–Steiman v. Bush,*
    221 F.3d 1266 (11th Cir. 2000) ........................................................... 34

*Robinson v. Dist. of Columbia,*
    341 F. Supp. 3d 97 (D.D.C. 2018) ....................................................... 41

*Ross v. Lockheed Martin Corp.,*
    267 F. Supp. 3d 174 (D.D.C. 2017) ..................................................... 19

*Schmidt v. Interstate Fed. Sav. & Loan Ass'n,*
    74 F.R.D. 423 (D.D.C. 1977) ............................................................... 21

*Scott v. Dist. Hosp. Partners*,
  60 F. Supp. 3d 156 (D.D.C. 2014) ................................................................. 10, 11

*Segar v. Smith*,
  738 F.2d 1249 (D.C. Cir. 1984) ........................................................................... 36

*Serrano v. Cintas Corp.*,
  2009 WL 910702 (E.D. Mich. Mar. 31, 2009) .............................................. 25-26

*Singh v. Carter*,
  185 F. Supp. 3d 11 (D.D.C. 2016) ........................................................................ 42

*Smith v. City of Jackson*,
  544 U.S. 228 (2005) ............................................................................................. 39

*Smith v. Dalton*,
  971 F. Supp. 1 (D.D.C. 1997) .............................................................................. 13

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................. 9

*Stewart v. Nat'l Educ. Ass'n*,
  471 F.3d 169 (D.C. Cir. 2006) ......................................................................... 3, 10

*Tabor v. Hilti, Inc.*,
  703 F.3d 1206 (10th Cir. 2013) ....................................................................... 24-25

*Thomas v. Principi*,
  394 F.3d 970 (D.C. Cir. 2005) ............................................................................... 9

*Thorpe v. Dist. of Columbia*,
  303 F.R.D. 120 (D.D.C. 2014) ............................................................................. 20

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................... *passim*

*Ward v. Kennard*,
  133 F. Supp. 2d 54 (D.D.C. 2000) ........................................................................ 41

*Wards Cove Packing Co. v. Atonio*,
  490 U.S. 642 (1989) ............................................................................................. 39

*Watson v. Fort Worth Bank & Trust*,
  487 U.S. 977 (1988) ....................................................................................... 27, 39

*White v. Geitner*,
    602 F. Supp. 2d 35 (D.D.C. 2009) ........................................................................ 17

*Williamson v. Shalala*,
    992 F. Supp. 454 (D.D.C. 1998) .......................................................................... 16

*Wilson v. Pena*,
    79 F.3d 154 (D.C. Cir. 1996) ............................................................................... 16

*Worth v. Jackson*,
    451 F.3d 854 (D.C. Cir. 2006) ............................................................................. 12

**STATUTES**

42 U.S.C. § 2000e-16 .................................................................................... 13, 14, 15

**REGULATIONS**

29 C.F.R. § 1614.105 ........................................................................................ 16, 22

**RULES**

Fed. R. Civ. P. 8 ..................................................................................................... 41

Fed. R. Civ. P. 12 ............................................................................................. *passim*

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Fed. R. Civ. P. 23.1 ............................................................................................... 18

Fed. R. Civ. P. 56 .............................................................................................. 10, 11

Fed. R. Civ. P. 65 .............................................................................................. 40, 41

# INTRODUCTION

Plaintiffs bring this action comprising of a number of both class and individual allegations alleging sex and disability discrimination claims based upon alleged actions taken by FBI personnel while Plaintiffs were trainees at the FBI training facility in Quantico, Virginia. However, despite having already amended their complaint twice, Plaintiffs' proposed Title VII class action continues to suffer various procedural deficiencies and incurable legal flaws that render many of the claims and even some Plaintiffs themselves subject to dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiffs' attempt to litigate certain pattern-or-practice disparate treatment and disparate impact claims as class claims, for which they intend to seek certification under Rule 23 of the Federal Rules of Civil Procedure, suffers from a number of legal deficiencies. First and foremost, although Plaintiffs seek prospective equitable relief pursuant to their class claims, they limit their proposed class to those who have already been permanently dismissed from the training programs in question and are not eligible to return. Consequently, these individuals do not have standing to obtain certain of the relief sought in the Second Amended Complaint. Second, Plaintiffs define their class as *all* trainees who were dismissed from the training programs in question, regardless of gender, even though the entire legal basis of their discrimination allegations concerns women only. This renders the class as defined impermissibly broad because it encompasses many people who cannot possibly have suffered the same injury. Finally, a review of the factual allegations underpinning the putative class claims reveals that Plaintiffs' loose collection of allegations challenges not a uniform policy or practice, but instead highlights a myriad of different circumstances. Indeed, Plaintiffs' Second Amended Complaint on its face alleges that many different FBI Training Division personnel took a variety of different allegedly

discriminatory actions against Plaintiffs in a wide variety of factual circumstances at different points in time over a period of several years and at different stages of the FBI Training Program's disciplinary process. Resolving any one of the individual Plaintiffs' highly fact-specific allegations of discrimination would require an examination of the particular circumstances surrounding an FBI Training Division employee's discretionary decision to impose some disciplinary action upon that individual Plaintiff. However, Plaintiffs do not and cannot offer any plausible explanation of how or why the circumstances of one individual Plaintiff's claim would be relevant or helpful in assessing any other Plaintiff's allegations of discrimination, which necessarily would involve a different discretionary decision under different factual circumstances at a different point in time (and possibly a different stage of the disciplinary process entirely) by a different FBI Training Division employee. In the absence of any unifying policy, decision, or decision-maker that is universal to all Plaintiffs' discrimination allegations such that resolving one such claim would resolve others, certifying these claims as a class action under Rule 23 of the Federal Rules of Civil Procedure would serve no purpose and, indeed, would be entirely inappropriate. Because Plaintiffs have failed to allege facts that plausibly could satisfy the commonality and typicality requirements of Rule 23, this Court should dismiss Counts One through Four of the Second Amended Complaint. Furthermore, Plaintiffs' failure to identify any specific employment practice that could be the subject of a valid disparate impact claim, as well as their failure to identify any specific FBI pattern or practice they allege resulted in disparate treatment of all Plaintiffs and putative class members, also require dismissal of Counts One through Four of the Second Amended Complaint.

Plaintiffs' Second Amended Complaint also suffers from myriad procedural defects. A number of the individuals who seek to participate in this action as named Plaintiffs either failed

to timely contact the agency with their allegations of discrimination, or failed to file their discrimination claims in the prescribed time after being provided with a final administrative decision by the agency. Finally, Plaintiffs' request for permanent injunctive relief is impermissibly vague, and is particularly inappropriate for the type of mandatory injunctive relief sought here.

For these reasons and the reasons set forth in greater detail below, this Court should dismiss much of Plaintiffs' Second Amended Complaint for lack of jurisdiction and for failure to state a claim upon which relief may be granted.

## **BACKGROUND**[1]

Plaintiffs Paula Bird, Clare Coetzer, Spencer Lee, Lauren Rose, Danielle Snider, Erika Wesley, "B.A.", "D.A.", "S.B.", "D.C.", "P.E.", "B.G.", "W.M.", "C.S.", "L.S.", "G.T.", and "T.S." (collectively, "Plaintiffs") are former female Federal Bureau of Investigation ("FBI") trainees who attended training programs at the Basic Field Training Course ("BFTC" or "Basic Training") located at the FBI Academy in Quantico, Virginia between 2015 and 2018. Each of the Plaintiffs attended one of two separate training programs – a program for prospective Special Agents, called New Agent Trainees ("NATs" or "Agent Trainees") and a program for prospective Intelligence Analysts, called New Intelligence Analyst Trainees ("NIATs" or "Analyst Trainees"). Of the seventeen Plaintiffs, three – Spencer Lee, Erika Wesley, and "B.A." – were NIATs; the remainder of the Plaintiffs were NATs. Second Amended Complaint

---

[1]  For purposes of this motion, Defendants accept as true all reasonably pled factual allegations in the complaint. *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011); *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). Nothing in this recitation of facts should be construed as an admission of the truth of any of Plaintiffs' allegations.

("SAC"), ECF No. 42, ¶¶ 8-24. Of the Plaintiffs, seven – Paula Bird, Lauren Rose, Erika Wesley, "D.A.", "S.B.", "D.C.", and "W.M." – are currently employed by the FBI. *Id.*

The BFTC is an integrated residential training program located in Quantico, Virginia that is administered by the FBI's Training Division. *Id.* ¶¶ 26, 30, 46. However, the two respective programs have different curricula and requirements, reflecting the very different duties and responsibilities of FBI Special Agents and FBI Intelligence Analysts. *See, e.g.*, *id.* ¶ 42. The NAT Training Program focuses on certain law enforcement and tactical skills necessary to be an effective Special Agent, including Firearms Training, Physical Training/Defensive Tactics, and Tactical Training, and lasts approximately 20 weeks. *Id.* ¶ 28.  These courses are taught by Supervisory Special Agents on a rotating basis.  *Id.* ¶¶ 28, 29, & 46. During the law enforcement skills portion of Basic Training, the Supervisory Special Agents evaluate NATs according to a detailed training rubric for each of the three training blocks. *Id.* ¶¶ 28-38.

While the NIAT Training Program involves the same initial classroom instruction component as the NAT Training Program, afterwards the NIATs continue with academic instruction and instruction on intelligence gathering and synthesis. *Id.* ¶ 42. The NIAT program is significantly shorter than the NAT Training Program, lasting approximately 12 weeks. *Id.* Similar to the NAT Training Program, the NIAT Training Program is taught by Supervisory Intelligence Analysts on a rotating basis. *Id.* ¶¶ 43, 46.

The BFTC's goal is to ensure that upon graduation, both NATs and NIATs are prepared to immediately become Special Agents and Intelligence Analysts, respectively. *Id.* ¶¶ 30, 43. The minimum standards and requirements for the NATs and NIATs are set forth in a Basic Training Requirements Document provided to all NATs and NIATs. *Id.* ¶ 52. Crucial to this process is the continual evaluation and assessment of trainees based on six criteria referred to as "the suitability

dimensions" – conscientiousness, cooperativeness, emotional maturity, initiative, integrity, and judgment. *Id.* ¶ 30.

If any Training Division employee, including an instructor, observes a trainee acting in a way that calls into question his or her fitness to be either a Special Agent or Intelligence Analyst, the instructor may issue a suitability notation ("SN") to that trainee. *Id.* ¶¶ 29, 30. SNs may be issued for disciplinary infractions or a lack of professionalism, but they may also be issued for failure to exhibit the required law enforcement and tactical skills for which the trainee has received training. *See, e.g.*, *id.* ¶¶ 29, 30, 43, & 46. For example, if, after receiving training on the FBI's deadly force policy, an Agent Trainee demonstrates that he or she is unable to correctly apply that policy in training simulations, an instructor can issue the trainee an SN. *Id.* ¶ 33.

If the Trainee Management Unit ("TMU") determines that the quantity or severity of SNs received by a Trainee rises to a level that calls into question the Trainee's fitness to be a Special Agent or Intelligence Analyst, the Trainee can be referred for a Suitability Review. *Id.* ¶ 47. During a Suitability Review, the Assistant Director or the Deputy Assistant Director of the Training Division decides whether to convene a Trainee Review Board ("TRB") for that Trainee. *Id.* ¶ 48. In the event a TRB is convened, the TMU provides a record of all SNs and other training records for the Trainee in question to the members of the TRB, *id.* ¶ 48, including the Deputy Assistant Director or his or her designee, three Section Chiefs or their designee(s), the TMU Unit Chief or his or her designee, a minority representative, and a representative from the Office of General Counsel. *Id.* ¶ 49.

The Trainee under Suitability Review receives the opportunity to speak to the TRB before it deliberates, and is given the opportunity to provide a defense, explanation, or any other information he or she believes the TRB should consider in determining his or her suitability to be

a Special Agent or Intelligence Analyst. *Id.* ¶¶ 50, 51. Based upon the information provided by the Trainee, information from any other relevant persons such as instructors, and the entire record provided by the TMU, the TRB votes on a recommended course of action (a) as to whether the Trainee should continue in the training program; and (b) if not, whether the Trainee should be "recycled" and allowed to undergo the training program again in the future. *Id.* ¶¶ 50, 53. Based upon the TRB's recommendation, the Assistant Director of the Training Division makes the decision as to whether to dismiss the Trainee from the training program, and, if so, whether the Trainee should be allowed to re-take the training program in the future. *Id.*

While the specific factual allegations raised by each of the seventeen Plaintiffs vary significantly, *see id.* at ¶¶ 78-206 (detailing the distinct factual allegations of discrimination concerning each Plaintiff), all of the Plaintiffs except Erika Wesley allege that they were dismissed from their respective training programs as a result of discrimination on the basis of their sex in violation of Title VII. *Id.* ¶¶ 8-24.

In addition to the discrimination claims related to Plaintiffs' dismissals from training, two of the Plaintiffs – Erika Wesley and "B.A." – allege that various fellow trainees and instructors made sex-based comments that constituted a hostile work environment. *Id.* ¶¶ 115-17; 132-40; 247-56. Furthermore, two of the Plaintiffs – Erika Wesley and "B.G." – allege that they have disabilities that require reasonable accommodations to perform the essential functions of the positions they were in training for as NIATs (and which Ms. Wesley obtained after successfully completing the NIAT program). *Id.* ¶¶ 257-64. They both allege that they gave notice of their disabilities and requested reasonable accommodations prior to beginning the NIAT program, but that their instructors at BFTC denied their reasonable accommodations. *Id.* ¶¶ 259, 261. Finally, Plaintiff Erika Wesley brings an individual cause of action alleging that various persons in the

FBI have committed unlawful acts of retaliation against her in response to her protected Equal Employment Opportunity ("EEO") activity and participation in this lawsuit. *Id.* ¶¶ 265-71.

All the Plaintiffs allege that they have filed individual complaints of discrimination with the EEOC, *id.*, and Plaintiffs allege that Paula Bird's EEOC complaint was alleged to be a class complaint, joining Clare Coetzer, Spencer Lee, Lauren Rose, Danielle Snider, Erika Wesley, "D.A.", "D.C.", "G.T.", "S.B.", and "W.M." *Id.* ¶ 8.[2]

On May 29, 2019, Plaintiffs filed their initial complaint in this action. ECF No. 1. Plaintiffs also filed a motion to allow certain Plaintiffs to proceed under pseudonyms. ECF No. 2. On June 6, 2019, the Court granted Plaintiffs' motion to seal the Plaintiffs' home addresses, but denied Plaintiffs' motion to proceed under pseudonyms because Plaintiffs had failed to meet the required legal standard. ECF No. 3. On June 19, 2019, Plaintiffs filed another motion to allow certain Plaintiffs to proceed under pseudonyms. ECF No. 4. By minute order dated June 26, 2019, the Court denied this motion because it had been filed in draft form, and the declarations filed along with the motion were unsigned and undated. On June 27, 2019, Plaintiffs filed a third motion to allow certain Plaintiffs to proceed under pseudonyms. ECF No. 5. On July 3, 2019, the Court granted this motion with respect to all plaintiffs who sought to proceed under a pseudonym except for one. ECF No. 6.[3]

On August 2, 2019, Plaintiffs filed a motion for preliminary injunction seeking injunctive relief on behalf of Erika Wesley and Mary Martinez, a non-Plaintiff, in the case. ECF No. 15.

---

[2]  Some Plaintiffs received final agency decision on their EEOC complaints, and two of them, Lauren Rose and "L.S.", failed to file their claims with this Court within the time limit proscribed after receiving their final agency actions, as described in more detail *infra* Arg. § II.A.

[3]  A summons was not issued in this matter until July 10, 2019, ECF No. 8, and Defendant was not served in this matter until July 21, 2019, ECF No. 10, so Defendant was never provided an opportunity to respond to Plaintiffs' motion for certain Plaintiffs to proceed under pseudonyms.

After briefing, on September 10, 2019, this Court denied Plaintiffs' motion for preliminary injunction for lack of jurisdiction, holding that Plaintiffs had failed to include in the Complaint any of the allegations upon which the motion for preliminary injunction was based. ECF No. 21.

On September 12, 2019, Plaintiffs filed their First Amended Complaint, ECF No. 22, and on September 25, 2019, Plaintiffs filed another motion for preliminary injunction, again seeking injunctive relief related to allegations of retaliation against Plaintiff Erika Wesley and non-Plaintiff Mary Martinez. ECF No. 24. This motion for preliminary injunction has been fully briefed, *see* ECF Nos. 27, 30, 36, 38, 40, and was argued before this Court on December 23, 2019. In the meantime, on January 31, 2020, Plaintiffs filed their Second Amended Complaint. ECF No. 42.

## STANDARD OF REVIEW

### I.      Motion to Dismiss for Lack of Jurisdiction (FED. R. CIV. P. 12(b)(1))

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To establish the "irreducible constitutional minimum of standing" under Article III, a plaintiff must show that he or she has suffered an "injury in fact" – an "invasion of a legally protected interest" which is: (1) both "concrete and particularized" as well as "actual or imminent, not 'conjectural' or 'hypothetical;'" (2) "fairly traceable" to the defendants' challenged conduct; and (3) "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). Because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," *Kokkonen*, 511 U.S. at 377, the plaintiff bears the burden of establishing, "with the manner and degree of evidence required at the successive stages of the litigation,"

*Lujan*, 504 U.S. at 561, that the Court has subject-matter jurisdiction. If at any time the Court determines that jurisdiction is lacking, the court must dismiss the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998) ("[W]ithout proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit.").

In deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (alterations in original) (citation omitted).

## II.     Motion to Dismiss for Failure to State a Claim (FED. R. CIV. P. 12(b)(6))

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] Rule 12(b)(6) motion tests the legal sufficiency of the complaint." *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 472 (D.C. Cir. 1991) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678. Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* For purposes of deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the reasonably

pled factual allegations in the complaint and construes reasonable inferences in favor of the plaintiff. *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). However, the Court need not accept as true "a legal conclusion couched as a factual allegation[.]" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

To decide a motion to dismiss under Rule 12(b)(6), the Court "may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart*, 471 F.3d at 173; *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 n. 3 (D.C. Cir. 1997); *Scott v. Dist. Hosp. Partners*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014) ("Because [plaintiff] refers to her three EEOC charges and their accompanying documents in her complaint, the Court deems them incorporated into her complaint and will consider them without converting the [defendant's] motion into one for summary judgment." (internal citation omitted)); *Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*, 540 F. Supp. 2d 231, 235 n.5 (D.D.C. 2008) (deeming EEOC charge and collective bargaining agreement as incorporated into the complaint by reference and thus considering the documents without converting defendant's motion into one for summary judgment).[4]

_____

[4] As this Court held in *Mackinac Tribe v. Jewell*, 87 F. Supp. 3d 127, 138 (D.D.C. 2015) (Brown Jackson, J.), *aff'd*, 829 F.3d 754 (D.C. Cir. 2016), "a defendant may raise an affirmative defense (such as exhaustion of administrative remedies) under Rule 12(b)(6) only when the facts that give rise to the defense are clear from the face of the complaint[,]" and therefore "the appropriate procedural mechanism for bringing a case to closure when there is no evidence in the record that the plaintiff exhausted the administrative remedies available to him is a motion for summary judgment under Federal Rule of Civil Procedure 56, not a motion to dismiss under Rule 12[.]" (Internal quotations omitted.) Accordingly, this memorandum raises arguments about the Plaintiffs' failure to exhaust administrative remedies only where the facts giving rise to the defense are clear from the face of the Second Amended Complaint, including the documents incorporated by reference therein. Defendant believes Plaintiffs also may have failed to exhaust their administrative remedies with regard to other claims in the Second Amended Complaint, but reserves for a potential later stage in this litigation such arguments that would depend upon

A plaintiff's failure to exhaust administrative remedies is "properly addressed as [a] motion[ ] to dismiss for failure to state a claim." *Scott v. Dist. Hosp. Partners*, 60 F. Supp. 3d at 161. Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Perez v. D.C. Dep't of Employment Servs.*, 305 F. Supp. 3d 51, 55 (D.D.C. 2018).

## ARGUMENT

### I.      Plaintiffs Lack Standing to Seek the Requested Declaratory and Injunctive Relief

Plaintiffs fail to establish standing with respect to their claims for declaratory and injunctive relief because they lack a real and immediate threat of future injury. *Lyons*, 461 U.S. at 105-06. Plaintiffs, all of whom have either been discharged or graduated from the FBI's Basic Training program, lack standing to seek the declaratory and injunctive relief requested in paragraphs 3, 4, and 5 of the Prayer for Relief. SAC at 70; *Lyons*, 461 U.S. at 105-06. "Where as here plaintiffs seek 'forward-looking injunctive . . . relief, past injuries alone are insufficient to establish standing.'" *Chaplaincy of Full Gospel Churches v. U.S. Navy (In re Navy Chaplaincy)*, 697 F.3d 1171, 1175 (D.C. Cir. 2012) (quoting *NB ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77, 82 (D.C. Cir. 2012). "Instead, plaintiffs must show that they face an imminent threat of future injury." *Id.* (citing *Lyons*, 461 U.S. at 105); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief"); *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1273-74 (D.C. Cir. 1994) (plaintiffs lacked standing to

---

evidence outside the complaint. Defendant's motion therefore should be decided as a motion to dismiss under Rule 12(b)(6) and should not be converted to a motion for summary judgment under Rule 56.

seek injunctive relief where they failed to allege that they would seek job referrals in the near future from the defendant they claimed would discriminate against them on the basis of race).

Plaintiffs in this case lack standing to seek prospective equitable relief concerning the FBI's Basic Training because their claims rely entirely upon past injury. With the exception of Erika Wesley, who graduated from Basic Training in 2018, SAC ¶ 124, Plaintiffs all have been permanently discharged from Basic Training following suitability review. *See, e.g.*, SAC ¶¶ 56, 67. Accordingly, Plaintiffs do not allege, nor could they, that they face *any* risk, let alone risk that is both actual and imminent as well as concrete and particularized, that they will again be subjected to the suitability review and discharge system which they challenge in this lawsuit. *See, e.g.*, *Johnson v. Dist. of Columbia*, 248 F.R.D. 46, 56 (D.D.C. 2008). Plaintiffs therefore have entirely failed to sustain their burden of showing that they are "realistically threatened by repetition of [the violation]." *Id.* at 55 (alterations in original) (citing *Lyons*, 461 U.S. at 109).

Moreover, Plaintiffs' claims of injury are insufficiently concrete where they center on various decision-makers' allegedly subjective application of proficiency and suitability standards, SAC ¶ 54, but fail to allege the underlying employment policy or practice driving those decisions and thus resulting in the alleged sex-based discrimination. *See, e.g.*, SAC at 70, Prayer for Relief ¶¶ 4, 5 (vaguely requesting permanent injunctions "prohibiting the FBI . . . from engaging in the discriminatory employment practices complained of" and "requiring the FBI [to] adopt employment practices in conformity with the requirements of Title VII"); *In re Navy Chaplaincy*, 697 F.3d at 1176 ("[V]ague predictions of future discriminatory conduct are insufficient to demonstrate the imminent threat of future injury necessary to support standing to seek injunctive relief."); *Worth v. Jackson*, 451 F.3d 854, 860 (D.C. Cir. 2006) ("Worth challenges no statute, regulation, or written policy committing HUD to favoring minorities or

women, resting his claim instead on speculation, untethered to any written directive, about how

HUD is likely to make future employment decisions."); *Haase v. Sessions*, 835 F.2d 902, 911

(D.C. Cir. 1987) ("[M]ore than a nebulous assertion of the existence of a 'policy' is required to

establish standing. The plaintiffs must not only demonstrate its existence but also that they are

likely to be subjected to the policy again.").

Plaintiffs therefore lack standing to seek the declaratory and injunctive relief requested in

paragraphs 3, 4, and 5 of the Prayer for Relief. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

364 (2011) ("[T]hose plaintiffs no longer employed by Wal-Mart lack standing to seek injunctive

or declaratory relief against its employment practices."). Accordingly, the Plaintiffs' claims for

declaratory and injunctive relief must be dismissed.

## II.  Plaintiffs Lauren Rose, "L.S.", "B.A.", "S.B.", "P.E.", and "C.S." – Should Be Dismissed as Plaintiffs for Failure to Timely Pursue Their Claims

### A.  Plaintiffs Lauren Rose and "L.S." Failed to File Their Claims Within 90 Days of Receipt of Final Agency Action

Under Title VII of the Civil Rights Act of 1964, a plaintiff must file his or her claim

"[w]ithin 90 days of receipt of notice of final action taken by [the EEOC]."  42 U.S.C. § 2000e-

16(c). This 90-day deadline "is not a jurisdictional requirement but rather is similar to a statute of

limitations." *Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006) (citation omitted). While it is

not jurisdictional, "this Circuit requires strict adherence to the 90-day requirement, such that

actions brought even one day after the deadline will be dismissed."  *Gill v. Dist. of Columbia*,

872 F. Supp. 2d 30, 35 (D.D.C. 2012) (dismissing as untimely Title VII claims filed only two

days after 90-day deadline); *see also Smith v. Dalton*, 971 F. Supp. 1, 2-3 (D.D.C. 1997)

(dismissing *pro se* plaintiff's Title VII claims because suit was filed one day after 90-day

deadline).

Two of the named Plaintiffs – Lauren Rose and "L.S." – should be dismissed from this case because they failed to file their claims within 90 days of receipt of an EEO decision. Ms. Rose was given a number of SNs for misapplying deadly force during training exercises, and was subsequently placed under Suitability Review. Final Agency Decision for Lauren Rose (attached here as Exhibit 1) at 2-9. The New Agent Review Board[5] ("NARB") was convened to review Rose's case, and after reviewing the materials and hearing from Rose and her instructors, recommended that she should be dismissed form the training program. *Id*. at 4-6. Lauren Rose made her initial contact with the FBI, alleging discrimination on the basis of sex and race, on June 1, 2015. SAC ¶ 11. After counseling failed to resolve her claim, Ms. Rose filed a formal complaint and received her final EEO decision on March 27, 2017. *Id*. at 1-12. In this EEO decision, the Acting Complaint Adjudication Officer rejected Ms. Rose's claims that she had been subjected to discrimination, and rejected her claims that the NARB's recommendation based on her repeatedly misapplying deadly force in training exercises was a pretext for any discrimination. *Id*. at 10-11. Ms. Rose did not seek review of this March 27, 2017 decision until the filing of Plaintiffs' complaint in this matter more than two years later on May 29, 2019, ECF No. 1. Because "this Circuit requires strict adherence to the 90-day requirement," *Gill*, 872 F. Supp. 2d at 35, Ms. Rose should accordingly be dismissed as a Plaintiff in this matter for failure to comply with 42 U.S.C. § 2000e-16(c).

Similarly, Plaintiff "L.S." initially contacted the FBI's EEO office on October 8, 2015 regarding her allegations of sexual harassment and discrimination in connection with her dismissal from the Agent Training program in October 2015. SAC ¶ 22. "L.S." was given a number of SNs for failing practical exercises by misapplying deadly force, and was subsequently

---

[5]  The New Agent Review Board was a predecessor entity to the TRB.

placed under Suitability Review. Final Agency Decision for "L.S." (attached here as Exhibit 2) at 6-7. The NARB was convened to review her case, and after reviewing the materials and hearing from "L.S.," recommended that she be dismissed from the training program. *Id*. After counseling failed to resolve her claim and she filed a formal EEO complaint, "L.S." received her final EEO decision on November 29, 2017. *Id*. at 1-12. In this EEO decision, the Acting Complaint Adjudication Officer rejected "L.S."'s claims that she had been subjected to sexual harassment. "L.S." did not seek review of the November 29, 2017 decision until approximately 18 months later, when Plaintiffs filed their complaint in this matter on May 29, 2019, ECF No. 1. Because "this Circuit requires strict adherence to the 90-day requirement," *Gill*, 872 F. Supp. 2d at 35, "L.S." should accordingly be dismissed as a Plaintiff in this matter for failure to comply with 42 U.S.C. § 2000e-16(c).

The D.C. Circuit recognizes a narrow exception to the exhaustion rule which "allows non-filing parties to join the suit of another similarly situated plaintiff who did file an administrative complaint against the same defendant." *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 804 (D.C. Cir. 2010). Under this "single-filing" exception, "each individual plaintiff in a Title VII class action suit need not individually file an EEOC complaint[;]" rather, "it is sufficient if at least one member of the plaintiff class has met the filing prerequisite." *Foster v. Gueory*, 655 F.2d 1319, 1321 (D.C. Cir. 1981). However, a plaintiff who has failed to exhaust administrative remedies may join an action brought by a plaintiff who did exhaust administrative remedies only if "the two claims are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate [administrative] charges[.]" *Id.* at 1322. In this case, each Plaintiff alleges a unique set of facts involving suitability notations issued at different times under different circumstances and for different reasons by different FBI Training personnel.

Therefore, Plaintiffs who have failed to file timely administrative complaints cannot excuse their failure to file in a timely manner by relying upon the timely complaints of other Plaintiffs in this case because their claims are so distinct that the filing of one claim could not fairly be deemed to put the FBI on notice of the other claims. Nor would the FBI have had a reasonable opportunity to investigate and attempt to resolve the matters not specifically raised in timely administrative complaints.

B.     Plaintiffs "B.A.", "S.B.", "P.E.", and "C.S." Failed To Initiate Contact with the Agency Within 45 Days of the Allegedly Discriminatory Conduct

A federal employee who claims discrimination or retaliation in violation of Title VII must timely comply with the statute's administrative exhaustion requirements as a precondition to his or her suit. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010). The D.C. Circuit recognizes that "[t]his administrative remedies exhaustion requirement is mandatory[,]" *Bayer v. U.S. Dep't of Treasury*, 956 F.2d 330, 332 (D.C. Cir. 1992), and serves to "afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts," *Wilson v. Pena*, 79 F.3d 154, 165 (D.C. Cir. 1996). The first step in the exhaustion process is to initiate contact with an EEO counselor within 45 days of the date of the allegedly discriminatory conduct or the effective date of an allegedly discriminatory personnel action. 29 C.F.R. § 1614.105(a)(1) (requiring that "an aggrieved person *must* initiate contact with a Counselor within 45 days of the matter alleged to be discriminatory…") (emphasis added). Failure to timely exhaust administrative remedies bars a plaintiff from proceeding on his or her claims in court. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985); *Williamson v. Shalala*, 992 F. Supp. 454, 457 (D.D.C. 1998) ("As a general rule, non-compliance with administrative deadlines will bar a plaintiff from litigating his claims in court."); *see also White v. Geitner*, 602 F. Supp. 2d 35, 37 (D.D.C. 2009).

16

Four Plaintiffs – "B.A.", "S.B.", "P.E.", and "C.S." – should be dismissed by this Court for failure to timely pursue administrative exhaustion under Title VII. Although these Plaintiffs contacted the FBI EEO to complain about allegedly discriminatory conduct by FBI personnel, they did not do so within 45 days of either receiving notice of the decision to remove them from the training or being dismissed from the training. The relevant dates on which the allegedly discriminatory conduct concluded, and the dates upon which the Plaintiff contacted the FBI EEO to complain, are set forth below:

| Plaintiff | Date of Dismissal from Training Program | Date On Which Plaintiff Contacted EEO Office | Interval |
|---|---|---|---|
| "B.A." | July 31, 2018. SAC ¶¶ 139-40. | November 26, 2018. SAC ¶ 14. | 118 days |
| "S.B." | September 20, 2017. SAC ¶¶ 148-150. | February 13, 2018. SAC ¶ 16. | 146 days |
| "P.E." | October 25, 2016. SAC ¶¶ 162-63. | April 24, 2019. SAC ¶ 18. | 911 days |
| "C.S." | July 14, 2017. SAC ¶ 181. | December 3, 2018. SAC ¶ 21. | 507 days |

Because these four Plaintiffs did not initiate contact with the Counselor within 45 days of any of the allegedly discriminatory actions upon which they based their complaints, they should be dismissed as Plaintiffs in this matter for failure to timely exhaust their administrative remedies as required by law. As noted *supra* Arg. § II.A., these individuals' specific allegations of discrimination raised in these various claims, involving different disciplinary events, different circumstances, and different Training Division personnel making different discretionary decisions, are far too factually distinct to apply the vicarious exhaustion exception to excuse the failure to pursue administrative remedies in a timely manner.

### III.    The Class Claims Should Be Dismissed Because the Complaint Fails to Allege a Plausible Claim for Class-wide Relief

Because Plaintiffs have failed to allege facts that plausibly could meet the requirements for maintaining a class action, the class claims in the Second Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "The D.C. Circuit has not considered the application of the plausibility standard to class allegations, but several other circuits have held that Rule 12(b)(6) motions can be used to strike class allegations when it is apparent on the face of the complaint that they cannot satisfy the requirements of Rule 23." *In re McCormick & Co.*, 217 F. Supp. 3d 124, 140 (D.D.C. 2016) (citing *McCrary v. Stifel, Nicolaus, & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012) (holding that "class claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion"); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947-49 (6th Cir. 2011) (dismissing suit brought under laws of many different states because the lack of common legal or factual issues would preclude class certification); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings.")). The D.C. Circuit has upheld the disposition of class claims without waiting to decide class certification where the district court "readily and correctly perceived fatal flaws in plaintiffs' claims." *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92-93 (D.C. Cir. 2001) (finding that disposing of claims at summary judgment "spares both the parties and the court a needless, time-consuming inquiry into certification.").

Under Rule 23.1(b) of the Local Rules of Civil Procedure, the defendant may "move at any time to strike the class action allegations or to dismiss the complaint." Indeed, the Court may "dismiss class claims if factual variations among plaintiffs' experiences will prevent class

certification." *In re McCormick & Co.*, 217 F. Supp. 3d at 144. A Rule 12(b)(6) motion to

dismiss therefore is an appropriate means of striking class allegations whenever it appears

implausible on the face of the complaint that the putative class claims could satisfy the

requirements of Rule 23. *Id.* at 144-45 (citing *Pilgrim*, 660 F.3d at 947-49 (dismissing suit

because the lack of common legal or factual issues would preclude class certification); *McCrary*,

687 F.3d at 1058-59 (dismissing class claim that would require highly-individualized facts)).

Plaintiffs' complaint fails to state a plausible claim for class-wide relief, as demonstrated below,

and therefore the class claims in Counts One through Four, as well as the corresponding

paragraphs in the Prayer for Relief, should be dismissed under Rule 12(b)(6).

A.     The Definitions of the Agent Trainee and Analyst Trainee Subclasses are Fatally
       Overbroad

Plaintiffs have failed to define the Agent and Analyst Trainee subclasses[6] to limit class

participation to a group of individuals who have suffered the same alleged injury.

"Defining the class is of critical importance because, among other things, it identifies the

persons entitled to relief and bound by a final judgment, and as a result, the definition must be

precise, objective, and presently ascertainable." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d

174, 191 (D.D.C. 2017) (Brown Jackson, J.) (citation omitted). This Court has rejected

overbroad class definitions that would include members who could not have been injured. *See id.*

("If the definition is so broad that it sweeps within it persons who could not have been injured by

the defendant's conduct, it is too broad." (citation omitted)); *see also Borum v. Brentwood

Village, LLC*, 324 F.R.D. 1, 9 (D.D.C. 2018) (plaintiff's overbroad definition leaves it

---

[6] Plaintiffs' proposed Agent and Analyst Trainee subclasses each would be required to meet all the requirements for certification under Rule 23. *Love v. Johanns*, 493 F.3d 723, 728 (D.C. Cir. 2006). Although the arguments in this motion directly refer to the subclasses, these arguments would apply all the more to a general class comprised of both subclasses.

"impossible to tell . . . whether those individuals have any claims in common, as required by Rule 23(a)(2)"); *Thorpe v. Dist. of Columbia*, 303 F.R.D. 120, 141-42 (D.D.C. 2014) (assessing whether class definition was "fatally overbroad" by virtue of including individuals who had not plausibly suffered an injury (citation omitted)).

The Second Amended Complaint defines the "Agent Trainee" and "Analyst Trainee" subclasses to include "all [Agent/Analyst] Trainees who received suitability notations and were discharged from the FBI Academy's Basic Training after appearing before a Trainee Review Board or equivalent, or after a Suitability Review . . . from April 17, 2015, through the first day of trial in this action." SAC ¶¶ 56, 67. This definition lacks any correlation to the elements of a discrimination claim under Title VII. *See, e.g.*, *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) ("the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability.").

By including ***all*** Trainees – male or female – who received suitability notations and were subsequently dismissed from Basic Training, the Second Amended Complaint defines the putative subclasses in overbroad terms that would include not only individuals who do not share the same protected characteristics but also those who did not or even could not have suffered the same alleged injury. The Agent and Analyst Trainee subclasses as defined in the Second Amended Complaint are therefore overbroad, as they would include both Trainees who either lack standing to assert the claims in Counts One through Four because they have not suffered an adverse employment action *because of* their sex, or whose claims lack commonality and typicality with the rest of the putative subclasses. *See, e.g.*, SAC ¶ 2 ("Plaintiffs allege that, because of their sex, female Trainees were referred for Suitability Review or to the Trainee

Review Board and discharged more frequently and for more minor infractions than similarly situated male Trainees."); SAC ¶ 27 ("Plaintiffs seek to certify a proposed class that challenges gender bias against women in Basic Training in the issuance of suitability notations and subsequent placement in Suitability Review or referral to a Trainee Review Board that results in discriminatory terminations of female Agent and Analyst Trainees."); SAC ¶ 38 ("Female Agent Trainees receive suitability notations for perceived violations of critical elements more frequently than similarly situated male Agent Trainees who engaged in the same behaviors."); SAC ¶ 54 ("The decisionmakers apply internal biases against women in applying the proficiency standards and suitability dimensions to female Agent Trainees and Analyst Trainees.").

Male trainees, for instance, could not possibly have suffered the same alleged sex-based discrimination as females alleging they were more likely to receive suitability reviews and be discharged *because* they are female; in fact, if anything, male trainees who have been discharged from Basic Training might tend to disprove the class claims that females were given suitability notations and discharged because of their sex. At the very least, whatever claims male Trainees might assert would be atypical of the class and likely would not be adequately represented by the Plaintiffs, who are all female. Plaintiffs' putative class definitions therefore should be rejected as overbroad because they would include individuals who could not conceivably have suffered the same injury as female trainees who have been discharged from Basic Training, allegedly due to sex-based discrimination.[7] *Schmidt v. Interstate Fed. Sav. & Loan Ass'n*, 74 F.R.D. 423, 427-28 (D.D.C. 1977) (rejecting plaintiffs' initial "all persons" class definition because some members of proposed class could not assert valid claims as a matter of law).

---

[7] Even if the subclasses were properly defined, based upon internal records Defendant believes that they also likely would suffer a lack of numerosity. FED. R. CIV. P. 23(a)(1).

B.     Plaintiffs Cannot Establish Commonality or Typicality for Either the Agent
       Trainee or the Analyst Trainee Subclass

The class claims in the Second Amended Complaint should be dismissed for failure to set

forth sufficient allegations pertaining to the four threshold requirements under Rule 23(a) of the

Federal Rules of Civil Procedure. Rule 23(a) requires not merely the literal raising of "common

'questions,'" but rather "the capacity of a classwide proceeding to generate common *answers* apt

to drive the resolution of the litigation."  *Wal-Mart*, 564 U.S. at 349 n.5; *D.L. v. Dist. of

Columbia*, 713 F.3d 120, 125 (D.C. Cir. 2013). In other words, not only must the plaintiffs'

claims depend upon a "common contention," but plaintiffs must "demonstrate that the class

members 'have suffered *the same injury*.'" *Wal-Mart*, 564 U.S. at 349-50 (emphasis added)

(quoting *Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)); *see also Amgen

Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 491 (2013) ("A plaintiff seeking class

certification is not required to prove the elements of his claim at the certification stage, but he

must show that the elements of the claim are susceptible to classwide proof."). In this case

Plaintiffs' proposed subclasses cannot plausibly meet the requirements of Rule 23(a) because: (1)

Plaintiffs have not alleged a specific employment practice which caused class-wide harm; and

(2) each named Plaintiffs' alleged discrimination claims involve such highly-individualized facts

that they are not capable of class-wide proof and resolution.

The Supreme Court has explained the required level of "commonality" in the case of a

Title VII claim:

> This does not mean merely that they have all suffered a violation of the same
> provision of law. Title VII, for example, can be violated in many ways – by
> intentional discrimination, or by hiring and promotion criteria that result in
> disparate impact, and by the use of these practices on the part of many different
> superiors in a single company. Quite obviously, the mere claim by employees of
> the same company that they have suffered a Title VII injury, or even a disparate-
> impact Title VII injury, gives no cause to believe that their claims can
> productively be litigated at once. Their claims must depend upon a common

> contention – for example, the assertion of discriminatory bias on the part of the
> same supervisor. That common contention, moreover, must be of such a nature
> that it is capable of classwide resolution – which means that determination of its
> truth or falsity will resolve an issue that is central to the validity of each one of the
> claims *in one stroke*.

*Id*. at 350 (emphasis added). In cases challenging numerous different individual employment

actions or decisions under a "pattern or practice" theory, the Court stressed that the "crux of the

inquiry is the reason for a particular employment decision." *Id*. at 352 (citing *Cooper v. Fed.

Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984)). "Without some glue holding the alleged

reasons for all those decisions together," the Court held, "it will be impossible to say that

examination of all the class members' claims for relief will produce a common answer to the

crucial question *why was I disfavored*." *Id*. (emphasis in original).

The Supreme Court went on to note specifically that Rule 23 class actions are not an

appropriate vehicle for resolving individual allegations challenging distinct decisions made by

different persons who had been given substantial discretion, because such situations are the

antithesis of a situation in which the resolution of a challenge to a single policy or practice may

efficiently resolve multiple claims at once. In *Wal-Mart*, plaintiffs challenged defendant's policy

of giving lower-level supervisors substantial discretion over employment matters. *Id*. at 355. The

Court held that "[o]n its face, of course, that is just the opposite of a uniform employment

practice that would provide the commonality needed for a class action." *Id*. While the Court

recognized that the exercise of such discretion by individual supervisors could of course give rise

to individual Title VII claims, the Court held that that "does not lead to the conclusion that every

employee in a company using a system of discretion has such a claim in common," because

some supervisors would not discriminate, and even among supervisors that did discriminate,

their discrimination would likely take different forms such that there was no single policy or

practice that could be resolved via class litigation. *Id*. at 355-56. Plaintiffs attempted to introduce "statistical and anecdotal evidence" to demonstrate a commonality of actions by the supervisors making discretionary decisions, but the Court found such "evidence falls well short." *Id*. at 356.

Applying *Wal-Mart*, the D.C. Circuit reversed a district court's decision to certify a class under Rule 23 in a case involving claims that the District of Columbia government violated the Individuals with Disabilities Education Act ("IDEA") by failing to perform its legal obligations to provide "free appropriate public education" ("FAPE") to children with disabilities in a number of different ways. *D.L. v. District of Columbia*, 713 F.3d at 126-28. The Court of Appeals held that it was "clear that defining the class by reference to the District's pattern or practice of failing to provide FAPEs speaks too broadly because it constitutes only an allegation that the class members 'have all suffered a violation of the same provision of law,' which the Supreme Court has now instructed is insufficient to establish commonality." *Id*. at 126 (quoting *Wal-Mart*, 564 U.S. at 350). Notably, the Court of Appeals in *D.L.* stressed that the commonality requirement could still be satisfied in appropriate cases where plaintiffs identified specific policies that caused harm to all class members. *Id*. at 127 (citing *McReynolds v. Merrill Lynch*, 672 F.3d 482, 487 (7th Cir. 2012)). However, because the *DL* plaintiffs failed to identify a "single or uniform policy or practice that bridges all of their claims," the class failed to meet the Supreme Court's requirement that plaintiffs challenge specifically "a common harm suffered as a result of *a policy or practice that affects each class member*." *Id*. at 127-28.

Other courts have similarly held that proposed class actions that allege the same legal injury suffered by putative class members, but fail to specifically identify a common policy or practice that allegedly injures each class member in the same way, cannot be certified. For example, in *Tabor v. Hilti, Inc.*, 703 F.3d 1206 (10th Cir. 2013), the Court of Appeals for the

Tenth Circuit held that a district court properly refused to certify a class of female employees

asserting a Title VII sex-discrimination claim for the denial of promotions. Plaintiffs challenged

"a highly discretionary policy for granting promotions," and could not show that defendant

"maintained 'a common mode of exercising discretion that pervade[d] the entire company.'"

*Tabor*, 703 F.3d at 1229 (quoting *Wal-Mart*, 564 U.S. at 356). Even though the Tenth Circuit

acknowledged plaintiffs had shown a promotion policy that was "haphazard" and had "an overall

disparate impact on women," the allegations did not satisfy Rule 23(a) because "Plaintiffs have

not shown that the facts and circumstances involved in Hilti's promotion choices are common

across the class of female employees."  *Id*. "Given the broad discretion involved in [the

defendant's] alleged discriminatory employment practice and the highly individualized facts and

circumstances raised in each employment decision," the Court concluded that "we cannot say

that the proposed class 'present[s] common issue[s] that could be resolved efficiently in a single

proceeding.'" *Id.*

Similarly, the Court of Appeals for the Sixth Circuit affirmed the denial of class

certification in a case involving female employees alleging systemic bias in hiring decisions in

violation of Title VII. *Davis v. Cintas Corp.*, 717 F.3d 476 (6th Cir. 2013). In that case, Plaintiffs

produced anecdotal evidence that some managers viewed the position in question as better suited

to males than females, and statistical evidence showing that some supervisors were under-hiring

women. The Court held that plaintiffs had failed to identify any common issue suitable for

resolution through Rule 23 class litigation. *Id.* at 487. Because plaintiffs alleged "discrimination

in different ways at different stages of the . . . process, and depending on different [defendant's]

employees," there could be no common policy or practice capable of being resolved via class

litigation. *Id.* (quoting *Serrano v. Cintas Corp.*, 2009 WL 910702, at *5 (E.D. Mich. Mar. 31,

2009)). Even though the defendant had a uniform hiring policy, the plaintiffs failed to show

commonality because they did not challenge this uniform policy, but rather alleged that

defendants' various employees with discretion over hiring decisions made unilateral, subjective

decisions that favored male applicants over their female counterparts. *Id*. at 488.

      As demonstrated by the holding and reasoning of these cases, Plaintiffs' claims here lack

both the elements of commonality and typicality necessary to satisfy Rule 23(a). *Wal-Mart* , 564

U.S. at 349 n.5 (observing that the requirements under Rule 23(a), especially commonality and

typicality, "tend to merge"); *see also Garcia v. Veneman*, 211 F.R.D. 15, 18 n.1 (D.D.C. 2002).

Plaintiffs are attempting to bring class claims for both disparate treatment and disparate impact

claims with respect to both subclasses, but do so by challenging a wide variety of factually-

distinct, discretionary actions made by a variety of different FBI personnel. In addition,

Plaintiffs' Second Amended Complaint is tellingly vague on what, if any, "policy" they are

actually complaining about via their putative class claims. Instead, Plaintiffs assert in a

conclusory way that they have satisfied the commonality requirement of Rule 23 by alleging that

the common questions "include, but are not limited to:"

     a.  whether the FBI's common operating practices and procedures in its Basic
         Field Training Course discriminate against female []Trainees;

     b.  whether the FBI's common policies have had an adverse impact on the
         subclass, and if so, whether such impact can be justified by business necessity;

     c.  whether the FBI has acted intentionally to discharge female []Trainees from the
         Basic Field Training Course because of their sex;

     d.  whether the []Trainee Subclass may obtain injunctive and other equitable
         remedies, as well as an award of damages.

SAC ¶¶ 61, 72. These allegations, however, either: (a) provide merely vague, general references

to "common policies," without providing any specific information about what those policies are

and why or how they have caused a common injury to all putative class members; or (b) use circular logic to refer to vague allegations of legal violations and remedies, without specifying a common policy, pattern, or practice sufficient to plausibly allege that they satisfy the Rule 23 commonality requirement.

The remainder of Plaintiffs' Second Amended Complaint proves no more helpful in discerning their basis for asserting that they can satisfy the commonality requirement. Plaintiffs state that they "experienced discrimination throughout their time in Basic Training, through the FBI's policy of issuing disciplinary citations, called suitability notations, based on subjective criteria." SAC ¶ 2. Inasmuch as the uniform policy or practice that Plaintiffs allege satisfies the commonality requirement of Rule 23 is the FBI's "policy" of giving Training Division employees, including instructors, the discretion to issue SNs to trainees based on the six criteria referred to as "the suitability dimensions," they have failed to set forth a plausible claim under the Supreme Court's holding in *Wal-Mart*. In that case, the Supreme Court noted that plaintiffs' challenge to the defendant's policy of giving supervisors substantial discretion over employment decisions was "just the opposite of a uniform employment practice that would provide the commonality needed for a class action[.]" *Wal-Mart*, 564 U.S. at 355. As the Court held, a "'policy' of *allowing discretion* by local supervisors over employment matters," *id.* (emphasis in original), not only undermines Plaintiffs' proffer of commonality by making it less likely that putative class members suffered the same injury, but also is "a very common and presumptively reasonable way of doing business—one that . . . 'should itself raise no inference of discriminatory conduct[.]'" *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990 (1988)).

The Second Amended Complaint also fails to reasonably assert a claim of sex discrimination because the suitability review and discharge decision-making process is "excessively subjective[,]" *see, e.g.,* SAC ¶¶ 217, 232. In a footnote, the Supreme Court observed that class certification may be appropriate in a discrimination case "if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through *entirely subjective decision-making processes*[,]" *Falcon*, 457 U.S. at 159 n.15. Even if an "entirely discretionary" decision-making process can suffice to show that the employer operated under a general policy of discrimination, the Second Amended Complaint does not allege that the suitability and discharge decision-making process was "entirely" discretionary. Far from the unfettered discretion contemplated in *Falcon*, FBI Training Division personnel issue suitability notations, conduct suitability reviews, and make recommendations and decisions regarding discharge based upon numerous written standards known and available to everyone in Basic Training, as Plaintiffs acknowledge. *See, e.g.*, SAC ¶¶ 29, 30, 33, 34, 35, 37, 52. The existence of such standardized, written guidance fatally undermines Plaintiffs' efforts to establish commonality and typicality based upon the theory that the FBI Training Division's decision-making process for suitability review and discharge is "entirely discretionary." *Garcia*, 211 F.R.D. at 20 ("[W]here, as here, a number of objective factors guide the decision-making process, the proposed class fits less neatly into the *Falcon* exception."). Likewise, Plaintiffs cannot show commonality in light of the large numbers of FBI personnel applying this guidance throughout different stages of the decision-making process of issuing suitability notations, conducting suitability reviews, and making discharge recommendations and decisions during each of the several Agent and Analyst Trainee Basic Training Courses that have taken place

since April 2015. *Id.* at 22 ("Commonality is defeated . . . by the large numbers . . . of the decision-makers.").

Elsewhere in their complaint, Plaintiffs reference "Defendant's policy, pattern, or practice of discrimination in discharging Agent Trainees based on sex, or Defendant's practice having a disparate impact based on sex." SAC ¶¶ 57, 68. This is nothing more than circular logic – in effect, Plaintiffs are saying that the discriminatory policy or practice they are basing their commonality argument on is the possibility of discrimination itself. But that is also squarely contrary to the Supreme Court's holding in *Wal-Mart*, which held that, "*[q]uite obviously*, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once." *Wal-Mart*, 564 U.S. at 350 (emphasis added). Instead, there must be some common contention of which "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke[,]" such as an "assertion of discriminatory bias *on the part of the same supervisor*." *Id.* (emphasis added). This is precisely what Plaintiffs have failed to allege and why their class claims must be dismissed under Rule 12(b)(6) for failure to state a claim that is even plausibly "capable of classwide resolution[.]" *Id.*; *see also Hartman v. Duffey*, 19 F.3d 1459, 1472 (D.C. Cir. 1994) ("[T]here is more to a showing of commonality than a demonstration that class plaintiffs suffered discrimination on the basis of membership in a particular group."); *Love v. Johanns*, 439 F.3d 723, 729 (D.C. Cir. 2006) (even where plaintiffs' "allegations may give the declarants standing to bring *individual* suits[,]" to show commonality that would satisfy Rule 23(a) plaintiffs must demonstrate a basis "to infer the existence of a 'common policy of discrimination[.]'").

29

Dismissal under Rule 12(b)(6) is therefore appropriate because the SAC's lack of allegations sufficient to plausibly demonstrate commonality and typicality is a fatal defect inherent in the claims that no amount of discovery could cure. Each Plaintiff alleges a highly-individualized set of facts about when she attended Basic Training, the suitability notations she received, the Training Division personnel involved in her suitability review, and the decision to dismiss her from Basic Training. As Plaintiffs acknowledge, suitability notations could be issued by any member of the Training Division personnel at any time, meaning that numerous different individuals made these determinations over the years. SAC ¶¶ 29-30. Each suitability notation issued involves a unique set of circumstances including a unique decision-maker's exercise of judgment in applying the standards to the particular facts at hand, and in many if not all cases, Plaintiffs dispute the underlying facts supporting their suitability notations and discharge.

This lack of commonality can be illustrated by comparing a sample of the individual Plaintiffs' allegations. Plaintiff Paula Bird alleges that she received three suitability notations for "not having the appropriate equipment[,]" SAC ¶ 80, and four suitability notations for "tactical mistakes[,]" such as the alleged failure to verify the facts justifying use of deadly force during a training exercise. SAC ¶ 81. In that specific instance, Ms. Bird alleges that she was discriminated against because an instructor, Randall Glass, issued her an SN for not using a flashlight to ascertain that a paper target was holding a weapon before applying deadly force to the target. *Id.* Ms. Bird alleges that a male counterpart made the same mistake but did not receive an SN. *Id.* Another Plaintiff, "B.A.", alleges that she was discriminated against when she received an SN from an instructor, Tyrone Jiles, for improperly responding to an email from a guest speaker. SAC ¶ 134. To resolve Ms. Bird's discrimination claim, it would be necessary to investigate the facts surrounding the issuance of her SN, the non-issuance of SNs to male trainees under

30

allegedly similar circumstances, and the intention of the instructor, Mr. Glass, when exercising

his discretion to issue an SN to Ms. Bird but not to issue SNs to unspecified male trainees for

unspecified similar infractions. However, resolving these issues certainly would *not* resolve "in

one stroke" the entirely separate factual and legal issues of whether "B.A." was discriminated

against when her supervisor, Mr. Giles, issued her an SN for improperly responding to an email.

Resolving that issue would require an entirely separate inquiry into the specific facts surrounding

that incident, and be wholly unrelated to any inquiry into or resolution of Ms. Bird's

discrimination allegations. And resolution these claims could not be of any assistance to

resolving, for example, the issue of whether another Plaintiff, "S.B.", was discriminated against

when she was referred for Suitability Review based upon her three SNs when she alleges that

some of her male trainee counterparts were not brought before the TRB even though they had

received similar or greater numbers of SNs. SAC ¶ 150.

As this sample comparison demonstrates, Plaintiffs' claims hinge upon allegedly

discriminatory actions by different decision-makers under different factual circumstances. Such

varied claims are simply not amenable to being resolved "in one stroke" via class litigation,

because of the highly individualized and fact-specific nature of each Plaintiff's claim. Further

compounding this defect, the various Plaintiffs allege discriminatory actions at one or more

stages of the process, including (a) the issuance of SNs (during various stages of Basic Training);

(b) the referral for Suitability Review based on the number and severity of those SNs; and (c) the

TRB's recommendation of whether the trainee should be removed from the program and whether

the trainee should be allowed to go through the program again. *Cf. D.L.*, 713 F.3d at 127 (noting

that class litigation was not appropriate where "the harms alleged to have been suffered by the

plaintiffs here involve different policies and practices at different stages of the . . . process").

These varied circumstances make it not only inappropriate but impracticable to evaluate

each suitability notation, let alone suitability review and discharge determination, on a class-wide

basis. Rather, Plaintiffs' allegations, as well as the allegations of each class member, would

require numerous mini-trials to determine the merits of each suitability decision. This highly

individualized nature of the challenged employment decisions demonstrates how implausible it is

that Plaintiffs could satisfy the threshold requirements under Rule 23(a). Accordingly, their class

claims must be dismissed.

C.     The Putative Subclasses Fail to Meet the Requirements of Rule 23(b)

Even assuming, for the sake of argument, that Plaintiffs could meet the requirements of

Rule 23(a), plaintiffs cannot demonstrate that they could satisfy Rule 23(b). Plaintiffs allege that

they are bringing claims on behalf of the same two subclasses simultaneously under both Rule

23(b)(2), with respect to the claims for declaratory and injunctive relief, and Rule 23(b)(3), with

respect to the claims for monetary damages. SAC ¶¶ 59 (Agent Trainee Subclass), 70 (Analyst

Trainee Subclass). A court may exercise its discretion to certify such a hybrid class only if the

requirements of both provisions are met. *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir.

1997); *Bynum v. Dist. of Columbia*, 217 F.R.D. 43, 48 (D.D.C. 2003). Here, the Second

Amended Complaint does not demonstrate that Plaintiffs could plausibly satisfy the requirements

of either Rule 23(b)(2) or Rule 23(b)(3), and their class claims in Counts One through Four, as

well as related claims for relief, accordingly must be dismissed for failure to state a claim upon

which relief can be granted. FED. R. CIV. P. 12(b)(6).

1.     *Final injunctive or declaratory relief would not provide appropriate*
       *class-wide relief because Plaintiffs lack standing and their claims*
       *depend upon unique facts*

Rule 23(b)(2) provides for class certification only where "the party opposing the class has

acted or refused to act on grounds generally applicable to the class, thereby making appropriate

final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" Plaintiffs cannot satisfy these requirements under Rule 23(b)(2). *See Wal-Mart*, 564 U.S. at 366 (for certification under Rule 23(b)(2), challenged conduct must be "such that it can be enjoined . . . only as to all of the class members or as to none of them"). First, Plaintiffs lack standing to seek the declaratory and injunctive relief they request. Second, Plaintiffs cannot show that the FBI has acted on generally applicable grounds because the challenged decisions to issue suitability notations, conduct suitability reviews, and discharge trainees are inherently dependent upon highly-individualized facts.

As a threshold matter, Plaintiffs lack standing to maintain claims for the requested equitable relief. By definition, any member of the putative Agent Trainee or Analyst Trainee Subclass must have been permanently discharged from Basic Training after undergoing suitability review and thus cannot return to Basic Training. SAC ¶¶ 56, 67. Plaintiffs therefore cannot establish standing to seek any future injunctive relief against the FBI affecting its operation of Basic Training. *Supra*, Arg. § I. And it is unclear how any other equitable relief concerning the FBI's operation of its Basic Training would provide relief to putative class members who, by definition, have been discharged from Basic Training and cannot seek to enroll again. Plaintiffs' lack of standing to pursue class-wide equitable relief is fatal to their attempts to certify subclasses under Rule 23(b)(2). *Lyons,* 461 U.S. at 101-02 (Under Article III of the Constitution, the plaintiff seeking injunctive relief must demonstrate that he faces some immediate danger of direct injury.); *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 241 (W.D. Pa. 2001) ("A class representative unable to seek injunctive relief would presumably have no incentive to represent vigorously class members who could assert such claims."). Plaintiffs' lack of standing is grounds for rejecting the class claims. *See Johnson*, 248 F.R.D. at 54 n.5 ("Although the Court

does not assess the merits of Plaintiffs' claims now, it is appropriate at the class certification stage to discuss justiciability concerns." (citing *In re Lorazepam & Clorazepate Antitrust Litigation*, 202 F.R.D. 12, 22 (D.D.C. 2001); *Prado–Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) ("[A]ny analysis of class certification must begin with the issue of standing."); *Cruz v. Am. Airlines, Inc.,* 356 F.3d 320, 331 (D.C. Cir. 2004) (plaintiffs' lack of standing disposed of plaintiffs' class certification arguments))).

Even assuming they could establish standing, the same highly-individualized, fact-dependent nature of the challenged actions that bedevils their attempts to show commonality similarly devastates Plaintiffs' ability to show that the FBI Training personnel have acted or refused to act on generally applicable grounds such that a single declaratory judgment or injunction would provide appropriate relief to all members of the putative subclasses. *See Love v. Johanns*, 439 F.3d at 730 n.3 (noting same facts defeating commonality also show lack of generally applicable grounds and predominance); *see also Wal-Mart*, 564 U.S. at 360. Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 361. Because of the individualized facts of each Agent or Analyst Trainee's claim, Plaintiffs cannot show that a single injunction or declaratory judgment would provide relief to each class member. *See D.L.*, 860 F.3d at 726 ("To certify a class under this provision, a single injunction must be able to 'provide relief to each member of the class.'" (quoting *Wal-Mart*, 564 U.S. at 360)).[8] Indeed, in their Prayer for Relief, Plaintiffs fail to identify a single employment practice that they request be declared unlawful, prohibited, or required so as to provide relief to the entire class. *See infra* Arg. § V.

---

[8] Nor does Rule 23(b)(2) "authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360-61. *See* SAC Prayer for Relief ¶¶ 6, 7, & 10 (seeking damages and "further legal . . . relief").

Plaintiffs seek to certify the Agent Trainee and Analyst Trainee Subclasses to challenge suitability notations, suitability reviews, and discharge determinations that by their very nature hinge upon individualized facts particular to each would-be member of the putative classes. Even assuming the truth of the facts as alleged, Plaintiffs' allegations show that many of the challenged suitability and discharge decisions involved discretionary evaluations of judgment calls made in the context of various tactical scenarios involving the use of weapons and the application of deadly force, which generally involve different tactical scenarios, different specific infractions, and different Training Division personnel making the allegedly-discriminatory decisions. *See, e.g.,* SAC ¶¶ 81, 86, 101, 107, 148-49, 154-55, 161, 174, 179, 189, 194, 199. Because these challenged decisions are, by their very nature, grounded in highly-individualized facts, Plaintiffs cannot possibly show that the FBI has acted on generally applicable grounds with respect to all putative class members. Thus, the Agent Trainee and Analyst Trainee Subclasses could not plausibly satisfy Rule 23(b)(2).

2. *Common issues could not possibly predominate because the claims depend upon highly individualized facts*

Nor can Plaintiffs satisfy Rule 23(b)(3)'s prerequisites that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "[T]o meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 424 (D.D.C. 2017) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The

predominance requirement is even "more stringent" and "far more demanding" than the commonality requirement of Rule 23(a). *Id.* at 609, 624; *Johnson*, 248 F.R.D. at 56.

As noted above, Plaintiffs cannot show that common questions of fact predominate because each decision to issue a suitability notation, conduct suitability review, or recommend or issue a determination of discharge is inherently dependent upon highly-individualized facts. *In re Rail Freight Fuel Surcharge Antitrust Litig.* ("*In re Rail Freight I*"), 725 F.3d 244, 252 (D.C. Cir. 2013) ("When a case turns on individualized proof of injury, separate trials are in order."). Similarly, the putative Agent and Analyst Trainee subclasses would include individuals not discharged as a result of sex-based discrimination; thus, Plaintiffs cannot show predominance. *Id.* at 252-53 ("Common questions of fact cannot predominate where there exists no reliable means of proving classwide injury in fact[.]"); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.* ("*In re Rail Freight II*"), 934 F.3d 619, 624 (D.C. Cir. 2019) (common issues did not predominate where putative class included more than a *de minimis* number of members "with no common proof" of injury and causation, which are "essential elements of liability").

IV. **Plaintiffs' Claims Alleging a Pattern or Practice of Disparate Treatment and Disparate Impact Should Be Dismissed For Lack of a Specific Policy, Pattern, or Practice Being Challenged**

Title VII of the Civil Rights Act bars "intentional discrimination and artificial, arbitrary, or unnecessary barriers" that deprive a current or potential employee of "equal opportunity[.]" *Segar v. Smith*, 738 F.2d 1249, 1258 (D.C. Cir. 1984). Therefore, "a plaintiff may establish [] discrimination in violation of Title VII by proving either that the employer acted with a discriminatory motive (a 'disparate treatment' claim), or that its action was the result of a process that, while apparently 'fair in form,' was 'discriminatory in operation' (a 'disparate impact' claim)." *Davis v. Dist. of Columbia*, 925 F.3d 1240, 1248 (D.C. Cir. 2019) (citing *Griggs v. Duke*

*Power Co.*, 401 U.S. 424, 431 (1971)). Plaintiffs raise both disparate treatment (Counts One and Three) and disparate impact (Counts Two and Four) claims on behalf of each subclass.

> A.    Counts One and Three Should Be Dismissed for Lack of Any Pattern or Practice Resulting in Disparate Treatment of Female Trainees

Under Title VII, disparate treatment occurs when "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). To succeed on a pattern-or-practice disparate treatment claim, "plaintiffs must prove more than isolated acts of discrimination; rather, they must establish that intentional discrimination was the defendant's 'standard operating procedure.'" *McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 1, 7 (D.D.C. 2004) (quoting *Teamsters*, 431 U.S. at 336). "[T]he central distinction between a disparate impact case and a 'pattern or practice' disparate treatment case is that only the latter requires proof of discriminatory intent." *Davis v. Dist. of Columbia*, 949 F. Supp. 2d 1, 8 (D.D.C. 2013) (citing *Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C. Cir. 1999)). However, a plaintiff may attempt to prove discriminatory intent by showing statistical evidence where there are "allegations of a 'pattern or practice' of discrimination *affecting an entire class of individuals.*" *Palmer v. Shultz*, 815 F.2d 84, 90 (D.C. Cir. 1987) (emphasis added) (citation omitted).

Here, Plaintiffs allege only one cause of action, Count Five, for individual acts of alleged discrimination by FBI employees, with regard to a single Plaintiff, "B.G." SAC ¶¶ 237-45. All other Plaintiffs challenge only that "Defendant has engaged in a pattern or practice of intentional discrimination against its female . . . Trainees in issuing Suitability Notations, initiating Suitability Reviews, referring them for Trainee Review Boards, and making discharge, recycling, and reinstatement decisions."  SAC ¶¶ 209 (NATs); 224 (NIATs). Because Plaintiffs rely upon a "pattern-or-practice" theory of disparate treatment, the inquiry as to whether Plaintiffs have

adequately identified any pattern or practice of discrimination that "affect[s] an entire class of individuals" is similar to the inquiry into whether Plaintiffs have adequately pled that they can satisfy the commonality requirement of Rule 23. *See Wal-Mart*, 564 U.S. at 352 ("proof of commonality necessarily overlaps with respondents' merits contention that [employer] engages in a *pattern or practice* of discrimination") (emphasis in original). As explained in more detail *supra* Arg. § III.B., Plaintiffs have utterly failed to identify any specific discriminatory employment policy, pattern, or practice that affects an entire class of individuals. They rely instead upon various fact-specific anecdotes of gender discrimination. Thus, for the same reasons Plaintiffs have failed to satisfy the commonality requirement of Rule 23, they also have failed to state a disparate treatment claim with respect to either subclass, and Counts One and Three of Plaintiffs' Second Amended Complaint should be dismissed.

      B.    <u>Counts Two and Four Should Be Dismissed for Lack of Any Pattern or Practice Resulting in Disparate Impact on Female Trainees</u>

"A disparate impact claim contends that an observed disparity caused by a particular employment practice cannot be justified as necessary to the employer's business." *Davis*, 925 F.3d at 1248. "[T]o establish disparate-impact discrimination, Plaintiff must show that a facially neutral employment policy or practice has a significant disparate impact on a protected class of which he is a member." *Jianqing Wu v. Special Counsel, Inc.*, 54 F. Supp. 3d 48, 54 (D.D.C. 2014) (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). Even at the pleading stage, "[c]ommon sense and fairness . . . dictate that a plaintiff, at a minimum, allege *some* statistical disparity, however elementary, in order for the defense to have any sense of the nature and scope of the allegation the plaintiff is seeking to prove." *Brady v. Livingood*, 360 F. Supp. 2d 94, 100 (D.D.C. 2004) (citing *Krodel v. Young*, 748 F.2d 701, 709 (D.C. Cir. 1984)).

However, to establish a disparate impact claim, a plaintiff must do more than "show that there are statistical disparities in the employer's work force." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988) (plurality opinion). Rather, "the employee is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)) (emphasis in *Smith*); *see also Davis*, 925 F.3d at 1249 (noting that plaintiffs must specify "an identifiable practice, criterion, or bundle of criteria behind a specified employment event" which resulted in a disparate impact on a protected class). A plaintiff's "oblig[ation] . . . to isolate and identify the specific employment practices that are allegedly responsible for any observed statistical disparities . . . has bite[.]" *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100 (2008). This is particularly true when a disparate impact claim is based upon a combination of objective standards and individual subjective determinations, such as Plaintiffs' claims here. *Wards Cove*, 490 U.S. at 656.

Plaintiffs have not set forth allegations showing a statistical disparity; this, alone, is a basis for dismissing their disparate impact claims. *Garcia*, 211 F.R.D. at 21-22 & nn. 6, 7 (quoting *Wards Cove*, 490 U.S. at 656 ("Especially in [disparate impact] cases where an employer combines subjective criteria with the use of more rigid standardized rules or tests, the plaintiff is in our view responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.")).

But even if Plaintiffs could have pleaded a statistical disparity, Plaintiffs' disparate impact class claims should be dismissed because Plaintiffs have failed to "'isolate[e] and identify[] the *specific* employment practices that are allegedly responsible for'" the disparity. *Smith*, 544 U.S. at 241 (quoting *Wards Cove*, 490 U.S. at 656) (emphasis in *Smith*). In a case

involving a putative disparate impact class claim, the inquiry into whether plaintiffs have

identified a specific employment policy or practice responsible for a disparate impact is very

similar to the inquiry into whether plaintiffs have satisfied the commonality requirement of Rule

23, and an allegation of "the bare existence of delegated discretion" cannot suffice as the basis

for a disparate impact claim. *Wal-Mart*, 564 U.S. at 357. Here, as explained in more detail *supra*

Arg. § III.B., Plaintiffs have failed to identify any specific policy, pattern, or employment

practice that has a common impact on all Plaintiffs and putative class members, and instead

make a series of highly-individualized, fact-specific allegations of allegedly discriminatory

discretionary acts made by different FBI personnel at different stages of the BFTC disciplinary

process. For the same reasons Plaintiffs have failed to satisfy the commonality requirement of

Rule 23, Plaintiffs have failed to identify any specific employment practices that have a disparate

impact on female trainees. Accordingly, Counts Two and Four should be dismissed.

### V.  Plaintiffs Have Failed To State a Claim for Injunctive Relief Because They Have Failed To Plead with Requisite Specificity the Grounds for This Relief

Plaintiffs have failed to state a claim for the equitable relief requested in paragraphs 3, 4,

and 5 of the Prayer for Relief because they have not plead with requisite specificity the grounds

for such requested relief or the conduct they wish to be prohibited or required. SAC at 70-71.

Federal Rule of Civil Procedure 65 requires that: "Every order granting an injunction and every

restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and

(C) describe in reasonable detail—and not by referring to the complaint or other document—the

act or acts restrained or required." Plaintiffs' aforementioned failure to identify a specific

employment practice causing the alleged harm also leaves Plaintiffs' requests for equitable relief

too vague to satisfy Rule 65(d). Plaintiffs' requests for equitable relief lack the requisite

specificity, instead asking the Court to declare unlawful and permanently enjoin the FBI from

engaging in "the practices complained of" *in the complaint*, SAC Prayer for Relief ¶ 3, 4, and "requiring the FBI adopt employment practices in conformity with the requirements of Title VII[,]" SAC Prayer for Relief ¶ 5. In other words, Plaintiffs entirely fail to satisfy Rule 65(d): (A) they fail to state the reasons why equitable relief should issue; (B) they fail to state specifically the proposed terms of such relief; and (C) they fail to "describe in reasonable detail" without "referring to the complaint" what act or acts should be prohibited or required. Plaintiffs therefore cannot obtain the requested equitable relief requiring the FBI generally to obey the law. *See* SAC Prayer for Relief ¶¶ 3-5; *Ward v. Kennard*, 133 F. Supp. 2d 54, 59 (D.D.C. 2000) (failure to "specify the form of injunctive or specific relief sought" is a failure "to satisfy the specificity requirements of Federal Rule of Civil Procedure 8(a)[.]").

Not only is their request for equitable relief fatally vague in terms of the remedy, itself, but also Plaintiffs have failed to state the basis for such relief. Plaintiffs have entirely failed to demonstrate that it is reasonably likely they will again suffer the alleged discrimination and thus have failed to demonstrate the significant "degree of concern that typically warrants enjoining future discrimination." *Robinson v. Dist. of Columbia*, 341 F. Supp. 3d 97, 109 (D.D.C. 2018) (declining to issue injunction based upon plaintiff's speculation that his former supervisor might return to oversee plaintiff and discriminate against him).

In addition, the Second Amended Complaint particularly fails to state a plausible claim for the permanent, mandatory injunction requested in paragraph 5 of the Prayer for Relief. SAC at 71. Plaintiffs essentially request that the Court issue a mandate to the FBI to adopt unspecified "employment practices in conformity with the requirements of Title VII[.]" SAC at 71. "When a party seeks a mandatory injunction – to change the status quo through action rather than merely to preserve the status quo – typically the moving party must meet a higher standard than in the

ordinary case: the movant must show 'clearly' that she is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 125-26 (D.D.C. 2018) ("Because Plaintiffs seek to alter – not preserve – the status quo, the Court will exercise extreme caution in assessing Plaintiffs' invitation to invoke the court's extraordinary equitable powers."); *see also Singh v. Carter*, 185 F. Supp. 3d 11, 17 n.3 (D.D.C. 2016); *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd on other grounds*, 159 F.3d 636, No. 97-7225, 1998 U.S. App. LEXIS 7871, at *2 (D.C. Cir. Apr. 17, 1998) (declining to reach the question of whether "the standard applicable to a mandatory preliminary injunction is higher than that applicable to a prohibitory preliminary injunction because, as the district court also held, the appellants fail even under the lower standard that they advocate."). Plaintiffs entirely fail to show a clear entitlement to such relief.

Accordingly, the Plaintiffs' claims for declaratory and injunctive relief must be dismissed for failure to state a claim upon which relief can be granted.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant the

Partial Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim Upon Which

Relief Can Be Granted.

Dated:  March 2, 2020                          Respectfully submitted,

                                               JOSEPH H. HUNT
                                               Assistant Attorney General

                                               CARLOTTA P. WELLS
                                               Assistant Branch Director

                                                /s Amber Richer
                                               MARTIN M. TOMLINSON (SC Bar No. 76014)
                                               AMBER RICHER (CA Bar No. 253918)
                                               Trial Attorneys
                                               U.S. Department of Justice
                                               Civil Division, Federal Programs Branch
                                               1100 L Street NW
                                               Washington, D.C. 20530
                                               Tel: (202) 514-3489
                                               Email: amber.richer@usdoj.gov

                                               *Attorneys for Defendant*