# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULA BIRD, et al. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 1:19-CV-1581 (KBJ) |
| ) | |
| v. ) | |
| ) | Judge: Ketanji Brown Jackson |
| WILLIAM BARR, Attorney General of the ) | |
| United States, named in his official Capacity, as ) | |
| head of the Department of Justice, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I.  Introduction ................................................................................................. 1

II. Factual and Procedural Background ............................................................ 2

    A.  Specific Employment Practices ........................................................... 3

    B.  Discriminatory Intent and Impact ....................................................... 5

    C.  Procedural Background ........................................................................ 7

III. Legal Standard ............................................................................................ 8

IV. Argument .................................................................................................... 9

    A.  Plaintiffs' Claims are Timely. .............................................................. 9

        1.  Plaintiffs satisfy timely administrative exhaustion through the single filing rule. .............................................................................. 9

        2.  Plaintiffs may rely on the complaint filed by T.S. .................................. 11

        3.  Rose's claim for reinstatement is also timely ........................................ 12

    B.  Class Representatives Have Standing and Have Met the Pleading Standard for Injunctive and Declaratory Relief. ................................................ 13

        1.  Class Representatives demonstrate standing to seek injunctive relief. ................................................................................................. 13

        2.  Defendant's proposed pleading standard for injunctive relief has no basis in law ..................................................................................... 15

    C.  Class Representatives' Allegations Could Satisfy Rule 23 on a Developed Record. .................................................................................. 17

        1.  Defendant's attempt to deny class certification on the pleadings is premature. ....................................................................................... 17

        2.  Class Representatives plausibly allege commonality and typicality. ....... 18

            a.  Class Representatives plausibly allege class-wide disparate treatment claims. ............................................................................ 18

            b.  Class Representatives plausibly allege class-wide disparate impact claims. .................................................................................. 25

        3.  Class Representatives can meet the requirements of 23(b) on a developed record. ............................................................................. 29

            a.  Class Representatives seek injunctive and declaratory relief that are appropriate for the class as a whole. ............................... 29

## TABLE OF CONTENTS

Page

   b. Class Representatives plausibly allege common issues that will be shown to predominate on a developed record..................31

V. Conclusion .................................................................................................... 32

# TABLE OF AUTHORITIES

Page

CASES

*Alvarez v. Keystone Plus Constr. Corp.*,
303 F.R.D. 152 (D.D.C. 2014)..........................................................................31

*Aracely, R. v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018) ...................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................9, 17, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................17, 18

*Borum v. Brentwood Vill.*,
LLC, 324 F.R.D. 1 (D.D.C. 2018) .......................................................................30

*Brady v. Livingood*,
360 F. Supp. 2d 94 (D.D.C. 2004) .....................................................................28

*Brewer v. Holder*,
No. CV 08-1747 (BJR), 2013 WL 12399123 (D.D.C. Aug. 9, 2013) ....................................10

*Brooks v. Dist. Hosp. Partners, L.P.*,
606 F.3d 800 (D.C. Cir. 2010)........................................................................10, 11

*Brown v. District of Columbia*,
514 F.3d 1279 (D.C. Cir. 2008) .........................................................................9

*Byrd v. District of Columbia*,
807 F. Supp. 2d 37 (D.D.C. 2011) ......................................................................10

*Calibuso v. Bank of Am. Corp.*,
893 F. Supp. 2d 374 (E.D.N.Y. 2012) ..................................................................26

*Cause of Action Inst. v. IRS*,
390 F. Supp. 3d 84 (D.D.C. 2019) ........................................................................8

*Chen-Oster v. Goldman, Sachs & Co.*,
325 F.R.D. 55 (S.D.N.Y. 2018) .....................................................................19, 21

*Chen-Oster v. Goldman, Sachs & Co.*,
877 F. Supp. 2d 113 (S.D.N.Y. 2012)...................................................................26

# TABLE OF AUTHORITIES

Page

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*,
   15 F. Supp. 2d 1 (D.D.C. 1997) ............................................................................. 15

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
   406 F. Supp. 3d 1258 (M.D. Ala. 2019) ................................................................. 28

*\*Davis v. District of Columbia*,
   246 F. Supp. 3d 367 (D.D.C. 2017) ................................................................. 19, 21

*\*Davis v. District of Columbia*,
   925 F.3d 1240 (D.C. Cir. 2019) ...................................................................... 25, 27

*DL v. District of Columbia*,
   713 F.3d 120 (D.C. Cir. 2013) ............................................................................... 24

*\*Doe v. U.S. Dep't of Justice*,
   753 F.2d 1092 (D.C. Cir. 1985) ............................................................................. 16

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) .................................................................... 26, 27

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................................. 26

*Eubanks v. Billington*,
   110 F.3d 87 (D.C. Cir. 1997) ................................................................................. 29

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
   28 F.3d 1268 (D.C. Cir. 1994) ............................................................................... 13

*Farris v. Rice*,
   453 F. Supp. 2d 76 (D.D.C. 2006) .................................................................... 15, 16

*\*Foster v. Gueory*,
   655 F.2d 1319 (D.C. Cir. 1981) ............................................................................. 10

*Garcia v. Veneman*,
   211 F.R.D. 15 (D.D.C. 2002) ........................................................... 22, 23, 24, 28

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ......................................................................................... 22, 23

*\*Grogan v. Holder*,
   No. 08-1747, 2012 WL 13156807 (D.D.C. Sept. 27, 2012) ............................ 21, 23

# TABLE OF AUTHORITIES

Page

*Harris v. District of Columbia Water & Sewer Auth.*,
   791 F.3d 65 (D.C. Cir. 2015) ............................................................................................9

*Hein v. Freedom from Religion Found., Inc.*,
   551 U.S. 587 (2007) ..........................................................................................................13

*Hettinga v. United States*,
   677 F.3d 471 (D.C. Cir. 2012) ..........................................................................................9

*Howard v. Gutierrez*,
   474 F. Supp. 2d 41 (D.D.C. 2007) ...................................................................................12

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977) ................................................................................................. passim

*J.D. v. Azar*,
   925 F.3d 1291 (D.C. Cir. 2019) .......................................................................................14

*In re Johnson*,
   760 F.3d 66 (D.C. Cir. 2014) .................................................................................. passim

*Kursar v. Transp. Sec. Admin.*,
   751 F. Supp. 2d 154 (D.D.C. 2010), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011) ...................16

*Love v. Johanns*,
   439 F.3d 723 (D.C. Cir. 2006) .........................................................................................29

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................8

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ..............................................................................................................9

*In re McCormick & Co.*,
   217 F. Supp. 3d 124 (D.D.C. 2016) .............................................................................17, 18

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   672 F.3d 482 (7th Cir. 2012) ............................................................................................25

*Menoken v. Miles*,
   270 F. Supp. 3d 200 (D.D.C. 2017), *aff'd sub nom. Menoken v. Kerner*, 741 F.
   App'x 817 (D.C. Cir. 2018) ...............................................................................................13

*Moore v. Napolitano*,
   926 F. Supp. 2d 8 (D.D.C. 2013) .....................................................................................22

# TABLE OF AUTHORITIES

Page

*Morrelli v. Corizon Health, Inc.*,
    No. 1:18-CV-1395-LJO-SAB, 2019 WL 918210 (E.D. Cal. Feb. 25, 2019) .........................17

*In re Navy Chaplaincy*,
    697 F.3d 1171 (D.C. Cir. 2012) ...................................................................................................14

*Owens v. Republic of Sudan*,
    531 F.3d 884 (D.C. Cir. 2008) .....................................................................................................18

*Palmer v. Shultz*,
    815 F.2d 84 (D.C. Cir. 1987) .................................................................................................19, 21

*Parker v. District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*,
    554 U.S. 570 (2008)........................................................................................................................8

*Powell v. IRS*,
    317 F. Supp. 3d 266 (D.D.C. 2018) .............................................................................................16

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) .....................................................................................................31

*Ramseur v. Perez*,
    962 F. Supp. 2d 21 (D.D.C. 2013) ...............................................................................................28

*Robinson v. District of Columbia*,
    341 F. Supp. 3d 97 (D.D.C. 2018) ...............................................................................................15

*\*Ross v. Lockheed Martin Corp.*,
    267 F. Supp. 3d 174 (D.D.C. 2017) ........................................................................................22, 29

*\*Scott v. Family Dollar Stores, Inc.*,
    733 F.3d 105 (4th Cir. 2013) .................................................................................................25, 27

*Segar v. Smith*,
    738 F.2d 1249 (D.C. Cir. 1984) ...................................................................................................19

*Singh v. Carter*,
    185 F. Supp. 3d 11 (D.D.C. 2016) ...............................................................................................15

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)..........................................................................................................................8

*Stocks v. Cordish Cos., Inc.*,
    118 F. Supp. 3d 81 (D.D.C. 2015) .................................................................................................9

# TABLE OF AUTHORITIES

<u>Page</u>

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ................................................................................................18

*\*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ............................................................................................31

*Tyson v. Brennan*,
    277 F. Supp. 3d 28 (D.D.C. 2017) ............................................................................8

*Tyson v. Brennan*,
    306 F. Supp. 3d 365 (D.D.C. 2017) ....................................................................9, 32

*\*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................... *passim*

*Ward v. Kennard*,
    133 F. Supp. 2d 54 (D.D.C. 2000) ..........................................................................16

*\*Watson v. Fort Worth Bank & Tr.*,
    487 U.S. 977 (1988) ...........................................................................................23, 27

*Whiteru v. Wash. Metro. Area Transit Auth.*,
    258 F. Supp. 3d 175 (D.D.C. 2017) ..........................................................................8

*Worth v. Jackson*,
    451 F.3d 854 (D.C. Cir. 2006) ................................................................................14

## STATUTES & OTHER AUTHORITIES

2 William B. Rubenstein, *Newberg on Class Actions* § 4:49, 195-96 (5th ed.
    2012) .......................................................................................................................31

29 C.F.R. § 1614.407(a) .................................................................................................12

Civil Rights Act of 1964 Title VII, 42 U.S.C. §§ 2000e, et seq. .......................... *passim*

Federal Rule of Civil Procedure 12(b) ........................................................................8, 9

Federal Rule of Civil Procedure 15(a) ........................................................................7, 8

Federal Rule of Civil Procedure 23 ..................................................................... *passim*

Federal Rule of Civil Procedure 65(d) ...........................................................................15

## I.     INTRODUCTION

Defendant seeks to avoid scrutiny for sex discrimination that pervades its training program for incoming FBI Agents and Analysts.  Plaintiffs' Third Amended Complaint plausibly alleges facts supporting each of their claims and establishing jurisdiction in this Court.  In response, Defendant challenges the timeliness of certain Plaintiffs' claims.  Defendant acknowledges that the "single-filing" rule permits some plaintiffs to rely on others' timely filed claims, but fails to apply it to Plaintiffs or demonstrate why it does not apply here.  Indeed, it cannot.  As will be explained below, each Plaintiff's claims are timely, either on their own or by relying on another's administrative charge under the single-filing rule.

The remainder of Defendant's arguments consist of two claims that it repeats in various forms to support different angles of attack.  First, Defendant alleges that Plaintiffs lack standing for injunctive relief because they do not face a threat of future injury that is sufficiently concrete and have not clearly articulated the policy they challenge.  However, many of the proposed Class Representatives wish to be reinstated and the barrier Defendant has imposed on their return to Federal Bureau of Investigation's Basic Field Training Course ("Basic Training")is the injury that is central to their claims: they were discriminatorily discharged from the program.  Given Defendant's policies and practices set forth in the Complaint and discussed below, if Plaintiffs are reinstated without the injunctive relief sought in the Complaint, they would be exposed to the same discriminatory policies that led to their discharge.  Second, Defendant argues that Class Representatives' claims are not sufficiently similar to each other to satisfy requirements for class claims under Federal Rule of Civil Procedure 23.  In making this argument, Defendant seeks to litigate class certification now and impose a higher standard than applicable at the pleading stage.  Further, Defendant ignores the plausible factual allegations showing that Class Representatives can meet the requirements for class certification if they are permitted to engage

in discovery.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs were female New Agent Trainees ("Agent Trainees") and New Intelligence

Analyst Trainees ("Analyst Trainees") in Basic Training.  Third Amended Compl. ("TAC") at

¶¶ 1–2.  In those roles, they were enrolled in training to become Agents and Intelligence

Analysts with their employer, the FBI.  *Id.* at ¶ 1.  Plaintiffs Paula Bird, Clare Coetzer, Spencer

Lee, Lauren Rose, Danielle Snider, "B.A.", "D.A.", "S.B.", D.C.", "P.E.", "W.M.", "C.S.",

"L.S.", "G.T.", and "T.S." ("Class Representatives") were discharged from Basic Training and

were not permitted to enter the Agent and Intelligence Analyst roles they had trained for.  *Id.* at

¶¶ 2, 8–12, 14–18, 20–24.  Class Representatives allege that these employment decisions were

discriminatory based on their sex under two theories: (1) Defendant was motivated by

discriminatory animus when it discharged them, (2) Defendant implemented facially neutral

policies that had a discriminatory impact on them.  *Id.* at ¶¶ 221, 229, 236, 244.  Class

Representatives bring Title VII discrimination claims on behalf of themselves and a proposed

class of female Trainees (collectively, "the Class"), divided into two subclasses for Agent

Trainees and Analyst Trainees, defined as follows:

> [Agent Trainee Subclass:] all female Agent Trainees who received suitability
> notations and were discharged from the FBI Academy's Basic Training after
> appearing before a Trainee Review Board  or equivalent, or after a Suitability
> Review ("Agent Trainee Subclass") from April 17, 2015, through the first day of
> trial in this action.

> [Analyst Trainee Subclass:] all female Analyst Trainees who received suitability
> notations based on suitability dimensions and were discharged from the FBI
> Academy's Basic Training after appearing before a Trainee Review Board or
> equivalent, or after a Suitability Review ("Analyst Trainee Subclass") from the
> April 17, 2015, through the first day of trial in this action.

*Id.* at ¶¶ 56, 67.  Class Representatives allege a pattern or practice of sex discrimination that

pervades Basic Training and motivated the discharge decisions.  Class Representatives further

describe specific employment practices that had an adverse impact on female Trainees.

      A.    <u>Specific Employment Practices</u>

Contrary to Defendant's claim, Plaintiffs' Complaint identifies several specific employment practices that contributed to the discriminatory decisions imposed by a single decisionmaker:

*Subjective Suitability Criteria:* During Basic Training, Class Representatives and the Class are evaluated on subjective "suitability dimensions:" conscientiousness, cooperativeness, emotional maturity, initiative, integrity, and judgment. *Id.* at ¶ 30, 43. Each of these dimensions is defined in the Basic Training Requirements Document with specific examples of suitable and unsuitable behavior. Class Representatives and the Class received suitability notations for perceived deficiencies in the suitability dimensions. *Id.* Gender bias infects Defendant's application of these subjective suitability dimensions and contributes to its pattern or practice of intentional discrimination. *Id.* at ¶¶ 31–41, 44–45, 54–55. In addition, Defendant's use of suitability dimensions has an adverse impact on female Agent and Analyst Trainees, as there is a common mode of exercising subjectivity in application of the suitability dimensions. *Id.* at ¶¶ 36, 38–41, 44–45, 48–50, 54.

*Simultaneous Training and Evaluation for Agent Trainee Subclass:* The Agent Trainee Subclass undergoes additional training in law enforcement skills comprising three "blocks" of training: Firearms Training, Physical Training/Defensive Tactics (one block), and Tactical Training. TAC at ¶ 28. In the Tactical Training block, the Agent Trainee Subclass is simultaneously trained and evaluated in new competencies. *Id.* at ¶ 31. When the Agent Trainee Subclass begins the practical application programs in Tactical Training, they are expected to apply the tactical skills, often for the first time, while simultaneously being evaluated. *Id.* at ¶ 32. During Tactical Training, the Agent Trainee Subclass is evaluated using a rubric of tactical

principles and critical elements.  *Id.* at ¶¶ 34–37.  The facially neutral Tactical Training rubric

and simultaneous training and evaluation have an adverse impact on female Agent Trainees.

*Id.* at 36, 38.  Moreover, the decision to simultaneously train and evaluate encourages the belief

that tactical skills are inherent, not taught.  *Id.* at 39.  Given the nature of tactical skills, and

gender stereotypes, if tactical sense is believed to be innate – as some instructors have explicitly

stated – the supervisory agents are more likely to believe that male Trainees possess such innate

ability than female Trainees.  *Id.* at 39, 91.  Thus, this facially neutral program structure also

makes it more likely that decisionmakers will rely on gender stereotypes in make decisions about

Trainees in tactics.

　　　　*Suitability Review and Trainee Review Board:*  As a result of their suitability notations,

Class Representatives and the Class were placed under "Suitability Review" and/or sent before

disciplinary boards called Trainee Review Boards.[1]  *Id.* at ¶¶ 2, 47–50.  Suitability Review and

the Trainee Review Board involve a small group of participants.  During a Suitability Review,

Training Division Executive Management receives materials about the Trainees from the Trainee

Management Unit, and the Assistant Director of the Training Division reviews these materials

and determines whether the Trainee should continue with Basic Training or be sent before the

Trainee Review Board.  *Id.* at ¶ 48.  These practices further Defendant's pattern or practice of

discrimination where the lone decisionmaker applies internal biases when evaluating suitability

notations and determining who is placed under Suitability Review and sent before the Trainee

Review Board.  *Id.* at ¶¶ 54–55.  In addition, the Suitability Review and the Trainee Review

_____

　　　　[1] The Trainee Review Board has at times been referred to by other names, such as the New
Agent Review Board.  *Id.* at ¶ 25.  Thus, Plaintiffs include in their class definitions Trainees
who went before equivalent review boards whether named the Trainee Review Board or
something else.  *Id.* at ¶¶ 56, 67.

Board processes have an adverse impact on female Agent and Analyst Trainees.  *Id.* at ¶ 54.

      *Small Group of Reviewers and Single Decisionmaker:*  The Trainee Review Board consists of the Deputy Assistant Director, three Section Chiefs, the Trainee Management Unit Chief, one minority representative at the GS-15 level, and at times, an Office of General Counsel representative.  *Id.* at ¶ 49.  The Trainee Review board provides a factual record and a recommendation to the Assistant Director of the Training Division about whether to permit the trainee to remain in her Basic Training class and graduate with her class, recycle the trainee to a different class, or to discharge the trainee.   *Id.* at ¶ 50.  The Assistant Director of the Training Division determines whether to discharge a trainee.  *Id.*

      B.    <u>Discriminatory Intent and Impact</u>

      The practices listed above—subjective suitability criteria, simultaneous training and evaluation using the Tactical Training rubric, and the Suitability Review and Trainee Review Board processes—have an adverse impact on Class Representatives and the Class.  Female Trainees received suitability notations more frequently and for more minor infractions than male Trainees.  *Id.* at ¶¶ 2, 40, 41, 44.  Female Agent Trainees receive suitability notations for perceived violations of tactical principles and critical elements more frequently than similarly situated male Agent Trainees who engaged in the same or similar behaviors.  *Id.* at ¶¶ 36, 38, 39.  Female Trainees are referred for Suitability Review or the Trainee Review Board more frequently than similarly situated male Agent Trainees.  *See id.* at ¶¶ 2, 41, 45.  Female Trainees who are referred for Suitability Review or to appear before the Trainee Review Board are denied the chance to retrain or re-enroll in the course (including being recycled into a different class) more frequently than similarly situated male Trainees.  *Id.* at ¶¶ 41, 45, 54.  These disparities culminate in the adverse employment actions central to the Class claims: female Trainees who are referred for Suitability Review or to appear before the Trainee Review Board are discharged

from Basic Training more frequently than similarly situated male Trainees.  *Id.*  A single

decisionmaker, the Assistant Director of the Training Division is responsible for these adverse

actions.  *Id.* at ¶ 50.

Looking more closely, the disparities in discharge from Basic Training are due to a

pattern or practice of intentional discrimination.  Sexism permeates the training and evaluation

processes described above.  *Id.* at ¶ 2.  For example, Trainee Management Unit management and

instructors actively seek out derogatory information, or "gossip," about female Trainees from

other instructors and counselors in order to levy additional suitability notations against female

Trainees.  *Id.* at ¶ 55.  However, readily observed violations of the Requirements Document

committed by male Trainees are ignored.  *Id.*  In addition, gender-based stereotypes lead to some

behavior being adjudged "command presence" when exhibited by a male Agent Trainee who

explains his choice of action that an instructor criticized, but "failure to accept responsibility" or

"lack of integrity" when a female Agent Trainee provides a similar explanation.  *Id.* at ¶ 40.

The discriminatory culture throughout Basic Training results in disparities in outcomes

for each of the employment practices described above.  Plaintiffs' anecdotal evidence illustrates

the discriminatory culture, which combines with the employment practices described above

results in a consistent pattern or practice of discrimination.  Plaintiffs described double standards,

in which women were scrutinized more closely, and penalized when men were not penalized for

similar actions.  *Id.* at ¶¶ 81, 82, 87–90, 98, 102, 103, 109, 111, 112, 119, 137, 147, 154, 155,

159, 160, 163, 167–68, 173 –75, 182–83, 189, 192, 200, 204–05, 211–14, 217.  They described

comments evoking gender stereotypes, comments sexualizing women, and overt expressions of

gender bias.  *Id.* at ¶¶ 91, 117–119, 137–142, 152, 154, 162, 197–98.  The culture of sexism

throughout the program reveals a discriminatory motive for the discharge decisions across the

Class.

    C.    <u>Procedural Background</u>

Each Plaintiff exhausted her administrative remedies by reporting discrimination to an EEO counselor at the FBI and filing a formal administrative complaint.  *Id.* at ¶¶ 8–24.  Each Plaintiff's claims are timely on their own, or by relying on the administrative filing by another plaintiff.  Plaintiff T.S. was discharged on May 13, 2016.  *Id.* at ¶ 217.  She is a member of the class she seeks to represent as she received suitability notations, was subjected to Suitability Review, went through the Trainee Review Board (then called the New Agent Review Board), and was discharged by the Assistant Director.  *Id.* at ¶¶ 207, 208, 217.  She gave first notice to the FBI of her complaint of sex discrimination on May 16, 2016, and filed her formal charge on July 6, 2016.  *Id.* at ¶ 24.  She received a Final Agency Decision on November 21, 2019, and joined this action as a plaintiff on January 31, 2020, within 71 days of that decision.  *Id.*  T.S.'s complaint may be relied upon by all plaintiffs who could pursue a timely claim on or after April 1, 2016 (45 days before her initial contact on May 16, 2016).  That encompasses all plaintiffs.

Plaintiffs filed the present class action Complaint on May 29, 2019.  Complaint (Doc. 10).  Some Plaintiffs sought to proceed anonymously, and the Court resolved that issue before the Complaint could be served on Defendant.  Plaintiffs served Defendant on July 15, 2019.  Affidavit of Service (Doc. 10).  Over the next several months, the Parties engaged in extensive briefing on Plaintiffs' request for a preliminary injunction to prohibit Defendant from retaliating against Plaintiff Erika Wesley and witness Mary Martinez.  During that time, Plaintiffs filed their First Amended Complaint with Defendant's consent under Rule 15(a)(3) on September 12, 2019.  The Parties agreed to a preliminary case schedule, which the Court approved on December 26, 2019.  Minute Order (Dec. 26, 2019).  Pursuant to the schedule, Plaintiffs filed a Second Amended Complaint on January 31, 2020, adding Plaintiff T.S. who exhausted her

administrative claims when she received her Final Agency Decision on November 21, 2019, *see* TAC at ¶ 24, and Defendant responded to the allegations in Plaintiffs' Complaint for the first time when it filed its Partial Motion to Dismiss on March 2, 2020, *see* Def. Mot. Dismiss, Doc. 45.  Plaintiffs then filed their Third Amended Complaint, consistent with Fed. R. Civ. P. 15(a)(1), and Defendant's current Partial Motion to Dismiss was filed on April 6, 2020, Doc. 51.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1) a complaint may be dismissed for lack of subject matter jurisdiction, i.e. the court's statutory or constitutional authority to adjudicate the case.  *Cause of Action Inst. v. IRS*, 390 F. Supp. 3d 84, 99 (D.D.C. 2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).  A federal court has authority under Article III of the U.S. Constitution only to review "cases" and "controversies" for which a plaintiff has demonstrated (1) a concrete and particularized "injury in fact" that involves an actual or imminent invasion of a legally protected interest, (2) a causal connection "fairly traceable" to the defendant's challenged conduct, and (3) for which a favorable decision is likely (rather than speculatively) capable of providing redress.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  "[W]hen considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim."  *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008).

Under Rule 12(b)(1), a plaintiff "bears the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction."  *Whiteru v. Wash. Metro. Area Transit Auth.*, 258 F. Supp. 3d 175, 182 (D.D.C. 2017) (citing *Lujan*, 504 U.S. at 561).  In deciding a 12(b)(1) motion, the court may consider matters outside the complaint, but it "must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff."  *Tyson v. Brennan*, 277 F. Supp. 3d 28, 35 (D.D.C. 2017) (citing *Brown v. District of Columbia*, 514

F.3d 1279, 1283 (D.C. Cir. 2008)).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Harris v. District of Columbia Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). Plausibility requires only that there is factual content that allows the court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Tyson v. Brennan*, 306 F. Supp. 3d 365, 369 (D.D.C. 2017) (Brown Jackson, J.) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011)).  Moreover, the Court must accept a plaintiff's factual allegations as true and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).

In evaluating a Rule 12(b)(6) motion, the court may "consider matters *within* the complaint" only, which include "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the complaint necessarily relies." *Stocks v. Cordish Cos., Inc.*, 118 F. Supp. 3d 81, 84 (D.D.C. 2015) (internal quotation marks omitted).

## IV.   ARGUMENT

### A.    Plaintiffs' Claims are Timely.

#### 1.    Plaintiffs satisfy timely administrative exhaustion through the single filing rule.

Defendant challenges the timeliness of several plaintiffs' claims, asserting that two who filed timely administrative claims did not act quickly enough after receiving a final agency

decision, and that four others did not initiate an administrative charge soon enough.  Def. Mem. in Supp. Partial Mot. to Dismiss ("MTD") at 13, 16.  However, as Defendant concedes, an evaluation of the timeliness of those claims cannot be made without consideration of the single-filing rule.  *See id.* at 15.

The D.C. Circuit has long recognized that it is not necessary for every plaintiff to file a charge, so long as at least one member of the plaintiff class has done so.  *Foster v. Gueory*, 655 F.2d 1319 (D.C. Cir. 1981) (appellants and original plaintiffs both alleged they were victims of the same racially discriminatory practices); *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 807 (D.C. Cir. 2010) (EEOC complaint by current employee challenging screening test held to have exhausted administrative requirements for external applicants subject to the same procedure, even though the EEOC complaint mistakenly alleged that external applicants were not subject to the same screening test); *Brewer v. Holder*, No. CV 08-1747 (BJR), 2013 WL 12399123, at *2 (D.D.C. Aug. 9, 2013).  As this Court has found:

> Courts have typically applied the single-filing exception where a systematic pattern of discrimination was an integral part of an employer's practices and multiple plaintiffs' claims arose from one discriminatory mechanism.

*Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 64 (D.D.C. 2011).  Thus, is should not be surprising that the D.C. Circuit has noted that the single-filing rationale "is invariably applicable" in class action cases.  *Foster*, 655 F.2d at 1322.  Application of the single-filing rule has not been limited to class cases, but has also been permitted in other circumstances where plaintiffs are similarly situated, such that no purpose would be served by requiring them to file independent charges, for example where the individuals challenge the same discriminatory practices on the same basis.  *Id.* at 1319; *Brooks*, 606 F.3d at 807.

In this class case, the Class Representatives all challenge the evaluation and termination procedures used by the FBI in the Basic Training programs at Quantico, specifically asserting

that the FBI discriminates on the basis of sex with respect to the suitability dimensions, suitability review, Trainee Review Board, and ultimate decisionmaking by the Assistant Director.  See also *infra* at 18–25.  The proposed class representatives have all challenged the same aspects of the evaluation and termination procedures governing basic training and all allege these practices had an adverse impact based upon sex, and that the FBI had a pattern or practice of discriminating based upon sex in carrying out these practices.  Their claims are sufficiently similar to permit application of the single-filing rule.  Defendant does not identify specific ways in which the claims differ, noting only that suitability notations were issued on different dates for different grounds.  MTD at 15.  However, surely the various plaintiffs in *Brooks* took the screening test on different dates and got different questions wrong.  That did not preclude application of the single-filing rule there, nor should it here.

          2.      <u>Plaintiffs may rely on the complaint filed by T.S.</u>

Plaintiff T.S. was discharged on May 13, 2016.  Like the other Plaintiffs, she received suitability notations, was subjected to a suitability review, sent before the Trainee Review Board (then called the New Agent Review Board), and ultimately terminated by the Assistant Director. TAC ¶¶ 210, 217.  She gave first notice to the FBI of her complaint of sex discrimination on May 16, 2016, and filed her formal charge on July 6, 2016.  TAC ¶ 24.  Thus, plaintiffs B.A., S.B., P.E., and C.S., all of whom were terminated between October 25, 2016 and July 31, 2018 following the same suitability notations and Trainee Review Board process as T.S.,[2] may all rely upon the EEO complaint of T.S. which was pending from May 16, 2016 through her Final Agency Decision (after a hearing before an Administrative Judge) on November 21, 2019.[3]

---

[2] TAC ¶¶ 137–43, 152–56, 167–69, 188–91.

[3] In addition to the class claims, B.A. also raised individual claims of a hostile work environment.  TAC ¶¶ 138 –142 & Count VI.  As to those individual claims of a hostile work

Indeed, all putative class members who could have filed a timely complaint on or after April 1, 2016 (45 days before May 16, 2016), may rely upon T.S. for administrative exhaustion of those claims.

The Final Agency Decision for federal sector employees functions much like the notice of right to sue that private sector employees receive: once receiving it, the individual has 90 days to file a lawsuit in court.  29 C.F.R. § 1614.407(a).  And that 90-day period may be tolled by other pending actions.  *Howard v. Gutierrez*, 474 F. Supp. 2d 41, 52 (D.D.C. 2007) (holding that a pending administrative charge, like a pending lawsuit, can provide tolling for the ninety-day filing deadline). Thus, Plaintiff Rose who received her Final Agency Decision on March 27, 2017, and L.S., who received her Final Agency Decision on November 29, 2017, may rely upon the pendency of T.S.' claim to toll their 90-day period for filing a lawsuit.

3.     Rose's claim for reinstatement is also timely

Defendant ignored that in addition to filing complaints related to her termination, Plaintiff Rose repeatedly sought reinstatement, including on July 27, 2015, August 15, 2016, and other occasions, receiving no response until she was effectively denied on October 5, 2018.  Ms. Rose then filed a timely complaint regarding the denial of reinstatement on December 20, 2018.  TAC ¶ 11.  Thus, even if Ms. Rose's other claims were deemed untimely, her claims for reinstatement would still be timely.  Thus, she cannot be dismissed from the case.

---

environment that she experienced in spring-summer 2018, B.A. can rely upon the internal complaint of Erika Wesley, filed May 18, 2018 (TAC ¶ 128) which included her complaints of a hostile work environment based upon sex (TAC ¶ 118).

B.     Class Representatives Have Standing and Have Met the Pleading Standard for
       Injunctive and Declaratory Relief.

       1.     Class Representatives demonstrate standing to seek injunctive relief.

Defendant does not dispute, for purposes of its standing argument, that Plaintiffs have

alleged a "personal injury fairly traceable to the defendant's allegedly unlawful conduct." *Hein*

*v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (internal quotation and citation

omitted); *Menoken v. Miles*, 270 F. Supp. 3d 200, 208-09 (D.D.C. 2017), *aff'd sub nom.*

*Menoken v. Kerner*, 741 F. App'x 817 (D.C. Cir. 2018).  To satisfy the standing requirement, a

plaintiff must allege injury that could be "redressed by the requested relief." *Hein*, 551 U.S. at

598 (citation omitted).  Specifically, for forward-looking relief, plaintiffs must face future injury,

such as by alleging that they would seek to return to the training program. *Hein*, 551 U.S. at

598; *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1273–74

(D.C. Cir. 1994) (plaintiffs who had served as testers of defendant's hiring practices lacked

standing for injunctive relief where they had not alleged they would seek job referrals from

defendant in the future).

Class Representatives in this case allege the FBI's process of assessing New Agent

Trainees and New Intelligence Analyst Trainees is discriminatory and results in them and other

women being terminated from the program before becoming Agents or Intelligence Analysts.

Most of the class representatives seek reinstatement to the training program so that they may

complete their qualifications and become FBI Agents or Intelligence Analysts.  In the Third

Amended Complaint, Plaintiffs Paula Bird, Lauren Rose, Danielle Snider, "D.A.",

"S.B.","D.C.", "P.E.", "B.G.", "W.M.", "C.S.", "G.T.", and "T.S." all explicitly assert that they

seek reinstatement to the training program. See ¶¶ 84, 104, 113, 149, 156, 164, 170, 178, 185,

193, 206, 218, and the Prayer for Relief makes clear that the equitable relief sought includes

reinstatement.  *Id.* at 72–73.  If Class Representatives are successful in establishing that the FBI's selection system is discriminatory this case, then these class representatives (along with absent class members) should have the opportunity to re-enter the program.[4]  But, in the absence of injunctive relief reforming that training program, those Class Representatives seeking reinstatement will be subject to the very discriminatory practices that they are challenging here.[5]  Thus, they face future injury as required for standing for injunctive relief.

Nor are Class Representatives' allegations that if they obtain reinstatement, they risk repeated discrimination based on speculation or vague predictions.  MTD at 12.  Class Representatives have "challenge[d] specific policies and procedures … that they claim have resulted in [sex] discrimination and, if not ended, will continue to do so in the future."  *In re Navy Chaplaincy*, 697 F.3d 1171, 1175-77 (D.C. Cir. 2012).  While discussed in greater detail *infra* at 18–25, Class Representatives have specifically challenged the subjective suitability dimensions, the simultaneous instruction and evaluation for the Agent Trainee Subclass, the use of the Trainee Review Board and single ultimate decisionmaker.  TAC ¶ 29, 30, 34–41, 44 –45, 47–55.  Thus, standing for injunctive relief is satisfied.

Finally, Defendant's reliance on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) is misplaced.  In that case plaintiffs challenged Wal-Mart's pay and promotion policies, not termination or hiring practices.  *Id.* at 342.  The *Dukes* plaintiffs had not alleged their

---

[4] Thus, this case does not present the sort of indefinite intention to apply "some day" that may be insufficient for standing.  One purpose of this lawsuit is to obtain for Plaintiffs the chance to be reinstated into the training program that has been denied to them thus far.  *Cf. Worth v. Jackson*, 451 F.3d 854, 858 (D.C. Cir. 2006).

[5] Plaintiffs need not establish that every class representative and class member seeks to be reinstated.  Where the plaintiffs seek uniform injunctive relief on behalf of the class, the standing requirement for the class can be satisfied by a single class representative.  *J.D. v. Azar*, 925 F.3d 1291, 1323–24 (D.C. Cir. 2019).

separation from Wal-Mart was involuntary or sought reinstatement.  *Id.*  Thus, there was no basis

to conclude such former employees would, in the future, be subject to Wal-Mart's pay or

promotion practices in the future.  In contrast, here, Class Representatives challenge Defendant's

termination of them from its training program, thus denying them positions as Agents or

Analysts, and seeking reinstatement in that training program.  This difference in context requires

a different conclusion: Class Representatives and the Class will, if successful in this case, be

subjected once again to the policies governing Defendant's training program, and thus have

standing to seek injunctive changes to those policies in addition to relief for their past injuries

> 2.   Defendant's proposed pleading standard for injunctive relief has no basis in law.

Plaintiffs have plausibly pled all elements of their causes of action, as described above,

and they list various forms of relief they seek after the case is adjudicated on the merits.  TAC at

72–73.  Defendant attempts to impose a pleading standard for relief that has no basis in law, as

every source Defendant cites is inapplicable.  See MTD at 37–39.  Defendant first cites Federal

Rule of Civil Procedure 65(d), which sets the requirements for the contents of any order granting

an injunction or any temporary restraining order.  It does not establish a pleading standard for a

prayer for relief.

The cases Defendant cites are similarly unavailing.  In *Robinson v. District of Columbia*,

341 F. Supp. 3d 97 (D.D.C. 2018), the Court examined the sufficiency of a post-trial motion for

a permanent injunction, not the sufficiency of the Complaint.  *Id.* at 109.  All but one of the

remaining cases Defendant cites involve standards for preliminary injunctions not applicable

here.  *See Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006); *Aracely, R. v. Nielsen*, 319 F.

Supp. 3d 110, 125–26 (D.D.C. 2018); *Singh v. Carter*, 185 F. Supp. 3d 11, 17 (D.D.C. 2016);

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4

(D.D.C. 1997).  Any heightened standard for mandatory preliminary injunctions (which the D.C.

Circuit has not adopted) addresses courts' concerns with requiring a party to change the status

quo rather than maintain the status quo during the pendency of the case.  *See Farris*, 453 F.

Supp. 2d at 78.  Such a concern necessarily only applies to interim relief and not the relief

requested after a decision on the merits.

The only case that Defendant cites that deals with the sufficiency of pleadings under Rule

8, *Ward v. Kennard*, 133 F. Supp. 2d 54 (D.D.C. 2000), is inapposite here.  The plaintiff in *Ward*

sought monetary damages that were foreclosed by the doctrine of sovereign immunity.  In an

attempt to revive his claims under an exception to qualified immunity for injunctive relief, the

plaintiff attempted to argue that injunctive relief was included in the pleadings because the

prayer for monetary relief stated that he "seeks declaratory, injunctive, and make-whole relief;

compensatory damages assessed at $300,000 and punitive damages to be determined by a jury."

*Id.* at 59.  Here, on the other hand, Plaintiffs have separately requested each type of relief they

seek for each Plaintiff and Subclass of Plaintiffs, including two separately delineated types of

injunctive relief.  TAC at 72.  Finally, the outcome Defendant proposes contravenes the "long

accepted" understanding of the prayer for relief in the context of Rule 12 motions.  *See Doe v.*

*U.S. Dep't of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985).  As the D.C. Circuit has explained,

"it need not appear that the plaintiff can obtain the specific relief demanded as long as the court

can ascertain from the face of the complaint that some relief can be granted."  *Id.  See also*

*Powell v. IRS*, 317 F. Supp. 3d 266, 275 (D.D.C. 2018), *Kursar v. Transp. Sec. Admin*., 751 F.

Supp. 2d 154, 162 n.5 (D.D.C. 2010), *aff'd,* 442 F. App'x 565 (D.C. Cir. 2011).

C.       Class Representatives' Allegations Could Satisfy Rule 23 on a Developed Record.

      1.       Defendant's attempt to deny class certification on the pleadings is premature.

Defendant's arguments prematurely test class certification before Plaintiffs have had the opportunity to develop the record.  Defendant acknowledges that the D.C. Circuit has not addressed the plausibility standard's application to class allegations.  MTD at 18 (quoting *In re McCormick & Co.*, 217 F. Supp. 3d 124, 140 (D.D.C. 2016)).  At the pleadings stage, numerous courts have declined to apply the plausibility standard described in *Iqbal* and *Twombly* to the procedural requirements of Rule 23.  *See, e.g., Morrelli v. Corizon Health, Inc*., No. 1:18-CV-1395-LJO-SAB, 2019 WL 918210, at *12 (E.D. Cal. Feb. 25, 2019) ("Rule 12(b)(6) permits a party to assert a defense that the opposing party has 'failed to state a claim upon which relief can be granted,' but a class action is a procedural device, not a claim for relief." (citing *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 331 (1980)); *Garcia v. ExecuSearch Grp., LLC*, No. 17CV9401, 2019 WL 689084, at *4 (S.D.N.Y. Feb. 19, 2019) ("Garcia is not required to [affirmatively demonstrate compliance with Rule 23] . . . at the pleading stage without the benefit of class discovery or full class certification briefing."); *Dieter v. Aldi, Inc.*, No. CV 2:18-00846, 2018 WL 6191586, at *3 (W.D. Pa. Nov. 28, 2018) ("It would be error for a court to apply the Rule 12(b)(6) plausibility standard set forth in *Twombly* and *Iqbal* to 'dismiss' class action allegations in a complaint."); *Griffin v. Home Depot USA, Inc.*, No. 11-2366-RDR, 2012 WL 38647, at *3 (D. Kan. Jan. 9, 2012) (declining to apply the *Iqbal/Twombly* analysis to class claims); *Strickler v. Bijora, Inc.*, No. 11 CV 3468, 2012 WL 5386089, at *3 (N.D. Ill. Oct. 30, 2012) (argument that plaintiff did not adequately plead class size was "not a proper subject for a motion to dismiss.").  *Cf. In re Cmty. Bank of N. Va.*, 622 F.3d 275, 303 (3d Cir. 2010), *as amended* (Oct. 20, 2010) "[T]he Rule 23 requirements differ in kind from legal rulings under

Rule 12(b)(6).")

Nevertheless, it is axiomatic that the Court cannot require a *higher* standard than the plausibility standard imposed by *Iqbal* and *Twombly*, which Defendant essentially seeks here. MTD at 19–29 (applying standards of review for class certification to Plaintiff's Complaint).  No "heightened pleading standard" exists for Title VII claims, and thus, ordinary notice pleading standards apply.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  As will be explained below, Class Representatives have plausibly pled class claims sufficient to allege that each procedural requirement of Rule 23 is satisfied.  To satisfy Federal Rule of Civil Procedure 8, Plaintiffs need not provide detailed factual allegations, but only "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability.  *Owens v. Republic of Sudan*, 531 F.3d 884, 895 (D.C. Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Dismissal of class claims before discovery is generally disfavored and not permitted where the complaint states a plausible claim for class-wide relief.  *In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 140 (D.D.C. 2016).

      2.    <u>Class Representatives plausibly allege commonality and typicality.</u>

          a.    *Class Representatives plausibly allege class-wide disparate treatment claims.*

Plaintiffs' Third Amended Complaint alleges that the class members suffered the same injury—discharge from Basic Training motivated by the FBI's bias against women.  TAC at ¶¶ 56, 67.  Defendant cites various cases reviewing class certification decisions to argue that here, at the pleadings stage, Class Representatives have not alleged the requisite facts to plausibly plead class claims under Rule 23.  MTD at 19–29.  Defendant does not distinguish between the requirements to show commonality for disparate treatment and disparate impact claims, *id.,* thereby erroneously imposing a requirement that Class Representatives show a

common mechanism of discrimination not required for disparate treatment claims.  *See Davis v. District of Columbia*, 246 F. Supp. 3d 367, 393 (D.D.C. 2017) citing *Palmer v. Shultz*, 815 F.2d 84, 90 (D.C. Cir. 1987); *see also Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 73 (S.D.N.Y. 2018) ("The question of a 'common mode' is irrelevant, however, for the purposes of pattern-or-practice disparate treatment claims.").  When Defendant eventually describes the differences between disparate treatment and disparate impact claims under Title VII, divorced from Defendant's Rule 23 arguments, it selectively highlights one plaintiff's individual cause of action, while ignoring allegations throughout the Complaint that show a pattern or practice of intentional discrimination affecting the class.  *See* MTD at 37–38.   These arguments distort the law and misstate the facts alleged in the Complaint.

To bring a claim for classwide disparate treatment discrimination, a plaintiff must allege that her employer had a discriminatory motive for the adverse employment actions, and that discrimination is the "standard operating procedure" rather than unusual isolated occurrences. [6] *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 336 (1977).  This illicit motive can be inferred from statistical disparities in treatment between the class members and members of the dominant group—here, male Trainees.  *Segar v. Smith*, 738 F.2d 1249, 1265 (D.C. Cir. 1984).  Class Representatives allege that throughout Basic Training, female Agent Trainees and Analyst Trainees are issued disciplinary "suitability notations" more frequently than their male counterparts due to gender-based stereotypes and the decisionmakers' internal biases against

---

[6] Whether Plaintiffs plausibly alleged the existence of a pattern or practice showing intentional discrimination is subsumed in any analysis of whether they have plausibly alleged that the pattern or practice of discrimination satisfies commonality.  Thus, since Defendant explicitly incorporates its arguments on commonality (MTD at 19–29) when it presents its argument on whether Plaintiffs have adequately pled a pattern or practice of discrimination (MTD at 33–37), Plaintiffs address them jointly.

women.  TAC at ¶¶ 40, 44, 54.  Management and instructors seek out negative information about female Trainees while ignoring readily observed violations by male Trainees.  *Id.* at ¶ 55.  As a result of these practices, female Agent and Analyst Trainees receive more suitability notations, are less frequently allowed to be recycled into a different class, and ultimately are discharged from basic Training more frequently than their male counterparts.  *Id.* at ¶¶ 40, 44, 54.  To illustrate the allegations of disparities in who is discharged, Plaintiffs describe individual instances of discrimination.  *Id.* at ¶¶ 81, 82, 87–90, 98, 102, 103, 109, 111, 112, 119, 137, 147, 154, 155, 159, 160, 163, 167–68,  173 –75, 182–83, 189, 192,  200, 204–05,  211–14, 217 (describing instances of double standards in which women were scrutinized more closely, and penalized when men were not penalized for similar actions); *id.* at ¶¶ 91, 117–119, 137–142, 152, 154, 162, 197–98 (describing comments evoking gender stereotypes, comments sexualizing women, or overt expressions of gender bias); *Teamsters*, 431 U.S. at 339 ("The individuals who testified about their personal experiences with the company brought the cold numbers convincingly to life.")

In *Dukes*, the Supreme Court explained that to be certified as a class action, discrimination claims must depend on a "common contention" "capable of class-wide resolution," such that the truth or falsity of the contention will resolve an important issue for the class in "one stroke."  *Dukes*, 564 U.S. at 350.  The Court identified at least two ways that plaintiffs may satisfy commonality for a class-wide disparate treatment claim: (a) making claims of bias by a single decisionmaker who was responsible for the challenged decisions; and (b) by providing "significant proof"[7] of a "general policy of discrimination."  *Id.* at 350, 353.  As explained above, a general policy of discrimination can be shown through a pattern or practice

---

[7] As explained above, "significant proof" is not required at the pleading stage.

whereby discrimination is the "standard operating procedure." *Teamsters*, 431 U.S. at 336.

Class Representatives need not identify a common mode of exercising discrimination for

disparate treatment claims. *See Davis*, 246 F. Supp. 3d at 393 citing *Palmer*, 815 F.2d at 90; *see*

*also Chen-Oster*, 325 F.R.D. at 73. The Court in *Dukes* further reaffirmed the method of

showing discriminatory motive through a pattern or practice of discrimination, as described in

*Teamsters*, a case challenging discretionary hiring and promotion decisions. *Dukes*, 564 U.S. at

352 n.7 (quoting *Teamsters*, 431 U.S. at 336).

　　　In a case remarkably similar to the facts presented here, the D.C. Circuit found no

manifest error in the certification of a class of Secret Service agents who alleged a policy or

practice of racial discrimination that tainted the promotions process. *In re Johnson*, 760 F.3d 66,

72–73 (D.C. Cir. 2014). Although the plaintiffs alleged discrimination at different stages of the

promotions process by different supervisors, their claims satisfied the commonality requirement

because each class member was evaluated using common criteria and "every promotion decision

was ultimately made by the Director of the Secret Service." *Id.* Here, Class Representatives

allege that every discharge decision was made by the Assistant Director of the Training Division.

TAC at ¶¶ 2, 26, 50. All members of both subclasses were evaluated using the same suitability

dimensions and all were subjected to the Suitability Review and/or Training Review Board

processes. *Id.* at ¶¶ 30, 43, 56, 67. Consistent with *In re Johnson*, which analyzed class

certification arguments after discovery, Class Representatives' claims plausibly plead common

policies and practices from which they can develop a record to support class certification. *See*

*also Grogan v. Holder*, No. 08-1747, 2012 WL 13156807, at *2 (D.D.C. Sept. 27, 2012)

(denying defendant's motion to dismiss where a putative class of African American Deputy U.S.

Marshals alleged a pattern or practice of racial discrimination in promotions that included a

scoring system that was subjectively evaluated and a subjective distribution of awards and plaintiffs offered anecdotal examples of a "good old boy network" to support their allegations).[8]

Defendant illogically argues that Class Representatives cannot show a general policy of discrimination infecting the evaluation process because the process was not *entirely* subjective and discretionary where there was "standardized, written guidance" that applied to all class members. MTD at 28 (citing *Garcia v. Veneman*, 211 F.R.D. 15, 20 (D.D.C. 2002) and *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)). This argument is a red herring. In *Falcon*—a case preceding *Dukes* by nearly 30 years—the Supreme Court examined a proposed class that included both applicants who were denied employment and employees who were denied promotions. *Falcon*, 457 U.S. at 149–152. Although the Court held that the district court erred in certifying the expansive class, it identified two exceptions where class certification would be appropriate: (1) the defendant used a biased testing procedure, or (2) the defendant operated under a general policy of discrimination manifested in the same general fashion. *Id.* at 159 n.15.[9] While this case presents a class that consists entirely of applicants who were

---

[8] Class Representatives' argument is not inconsistent with *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174 (D.D.C. 2017) (Brown Jackson, J.) which found that plaintiffs who alleged that all supervisors used an "ill-defined numerical rubric" did not establish commonality where they "pointed to no evidence of biased decision making of any kind, and certainly not statistical evidence of the type that demonstrates that the discretionary ratings decisions led to racially disparate outcomes *in a common way*." *Id.* at 198. The deficiency in *Ross* was a lack of evidence in support of the plaintiffs' allegations. In contrast, where Class Representatives have alleged biased decisionmaking, they should be permitted to develop the record to present evidence in support of commonality when the issue of class certification is before the court. In addition, in *Ross*, this Court emphasized that the plaintiffs did not have a single decisionmaker, a fact that made it different from *Moore v. Napolitano*, 926 F. Supp. 2d 8, 11–12 (D.D.C. 2013), where "crucially" the promotion decisions were made by a single decisionmaker. *Ross*, 267 F. Supp. 3d at 199–200. Here, on the other hand, a single decisionmaker, the Assistant Director, was responsible for the discharge decisions for the Class. TAC ¶ 50.

[9] The use of an "entirely subjective decisionmaking process" was but one example of a general policy of discrimination that manifested in the same general fashion. *Id.*

terminated during training, even if it were more expansive, both exceptions apply here.
Defendant used the same biased testing procedure for all members of each subclass, *see* TAC at
¶¶ 30–40, 43, and Class Representatives plausibly allege a general policy of discrimination
which manifested in the same general fashion, *see supra* at 19–20.

Defendant's interpretation of *Falcon* contradicts the Supreme Court's analysis in *Dukes*
and *Teamsters*.  *See Dukes*, 564 U.S. at 353–356 (citing *Falcon* and finding that the evidence
presented did not show that a policy of delegating discretion to lower level supervisors across the
nation was susceptible to common proof, but reiterating that discretionary decisionmaking could
be challenged on a classwide basis, and citing *Watson* and *Teamsters* as still good law);
*Teamsters*, 431 U.S. at 335 (describing the process of proving a pattern or practice of disparate
treatment).  In contrast to Defendant's argument, the Supreme Court has explained that
"selection systems that combine both [subjective and objective criteria] would generally have to
be considered subjective in nature."  *Watson v. Fort Worth Bank & Tr.,* 487 U.S. 977, 989
(1988).  Further, binding D.C. Circuit precedent shows that the existence of more detailed
evaluation criteria supports the contention that the class members were subjected to the same
tainted evaluation process.  *In re Johnson*, 760 F.3d at 73; *see also Grogan,* 2012 WL 13156807,
at *1, *3 (denying motion to dismiss where plaintiffs alleged that a scoring system with specific
criteria was subjectively evaluated).

Defendant's reliance on *Garcia* is further misplaced because of the unique procedural
posture and facts not applicable here.  In *Garcia*, the plaintiffs did not present statistical evidence
in support of their allegations.  *Garcia*, 211 F.R.D. at 21 n.6.  As, the court explained,
"[c]ommonality is defeated—not only by plaintiffs' inability to correlate the discrimination they
allege with subjective loan qualification criteria—but also by the large numbers and geographic

dispersion of the decision-makers." *Id.* at 22. Here, at the pleadings stage, Class Representatives

do not have an obligation to present the type of evidence that was expected in *Garcia* at the

certification stage, after discovery. Once Class Representatives here are permitted discovery,

they will develop statistical evidence to present in support of their request for class certification.

Moreover, the decisions to discharge each of the prospective plaintiffs were all made by a single

decisionmaker. TAC at ¶¶ 2, 26, 50.

Defendant's reliance on *DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013), is

also misplaced. MTD at 24. In *DL*, the plaintiffs sought only injunctive relief, alleging that the

District of Columbia failed to provide the "free appropriate public education" required by the

Individuals with Disabilities Education Act. *DL*, 713 F.3d at 124–125. Because the plaintiffs

were denied access to education in a variety of ways at various stages of the district's process,

the injunctive relief necessary to cure the violation would be different for each plaintiff. *Id.* at

127–28. That concern does not apply here, where Class Representatives seek monetary damages

in addition to injunctive relief, and more significantly where Defendant's pattern or practice of

discrimination manifested in the same discriminatory employment action for all class

members—discharge from Basic Training—and where similar injunctive relief would address all

class concerns. TAC at 72–73 & ¶¶ 2, 8–12, 14–18, 20–24. *See also In re Johnson*, 760 F.3d at

73 (*DL* did not preclude class certification where "all the class members here are seeking the

same relief and, in so doing, must all show that promotion decisions made pursuant to the [Merit

Promotion Plan] were affected by discrimination generally.").

Defendant also argues that an individual inquiry is necessary to determine whether each

Plaintiff's suitability notations, referral to the Trainee Review Board, and discharge were proper

or were motivated by discriminatory animus. MTD at 27–29. This argument misunderstands

how pattern or practice disparate treatment claims operate.  In such claims, a plaintiff can show

discriminatory motive through evidence that the discrimination is the "standard operating

procedure." *Teamsters*, 431 U.S. at 336.  Defendant must respond to the pattern alleged by the

Class Representatives, showing that Class Representatives' evidence is either inaccurate or

insignificant.  *Id.* at 360.  The focus at the liability stage is not on individual decisions, "but on a

pattern of discriminatory decisionmaking." *Id.* at 360 n.46.  Having plausibly pled a pattern or

practice of discrimination, as described above, Class Representatives should be permitted to

develop the record to support class certification.

> b.      *Class Representatives plausibly allege class-wide disparate impact*
> *claims.*

Defendant's argument fares no better when applied to Class Representatives' disparate

impact claims.  Under a disparate impact theory of liability, a plaintiff may challenge a facially

neutral employment practice that has a discriminatory effect on a protected group.  *Davis v.*

*District of Columbia*, 925 F.3d 1240, 1247 (D.C. Cir. 2019) (quoting *Teamsters*, 431 U.S. at

349).  Courts since *Dukes*, including the D.C. Circuit, have recognized that challenges to

discretionary decisions with a disparate impact may be made on a class-wide basis where

plaintiffs identify a common mode of exercising discretion.  *See, e.g., In re Johnson*, 760 F.3d at

72–73(denying review of class certification decision where plaintiffs were graded subjectively

using a rubric); *Davis*, 925 F.3d at 1247 (reversing district court's grant of summary judgment

and acknowledging that plaintiffs could present evidence for class certification that discretionary

decisions were discriminatory); *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 116 (4th Cir.

2013) (district court erred in dismissing proposed amended complaint alleging discretionary

decisionmaking without considering whether the discretion was "exercised in a common way

under some common direction."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

672 F.3d 482 (7th Cir. 2012) (reversing denial of certification of disparate impact class claims

challenging centrally adopted practices that authorized discretionary decisionmaking); *Ellis v.*

*Costco Wholesale Corp.*, 657 F.3d 970, 974 (9th Cir. 2011) (declining to hold that *Dukes*

precludes certification of Title VII disparate impact claims challenging subjective

decisionmaking and remanding to consider certification under 23(b)(3)); *Ellis v. Costco*

*Wholesale Corp.*, 285 F.R.D. 492, 518-521, 545-546 (N.D. Cal. 2012) (finding a common mode

of exercising discretion occurred "under the rubric of a company-wide employment practice"

despite subjective decisionmaking, and granting class certification); *Calibuso v. Bank of Am.*

*Corp.*, 893 F. Supp. 2d 374, 389-391 (E.D.N.Y. 2012) (same); *Chen-Oster v. Goldman, Sachs &*

*Co.*, 877 F. Supp. 2d 113, 117-118 (S.D.N.Y. 2012) (same).

  Defendant's argument that Class Representatives have not identified the specific

employment practices that have a disparate impact on women, MTD at 36–37, ignores practices

alleged in the Complaint.  Contrary to Defendant's unfounded assertion, Class Representatives

allege that "the FBI's facially neutral suitability dimensions and process for evaluating Agent

Trainees and Analyst Trainees, referring them for Suitability Review and to the Trainee Review

Board, and terminating them had an adverse impact on women."  TAC at ¶ 25.  Class

Representatives further allege that the specific practice of using subjective suitability dimensions

has a disparate impact on women.  *See id.* at ¶¶ 2, 229, 244.  In addition, for the Agent Trainee

Subclass, Class Representatives allege that the process of simultaneous training and evaluation

has an adverse effect on female Agent Trainees.  *Id.* at ¶¶ 31–32, 39.  Finally, Class

Representatives allege that the Trainee Review Board had an adverse impact on women.  TAC

¶2, 41, 45.  The D.C. Circuit has explained that "an actionable 'specific employment practice'

might be a set of subjective criteria," and a "combination of subjective and objective

determinants, too, can count as a sufficiently specific employment practice." *Davis*, 925 F.3d at 1249 (citing *Watson*, 487 U.S. at 994). *Dukes* does require that where plaintiffs challenge subjective decisionmaking under disparate impact theory, they must establish a common mode of exercising discretion, which can be done, among other methods, when there is a single individual or small group of decisionmakers, which is the case here. *Dukes*, 564 U.S. at 355–56; *In re Johnson*, 760 F.3d at 72–73 (director of the Secret Service was final decisionmaker); *Family Dollar*, 733 F.3d at 117 (decisions made by "officials at corporate headquarters"); *Ellis*, 285 F.R.D. at 499 (small group of decisionmakers).

Defendant again ignores Class Representatives' clearly stated factual allegations when it asserts that they have not alleged a statistical disparity. MTD at 36. Class Representatives allege that the female Agent and Analyst Trainees "are issued suitability notations more frequently for perceived deficiencies in the suitability dimensions than similarly situated male" Agent and Analyst Trainees, TAC at ¶¶ 40, 44, and that female Agent Trainees receive suitability notations for perceived deficiencies in tactical principles and critical elements more frequently and for less serious infractions than similarly situated male Agent Trainees, *id.* at ¶¶ 36, 38. Class Representatives further allege:

> Upon information and belief, female [Agent and Analyst] Trainees are referred to the Trainee Review Board more frequently than similarly situated male [Agent and Analyst] Trainees. Further, female [Agent and Analyst] Trainees who are referred for Suitability Review or to appear before the Trainee Review Board are not allowed to retrain or re-enroll in the course (including being recycled into a different class) more frequently than similarly situated male Agent Trainees. Female [Agent and Analyst] Trainees who are referred for Suitability Review or to appear before the Trainee Review Board are discharged from Basic Training more frequently than similarly situated male [Agent and Analyst] Trainees.

*Id.* at ¶¶ 41, 45. These allegations allege a statistical disparity sufficient for the pleadings stage, where Class Representatives have not yet had the opportunity to conduct discovery. Before engaging in discovery, Class Representatives do not have access to the data necessary to

precisely calculate the statistical disparities for the class as a whole—Defendant maintains that information.  However, Class Representatives have pled numeric disparities for individual sections or classes in Basic Training where that information was available.  *See* TAC at ¶ 90 ("Four of the nine women in Ms. Coetzer's class were recommended by Tactical Training Unit instructors for a Suitability Review, whereas only two of the thirty men in her section were recommended by Tactical Training Unit instructors for a Suitability Review."); ¶ 163 ("Of the seven female Agent Trainees in [D.C.'s] section, only three graduated and are now Special Agents."); ¶ 183 (explaining that four male and two female Agent Trainees were placed under Suitability Review at the same time as W.M., and that, out of the seven, one male and three female Agent Trainees were discharged.); ¶ 217 ("T.S. was the only trainee in her class sent to the Board.").

Defendant has not identified any authority for the premise that Class Representatives must make more specific numerical calculations in their Complaint.  *See* MTD at 36 (citing *Garcia*, 211 F.R.D. at 21–22 nn.6,7, which emphasized the lack of statistics showing disparate impact at the class certification phase, after the plaintiffs' claims had the opportunity to take discovery).  In fact, the case Defendant cites to establish a requirement to plead any statistical disparity, acknowledges that even an "elementary" allegation of a disparity may be sufficient. *See* MTD at 35 (citing *Brady v. Livingood*, 360 F. Supp. 2d 94, 100 (D.D.C. 2004); *see also Ramseur v. Perez*, 962 F. Supp. 2d 21, 26 (D.D.C. 2013) ("[The plaintiff] alleged at least an 'elementary' statistical disparity that is sufficient to allow the claim to proceed."); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc*., 406 F. Supp. 3d 1258, 1304 (M.D. Ala. 2019) ("A plaintiff should be afforded the opportunity of discovery before he is required to present detailed statistics to the court . . . Accordingly, all [the plaintiff] must do is allege some statistical

disparity, however elementary.") (internal quotation marks and citations omitted).

        3.    <u>Class Representatives can meet the requirements of 23(b) on a developed record.</u>

        a.    *Class Representatives seek injunctive and declaratory relief that are appropriate for the class as a whole.*

Class Representatives have plausibly pled claims for declaratory and injunctive relief under Federal Rule of Civil Procedure 23(b)(2). Defendant repeats its flawed standing argument when it challenges the adequacy of Class Representatives' pleading of an injunctive and declaratory relief class under Rule 23(b)(2). MTD at 30–31. This argument fails for the same reason that Defendant's standing argument fails. *See supra* Section IV.B.1.

In addition, a hybrid class is appropriate because in addition to monetary damages, Class Representatives seek injunctive and declaratory relief for a common injury. A 23(b)(2) class may be maintained when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Where plaintiffs seek monetary damages and injunctive relief, "a court 'may adopt a hybrid approach' under Rule 23(b), 'certifying a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief.'" *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d at 191 (quoting *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997)).

For the reasons explained above in Section IV.C.2, Class Representatives have pled facts to allow them to develop common evidence showing Defendant's liability under disparate treatment and disparate impact theories.[10] Thus, Class Representatives can develop evidence to

---

    [10] Defendant admits that its argument that Plaintiffs do not satisfy Rule 23(b)(2) depends on its argument that Plaintiffs do not satisfy commonality. MTD at 27 (citing *Love v. Johanns*, 439 F.3d 723, 730 n.3 (D.C. Cir. 2006).

show that Defendant acted on grounds that apply to the class as a whole: it displayed a

discriminatory motive as to the whole class when it engaged in a pattern or practice of

discrimination, and it implemented employment policies with a discriminatory impact through

the use of subjective suitability notations, the Trainee Review Board process, and for the Agent

Trainee Subclass a simultaneous process of training and evaluations.  TAC at ¶¶ 25, 31–39, 41,

43, 45, 47–50.  These actions caused the class members' discriminatory discharge from Basic

Training, a decision made in all cases by the Assistant Director of the Training Division.  *Id.* at

¶ 50.

      As a result of these class-wide actions, Class Representatives seek the following

declaratory and injunctive relief on behalf of the class:

> Enter a declaratory judgment that the practices complained of in the First, Second, Third, and Fourth Causes of Action are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.;

> Enter a permanent injunction prohibiting the FBI, its officers, agents, employees and successors, from engaging in the discriminatory employment practices complained of herein in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq., as amended;

> Enter a permanent mandatory injunction requiring the FBI adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.;

TAC at 72.  Each form of relief requested applies to the class generally and does not request

individualized remedies.  Thus, it is appropriate for a Rule 23(b)(2) class.  *See Borum v.*

*Brentwood Vill.*, LLC, 324 F.R.D. 1, 20 (D.D.C. 2018) (certifying a 23(b)(2) class where the

plaintiffs alleging housing discrimination asked the court to require "Defendants to modify their

redevelopment plan in a manner so as to eradicate disparate impact" despite defendant's

allegation that residents in different sized units were affected by the housing policy in different

ways).  For the reasons explained in Section IV.C.1 above, Class Representatives need not

provide additional detail about the precise form of this relief at the pleadings stage.

                  b.     *Class Representatives plausibly allege common issues that will be shown to predominate on a developed record.*

With respect to Class Representatives' claims for monetary relief, for which they seek certification under Rule 23(b)(3), Defendant argues that Class Representatives have not shown that common issues predominate over individual issues in the litigation, asserting that the liability determination for each plaintiff depends on individualized facts.  MTD at 33.  Defendant goes no further than saying that where there are not sufficient facts to allege commonality, common issues cannot predominate over the litigation.  This argument is irrelevant where Class Representatives have pled sufficient facts to show that commonality may be satisfied on a developed record, as they have here.  *See supra* at 18–29.

Predominance requires first categorizing the issues presented as common or individual, then considering whether the common issues "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:49, 195-96 (5th ed. 2012)).  A common issue need not be dispositive to predominate over the litigation. *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 160 (D.D.C. 2014).  Yet, here, Class Representatives have alleged that liability can be determined with pattern or practice evidence of discriminatory motive common to the class.  Further, by definition, all class members have suffered an injury: all were discharged from Basic Training.  Thus, the issue in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013), in which the plaintiffs had a common method of showing that the defendant engaged in a price-fixing conspiracy but could not present a method of showing that all class members were injured by the price-fixing scheme, simply does not apply here.  If Defendant intended to argue that some individual defenses exist

to justify some class members' terminations, these are not apparent from the face of the

Complaint and are therefore not appropriate for a 12(b)(6) motion. *Tyson v. Brennan*, 306 F.

Supp. 3d 365, 369 (D.D.C. 2017) (Brown Jackson, J.) (review on a 12(b)(6) motion is limited to

the four corners of a complaint and any documents incorporated by reference).

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiffs' Third Amended

Complaint should be denied.

April 20, 2020                                   Respectfully submitted,


                                                 */s/Christine E. Webber*
                                                 Joseph M. Sellers (#318410)
                                                 Christine E. Webber (#439368)
                                                 Stacy N. Cammarano (#1510736)
                                                 Cohen Milstein Sellers & Toll PLLC
                                                 1100 New York Ave. NW ● Fifth Floor
                                                 Washington, DC 20005
                                                 (202) 408-4600
                                                 jsellers@cohenmilstein.com
                                                 cwebber@cohenmilstein.com
                                                 scammarano@cohenmilstein.com

                                                 David J. Shaffer #413484
                                                 5012 Aurora Dr.
                                                 Kensington, Maryland 20895
                                                 Phone:  202-210-7424
                                                 E-Mail: davidshaffer511@gmail.com

                                                 *Attorneys for Plaintiffs*