UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PAULA BIRD, *et al.*, *on behalf of themselves and a class of those similarly situated*, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 19-cv-1581 (KBJ) |
| WILLIAM P. BARR, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

The plaintiffs in this case are current and former female employees of the Federal Bureau of Investigation ("FBI") who allege that they suffered sex-based discrimination when they were enrolled in the FBI Academy's Basic Field Training Course. (*See* 3d Am. Compl, ECF No. 49, ¶ 1.) Before this Court at present is a motion for a preliminary injunction that Plaintiffs filed four months after initiating this lawsuit, seeking to enjoin the FBI from retaliating against them, or any potential witnesses, due to their participation in this action. (*See* Pls.' Mot. for a Prelim. Inj. for Protection from Retaliation ("Pls.' PI Mot."), ECF No. 24.) Plaintiffs' primary allegations center on Erika Wesley, a current FBI employee and a plaintiff in this action, who maintains that her supervisors in the FBI's Phoenix, Arizona Division (where Wesley works) have retaliated against her by, among other things, threatening to terminate her, failing to give her meaningful assignments, and denying requests for reasonable accommodations for her disability. (*See* Mem. in Supp. of Pls.' PI Mot. ("Pls.' PI Mem."), ECF No. 24-

1, at 11.)[1]  Plaintiffs also point to the experiences of another FBI employee in the Phoenix Division, Mary Martinez, who is not a plaintiff in this matter but submitted a declaration in support of Plaintiffs' earlier motion for leave to proceed under pseudonym.  (*See id.* at 20–22.)  Plaintiffs' PI motion alleges that, as a result of Martinez's help with this litigation, Martinez was required to submit excessive documentation to support a request for FMLA leave, and was allegedly placed on AWOL status when the requested leave was initially denied (the FBI ultimately approved Martinez's leave request and the AWOL citation was eventually removed from her record).  (*See id.* at 28.)

Plaintiffs assert that preliminary injunctive relief is necessary "to protect [Wesley] from irreparable harm to her job and her health" (*id.* at 7), and "to protect the judicial process from the chilling impact of Defendant's retaliation bordering on constructive discharge against a named plaintiff, which would deter anyone else from coming forward to join this putative class action or from offering truthful testimony in this matter" (*id.*).  As such, they request an order preliminarily enjoining the FBI "from engaging in any retaliation against any plaintiff or witness in this action[.]" (Proposed Order, ECF No. 24-14, at 1.)  They also seek specific relief with respect to Wesley and Martinez aimed at the retaliation that they allege has occurred.  (*See id.* at 1–2.)

For the reasons explained below, it is clear to this Court that Plaintiffs misapprehend the purpose and function of a preliminary injunction, and in fact, this Court lacks jurisdiction to order the FBI to refrain from generally retaliating against

---

[1] Page number citations to the documents that the parties have filed refer to those automatically assigned by the Court's electronic case-filing system.

Plaintiffs and witnesses in the manner that Plaintiffs request.  Plaintiffs' PI motion also fails with respect to the specific retaliation claim that has now been brought concerning Wesley (*see* 3d Am. Compl. ¶¶ 129–34), because Plaintiffs have not established that they have a likelihood of success on the merits of that legal claim, nor have they demonstrated that Wesley is at imminent risk of irreparable harm.  Accordingly, Plaintiffs' motion for a preliminary injunction is **DENIED**.

I.

Plaintiffs' PI motion is, for the most part, premised on a fundamental misunderstanding of how preliminary injunctions function in a civil action filed in federal court.  No less an authority than the Supreme Court of the United States has explained that "[a] preliminary injunction is [] appropriate to grant intermediate relief *of the same character* as that which may be granted finally."  *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (emphasis added).  Accordingly, in the *De Beers* case, the Supreme Court held that, where the requested injunctive relief could not be granted as final relief, it also could not be granted as intermediate relief.  And although the *De Beers* Court dealt with a federal court's authority to enter a preliminary injunction under a predecessor of the All Writs Act, the Supreme Court indicated clearly that the proper scope of a federal court's authority to issue injunctive relief as envisioned by Congress is determined based on "the usages and principles of law[,]" and before issuing any injunctive relief, a court must ask "what is the usage, and what are the principles of equity applicable in such a case."  *Id.* at 219.

Thus, a proper motion for a preliminary injunction seeks to enjoin *the action that the complaint alleges is unlawful* prior to the completion of the litigation, and without

3

such a connection between the claim and requested injunction, there is simply no jurisdictional basis for the Court to grant preliminary relief.  *See, e.g.*, *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (noting that a court lacks authority to issue a preliminary injunction absent a "sufficiently strong" connection "between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint[,]" and that such a connection exists where "the preliminary injunction would grant relief of the same character as that which may be granted finally" (internal quotation marks and citation omitted)); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) (explaining that "[t]he purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends it was or will be harmed through the illegality alleged in the complaint"); *Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 24 (D.D.C. 2019) (explaining that "a federal court that invokes its authority to enjoin an agency's conduct preliminarily pending the court's final order in the matter is thereby effectively accelerating provision of the relief that the plaintiff seeks, prior to the conclusion of the litigation"), *rev'd and remanded sub nom. on other grounds*, *Make The Rd. New York v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed. 2015) (explaining that preliminary injunction entitles the movant to relief before a ruling on the merits precisely because "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered").

Moreover, and significantly for present purposes, it is important to understand what a preliminary injunction is *not*: it is not a generic means by which a plaintiff can obtain auxiliary forms of relief that may be helpful to them while they litigate unrelated claims. To the contrary, this Court only possesses the power to afford preliminary injunctive relief that is *related* to the claims at issue in the litigation, as previously explained, and to get such extraordinary relief, a plaintiff has to satisfy well-established criteria, including demonstrating that they are likely to succeed on the merits of the underlying legal claims, and showing that they will suffer irreparable injury in the absence of a preliminary injunction. *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (explaining that a party seeking a preliminary injunction "must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest").

## II.

With respect to the PI motion at issue here, the disconnect between the underlying claims in the lawsuit and the alleged basis for preliminary relief could not be more evident. This is because, in their complaint, Plaintiffs allege that the FBI authorized, or engaged in, sex-discrimination while Plaintiffs were in the FBI training academy and seek, *inter alia*, to enjoin such conduct (*see* 3d Am. Compl., Prayer for Relief, ¶¶ 4–5), but in the PI motion, Plaintiffs request an injunction "to protect all of the name plaintiffs" from potential reprisals for participating in this legal action as a general matter. (Pls.' PI Mem. at 7.) The requested preliminary injunctive relief bears no resemblance to the relief that the Plaintiffs request in the underlying action. (*See* 3d

Am. Compl., Prayer for Relief, ¶¶ 1–10.)  And Plaintiffs are wrong to tout the existence of the All Writs Act—which permits this Court to "issue all writs necessary or appropriate in aid of [its] respective jurisdiction[,]" 28 U.S.C. § 1651(a)—as the basis for an argument that the Court has general jurisdiction "'to preserve its process and to prevent and rectify punishment of those who appeared before it.'"  (Pls.' PI Reply at 30 (quoting *EEOC v. Locals 14 & 15, Int'l Union of Operating Engineers*, 438 F. Supp. 876, 879 (S.D.N.Y. 1977)).)  It is now well established that "the express terms of the [All Writs] Act confine the power of the [Court] to issuing process 'in aid of' its *existing* statutory jurisdiction; the Act does not *enlarge* that jurisdiction[.]"  *Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999) (emphasis added).  Thus, the Court is authorized to issue an injunction concerning acts of the defendant that are not alleged in the complaint under the All Writs Act *only* when those acts are "closely related to the facts in the complaint[.]"  *Adair v. England*, 193 F. Supp. 2d 196, 200 (D.D.C. 2002).

     As this Court has already explained, no such close a connection exists in this case, despite Plaintiffs' arguments to the contrary.  (*See* Pls.' PI Reply at 7.)  Instead, just as in *Adair*, the only connection between the complaint and Plaintiffs' request for injunctive relief to protect them from reprisals is that there is a lawsuit pending and Plaintiffs assert that the FBI has (or may) retaliate against them and potential witnesses. *See Adair*, 193 F. Supp. 2d at 201 (citations omitted).  The *Adair* court recognized that such a connection is insufficient to allow this Court to invoke the All Writs Act to award the general injunctive relief that Plaintiffs seek, *see id.*, and this Court does the same.

6

The authorities that Plaintiffs cite and rely upon are not to the contrary. (*See* Pls.' Reply at 9.) For instance, Plaintiffs cite to *Holly Sugar Corp. v. Johanns*, No. 03-cv-1739, 2006 WL 8451547, at *4 (D.D.C. Aug. 1, 2006), for the proposition that courts can issue preliminary injunctions to protect witnesses based on allegations not contained in the complaint. But that statement is nothing more than *dicta*, and the court in *Holly Sugar* actually found that it did not have jurisdiction to issue the requested injunction because "the issues raised by the plaintiffs in their request for a preliminary injunction are . . . clearly unrelated to the issues alleged in the Complaint." *Id*. Similarly, in *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877 (2d Cir. 1981), the Second Circuit merely held that a court had jurisdiction to issue preliminary injunctive relief with respect to retaliation claims *that were asserted in a pending complaint*, but for which the plaintiff was still awaiting a right to sue letter from the EEOC. *See id.* at 885–86. Finally, the factual circumstances in *EEOC v. Locals 14 & 15, International Union of Operating Engineers*, 438 F. Supp. 876 (S.D.N.Y. 1977), are entirely inapposite, as the court there issued a preliminary injunction with respect to retaliation that had occurred after the trial in the underlying matter and while the case was on appeal, based on a determination that the "retaliation charges are ancillary to the main issues in a case and should, partially because of the possibilities of a remand, be heard by the district court even while the main issues were pending appeal." *Id.* at 880.[2]

---

[2] The court also found that Section 706(f)(2) of Title VII, 42 U.S.C. § 2000e-5(f)(2), which authorizes the EEOC to pursue preliminary relief while it investigates a charge, provided an independent jurisdictional basis for it to issue the requested injunction. *See Locals 14 & 15*, 438 F. Supp. at 880. In any event, this case is by no means binding on this Court, and to the extent that this 43 year-old case can be read broadly to support the notion that a district court has jurisdiction to reach out into the world and issue injunctive relief whenever claims of retaliation, untethered to any claim in a complaint, are brought to its attention, this Court rejects that proposition.

Thus, Plaintiffs' motion fails at the threshold—due to a lack of jurisdiction—even prior to the Court's consideration of the well-worn PI factors. Nevertheless, this Court is confident that Plaintiffs' motion falls short with respect to *that* examination, too, since Plaintiffs have not provided any factual basis whatsoever for concluding that every named Plaintiff is actually entitled to preliminary injunctive relief, either because each has a likelihood of succeeding on the merits of the complaint's sex-discrimination claim (or, perhaps, some not-yet-pleaded retaliation claim), or because each is imminently likely to be the object of any retaliatory act by the FBI, much less that they would all suffer irreparable harm due to any such retaliation in the absence of a preliminary injunction. Instead, Plaintiffs appear to request injunctive relief by association: their request for a generic FBI-wide anti-retaliation order is based on the alleged actions of a handful of supervisors who are located in the Phoenix Division and who have allegedly taken steps to retaliate against one Plaintiff (Wesley) and one witness (Martinez). (*See* Pls.' PI Mot. at 10–19; 20–22.) There are no allegations in the complaint, or the PI motion, that the FBI has engaged in a pattern or practice of retaliatory conduct on a nationwide scale. Yet, Plaintiffs argue that broad injunctive relief is needed to, essentially, send a message that Plaintiffs and witnesses are protected in order to preserve future participants' willingness to participate in this litigation. (*See* Pls.' PI Reply at 25–26 (observing that "the FBI is a relatively small community," and that "what happens in connection with this litigation—including resolution of this motion—will be seen by class members and witnesses throughout the FBI").)

In the absence of any *evidentiary* support for the speculative suggestion that the FBI will target Plaintiffs and witnesses going forward, this Court cannot find that Plaintiffs have established any of the traditional PI factors.  Nor is this Court aware of any authority that supports Plaintiffs' implicit suggestion that a preliminary injunction can properly issue to address potential conduct of a defendant that is neither established nor imminent, whether to ensure the participation of parties and witnesses or otherwise. To be clear:  if these Plaintiffs have allegations and evidence that the FBI is engaged in a wide-spread practice of retaliating against them (or their potential witnesses) for filing this lawsuit or participating in the instant action, then they will be granted leave to make those legal claims as part of the instant action, and if Plaintiffs can also demonstrate that they have a likelihood of success on the merits of such retaliation claims and that they will face irreparable injury unless the FBI is enjoined from engaging in this unlawful behavior while the retaliation claims are being litigated, then this Court would have both subject-matter jurisdiction and ample justification to issue a preliminary injunction.  What Plaintiffs cannot do is file a legal action alleging only that the FBI has previously engaged in unlawful sex-based discrimination, and then parlay that claim into a request for a preliminary injunction that prevents potential (but not actually alleged) retaliatory acts by Defendant, where those acts do not relate to the same conduct that gave rise to Plaintiffs' underlying claims, and when Plaintiffs have not yet demonstrated either that they have a likelihood of success with respect to any of their claims or that they will suffer irreparable injury in the absence of the requested injunctive relief.

### III.

To the extent that Plaintiffs have now made specific allegations in the complaint concerning alleged retaliatory conduct by supervisors in the FBI's Phoenix Division against Wesley (*see, e.g.*, 3d Am. Compl. ¶¶ 129–34), they have cleared the jurisdictional bar to this Court's consideration of Plaintiffs' motion for a preliminary injunction with respect to that particular claim.  However, in order to be entitled to preliminary injunctive relief, Plaintiffs must also show, *inter alia*, that Wesley is substantially likely to succeed on the merits of her retaliation claim, and that she will suffer irreparable injury in the absence of preliminary relief.  *See, e.g.*, *Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 185 (D.D.C.), *aff'd*, 808 F.3d 905 (D.C. Cir. 2015); *see also Sampson v. Murray*, 415 U.S. 61, 88 (1974) (explaining that "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies").  Upon consideration of the parties' arguments and evidence, the Court finds that Wesley has not satisfied her burden on either of these fronts for at least three reasons.

First of all, Wesley has not provided sufficient evidence in connection with the motion (such as live witness testimony) to enable this Court to make credibility determinations as is necessary to resolve the myriad disputes of fact that abound with respect to her retaliation claim.  (*Compare* Decl. of Mary Martinez, Ex. 3 to Pls.' PI Mem., ECF No. 24-5, ¶ 5 (stating that an FBI supervisor, Andrew Braun, told Martinez that Wesley "needs to go" because she has engaged in EEO activity) *with* Decl. of Andrew J. Braun, Ex. 2 to Def.'s PI Opp'n, ECF No. 27-3, ¶ 8 (denying that he made any such statement).)  To demonstrate a substantial likelihood of success on the merits

of one's claim in support of preliminary injunction, evidence that is sufficient to permit resolution of material disputes of fact is required.  *Cf. Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (explaining that a movant seeking a preliminary injunction must provide "substantial proof" that clearly shows her entitlement to relief); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed. 2015) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction.") (collecting cases).  And the reverse is also true—"the Court cannot conclude that the plaintiff has demonstrated a substantial likelihood of success on the merits" where there are *un*resolved "disputes regarding the inferences that must be drawn from the facts in the record[.]"  *Davis v. Billington*, 76 F. Supp. 3d 59, 64 (D.D.C. 2014) (internal alterations, quotation marks, and citation omitted); *see also Navistar, Inc. v. EPA*, No. 11-cv-449, 2011 WL 3743732 at *3 (D.D.C. Aug. 25, 2011) (explaining that, without "a substantial indication of likely success on the merits, there [is] no justification for the court's intrusion into the ordinary processes of administration and judicial review" (internal quotation marks and citation omitted)).

Second, Wesley has not established that she is at risk of imminent, irreparable injury in the absence of injunctive relief.  "It is well-settled that preliminary injunctive relief is not usually available in employment cases" because "it seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.'"  *Moore v. Summers*, 113 F. Supp. 2d 5, 24 (D.D.C. 2000) (quoting *Sampson*, 415 U.S. at 90).  Thus, Plaintiffs need to explain why Wesley would not have all of the traditional remedies for unlawful adverse action in the employment context—

including back pay, damages, reinstatement—available to her if she ultimately succeeds on her retaliation claim. *See, e.g.*, *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 22, 47 (D.D.C. 2010) (explaining that "'given the court's equitable powers to remedy loss in employment through, for example, back pay and time in service credit, cases are legion holding that loss of employment does not constitute irreparable injury'" (quoting *Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) (alteration omitted))); *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 5 (D.D.C. 1998) (finding that a Title VII plaintiff had not established irreparable injury from the imminent loss of his job because, if successful in his suit, he would "be able to recover fully his backpay and [a] full complement of compensatory relief"). This Court does acknowledge what other courts have recognized; that, in certain limited circumstances, the loss of a unique position can satisfy the irreparable harm requirement. *See, e.g.*, *Saunders v. George Washington Univ.*, 768 F. Supp. 843, 845 (D.D.C. 1991). But, again, Plaintiffs would have to make a persuasive argument that Wesley's circumstances fall within this narrow exception, which they simply have not done. Indeed, the specific injunctive relief that Wesley seeks relates to her working *conditions*, rather than the imminent loss of her unique or specialized job. *See Katz v. Georgetown Univ.*, No. 00-cv-2412, 2000 WL 33539394 at *5–6 (D.D.C. Nov. 6, 2000), *aff'd*, 246 F.3d 685 (D.C. Cir. 2001).[3]

---

[3] Specifically, Plaintiffs have asked the Court to order the following injunctive relief with respect to Wesley:

> Defendant is specifically directed to permit Plaintiff Erika Wesley to continue to work the alternative work schedule (6 am to 2:45 pm) that she had previously been permitted to work; to permit Ms. Wesley to have access to a laptop and the opportunity to telework; to permit Ms. Wesley to keep her ergonomic work station; and to assign Ms. Wesley an Intelligence Analyst position consistent with her GS-13 status which she can fulfill consistent with her requested reasonable accommodations (and which Defendant will discuss with Ms. Wesley consistent with the interactive process governing

12

Moreover, Plaintiffs have not presented any evidence to support Wesley's speculative contention that, if she leaves her position based on the FBI's alleged failure to accommodate her disability, she would be precluded from using her intelligence analyst skills elsewhere, such as at a different federal agency. (*See* Decl. of Erika Wesley, Ex. 1 to Pls.' PI Mot., ECF No. 24-3, ¶ 74.)

Third, and finally, the Court is persuaded by the FBI's argument that, in any event, the relief that Wesley requests cannot be ordered at this moment in time, because Wesley "is currently on suspended employment status" due to the present suspension of her security clearance, which is a prerequisite to working at the FBI. (*See* Def.'s Status Report, ECF No. 36, at 1.) To this Court's knowledge, the agency's investigation into Wesley's clearance status is still ongoing, and the law in this Circuit is clear that judicial review of the merits of clearance decisions is absolutely barred. *See Rattigan v. Holder*, 689 F.3d 764, 768 (D.C. Cir. 2012).[4] Therefore, at least for now—as Plaintiffs appear to have conceded (*see* Hr'g Tr. at 73:10–15)—this Court cannot order the FBI to reinstate Wesley's clearance and award her the interim relief that she seeks regarding her working conditions.

## IV.

In conclusion, it is clear to this Court that it lacks jurisdiction to enter an order preliminarily enjoining the FBI from generally retaliating against the Plaintiffs and

---

    accommodations), and under a different supervisor, who has not participated in the retaliation she has experienced[.]

(Proposed Order at 1–2.)

[4] At most, Wesley might be able to bring a claim for damages if the referral was "knowingly false" and made in retaliation for her protected activity. *Rattigan*, 689 F.3d at 770.

witnesses in this case, and the Court further finds that Wesley has not established that she is entitled to preliminary injunctive relief with respect to the retaliation claim that appears in the Plaintiffs' amended pleadings.  Therefore, as set forth in the separate Order that accompanies this Memorandum Opinion, Plaintiffs' [24] Motion for Preliminary Injunction for Protection from Retaliation is **DENIED**.


DATE:  July 23, 2020                         *Ketanji Brown Jackson*
                                             KETANJI BROWN JACKSON
                                             United States District Judge