**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |
|---|---|
| PAULA BIRD, *et al.*, | ) |
| | ) |
| Plaintiffs, | )   Civil Action No. 1:19-CV-1581 (JMC) |
| | ) |
| v. | )   Judge: Jia M. Cobb |
| | ) |
| MERRICK GARLAND, Attorney General of | ) |
| the United States, named in his official | ) |
| Capacity, as head of the Department of Justice, | ) |
| | ) |
| Defendant. | ) |

---

**<u>PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES AND DIRECT NOTICE OF SETTLEMENT TO THE CLASS</u>**

## TABLE OF CONTENTS

I.  Introduction ................................................................................................ 1

II. History of the Litigation .............................................................................. 3

III. Summary of the Proposed Settlement ........................................................ 6
  A.  The Settlement Class ........................................................................... 6
  B.  Injunctive Relief Provided by the Proposed Settlement ..................... 7
  C.  Ability to Elect Reinstatement ............................................................ 8
  D.  Monetary Relief Provided by the Proposed Settlement .................... 10
  E.  Notice ................................................................................................. 11
  F.  Attorneys' Fees and Costs ................................................................. 12

IV. Argument .................................................................................................. 13
  A.  The Class Should be Certified for Settlement Purposes ................... 13
    1.  Plaintiffs Satisfy the Requirements of Rule 23(a) ................. 14
    2.  Plaintiffs Satisfy the Requirements of Rule 23(b)(3) ............ 18
  B.  The Proposed Agreement Is Fair, Reasonable, and Adequate ........... 20
    1.  The Agreement Is the Result of Arm's Length Negotiations by
        Experienced Counsel ............................................................... 21
    2.  The Terms of the Proposed Settlement Agreement Provide Class
        Members with Appropriate Relief ........................................... 22
    3.  Settlement Is Appropriate at this Stage of Litigation ............. 22
  C.  Both the Named Plaintiffs and Experienced Counsel Approve of the
      Agreement ........................................................................................ 24
  D.  The Proposed Notice Satisfies Rule 23(e) and Due Process ............. 25

V.  Conclusion ................................................................................................ 26

## TABLE OF AUTHORITIES

Page

**Cases**

*Abraha v. Colonial Parking, Inc.*,
    No. 16-680, 2020 WL 4432250 (D.D.C. July 31, 2020) .........................................................23

*Alvarez v. Keystone Plus Constr. Corp.*,
    303 F.R.D. 152 (D.D.C. 2014).................................................................................14, 22, 24

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................................................20

*Anderson v. Zubieta*,
    180 F.3d 329 (D.C. Cir. 1999)..............................................................................................19

*Cohen v. Chilcott*,
    522 F. Supp. 2d 105 (D.D.C. 2007) .................................................................................23, 24

*Coleman v. District of Columbia*,
    306 F.R.D. 68 (D.D.C. 2015)............................................................................................14, 15

*Edge v. RoundPoint*,
    No. 1:21-cv-00122-TSK (N.D. W. Va.) ................................................................................25

*Forsyth v. HP Inc.*,
    No. 5:16-cv-04775-EJC (N.D. Cal.) ......................................................................................25

*Geiser v. The Salvation Army*,
    No. 1:22-cv-1968 (S.D.N.Y).................................................................................................25

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977).........................................................................................................19, 20

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) .............................................................................................17

*Jones v. Chopra*,
    No. 18-2132, 2023 WL 6037295 (D.D.C. Sept. 15, 2023)...................................16, 17, 19, 20

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    No. 99MS276, 2003 WL 22037741 (D.D.C. June 16, 2003) ..................................................23

*Luevano v. Campbell*,
    93 F.R.D. 68 (D.D.C. 1981)...................................................................................................24

# TABLE OF AUTHORITIES

Page

*Meijer, Inc. v. Warner Chilcott Holdings Co.*,
    246 F.R.D. 293 (D.D.C. 2007).......................................................................................14, 15

*Moore v. Napolitano*,
    269 F.R.D. 21 (D.D.C. 2010).........................................................................................14, 15

*Moore v. Napolitano*,
    926 F. Supp. 2d 8 (D.D.C. 2013)..........................................................................................19

*Ross v. Lockheed Martin Corp.*,
    267 F. Supp. 3d 174 (D.D.C. 2017)..................................................................................13, 21

*Stephens v. Farmers Rest. Grp.*,
    329 F.R.D. 476 (D.D.C. 2019)..........................................................................................23, 25

*Trombley v. Nat'l City Bank*,
    826 F. Supp. 2d 179 (D.D.C. 2011) ........................................................................13, 21, 22, 23

*United States v. District of Columbia*,
    933 F. Supp. 42 (D.D.C. 1996) ............................................................................................13

*In re Vitamins Antitrust Class Actions*,
    215 F.3d 26 (D.C. Cir. 2000) ...............................................................................................21

*In re Vitamins Antitrust Litig.*,
    305 F. Supp. 2d 100 (D.D.C. 2004) .............................................................................13, 19, 21

*Twelve John Does v. District of Columbia*,
    117 F.3d 571 (D.C. Cir. 1997) .............................................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .........................................................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).....................................................................................................15, 16

*Watson v. Fort Worth Bank & Trust*,
    487 U.S. 977 (1998).........................................................................................................19

**Rule**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

I.      **INTRODUCTION**

Plaintiffs Paula Bird, Clare Coetzer, Lauren Rose, Danielle Snider, "D.A.", "S.B.", "D.C.", "P.E.", "W.M.", "C.S.", "L.S.", "G.T.", and "T.S." ("Plaintiffs") submit this Memorandum in Support of their Unopposed[1] Motion to Certify the Class for Settlement Purposes and Direct Notice of Settlement to the Class. If approved, the proposed Class Action Settlement Agreement ("Settlement" or "Agreement"), attached as Exhibit 1,[2] will resolve the class claims of a proposed class of female New Agent Trainees ("Agent Trainees"). Those claims, lodged against Defendant Merrick Garland, in his official capacity as head of the Department of Justice ("Defendant"), alleged discrimination against female Agent Trainees when they attended and were dismissed from the FBI's Basic Field Training Course ("Basic Training" or the "Academy"). The proposed Agreement is the result of several months of arm's length, intensive negotiations between experienced and knowledgeable counsel who have litigated this action for over five years, with the invaluable assistance of the D.C. Circuit Executive's Mediation Program, specifically Circuit Mediator Dina Gold, Volunteer Mediator Dori Bernstein, and Chief Circuit Mediator Robert Fisher.

The proposed Settlement Agreement reached by the parties is fair, reasonable, and adequate, and provides the Plaintiffs and putative Class Members with significant benefits now, rather than proceeding with risky litigation that would only further delay providing Class Member's with closure for events that occurred in some instances over nine years ago. As detailed below, Defendant has agreed to two distinguished experts in the field of Industrial

---

[1] Defendant agrees that the Class should be certified for settlement, but it does not take a position on every statement contained in this Motion.

[2] The proposed Class Action Settlement Agreement includes several exhibits lettered A through H. Therefore, future references to lettered exhibits are references to the attachments to the Agreement, and numbered exhibits are references to exhibits attached to this Memorandum.

Organizational Psychology conducting a thorough review of Defendant's practices, policies, and procedures used in evaluating Agent Trainees in Basic Training (subject to the experts obtaining appropriate security clearances). *Infra* § III.B. The Agreement provides for Defendant to pay a total of $22,600,000, including $19,400,000 in monetary relief for Class Members, up to $2,700,000 for attorneys' fees, costs, and expenses,[3] and $500,000 set aside to pay for the expert review. *Infra* § III.D. Finally, the Agreement provides some eligible Class Members with the opportunity to be re-instated to Basic Training. *Infra* § III.C.

Below, Plaintiffs detail a timeline for issuing the proposed Class Action Notice (Ex. A) and setting a Final Approval fairness hearing that allows adequate time for Class Members to understand their rights under the proposed Settlement and object or opt out if they so choose. The Notice apprises Class Members of these rights and deadlines and, along with Plaintiffs' Plan for Allocation and Distribution of Settlement Funds (Ex. H), provides detailed directions to Class Members on how to submit their claims for monetary relief, and how their relief will be calculated. As part of that process, Plaintiffs also propose that the Court appoint the Honorable Ellen Huvelle (inactive) as the Appointed Neutral for purposes of deciding the damages award allocation due to Class Members.

Accordingly, Plaintiffs respectfully request that the Court grant their Motion, direct Notice to be issued to Class Members, and enter the Preliminary Approval Order submitted herewith that would:

- Provisionally certify the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) for settlement purposes only;

- Appoint Plaintiffs Paula Bird, Clare Coetzer, Lauren Rose, Danielle Snider, "D.A.", "S.B.", "D.C.", "P.E.", "W.M.", "C.S.", "L.S.", "G.T.", and "T.S.", for

---

[3] Plaintiffs will file a Motion for Attorneys' Fees and Costs the same day as this Motion.

settlement purposes only, as Settlement Class Representatives, and appoint Cohen Milstein Sellers & Toll PLLC and David Shaffer Law PLLC as Class Counsel;

- Approve the Class Action Notice and direct Class Counsel to distribute the Class Action Notice to the Class Members;

- Set a date for forty-five (45) days from the date Notice is disseminated as the deadline for submission of any objections to the proposed Settlement and for Class Members to opt out; and

- Schedule a Final Approval Hearing on or after eighty (80) days after the Order granting preliminary approval, which would be twenty (20) days after the deadline for Settlement Class Members to object to the proposed Settlement.

## II.  HISTORY OF THE LITIGATION

On May 29, 2019, Plaintiffs filed a putative class complaint in the U.S. District Court for the District of Columbia, in which they allege sex discrimination against a proposed class of Agent Trainees and New Intelligence Analyst Trainees ("Analyst Trainees") while attending the FBI's Basic Training. Plaintiffs filed an amended complaint on September 12, 2019 (Dkt. 22) which more precisely defined two proposed sub-classes—one of Agent Trainees and one of Analyst Trainees—in addition to outlining several related individual claims.

Plaintiffs subsequently filed amended complaints on January 31, 2020 (Dkt. 42), March 16, 2020 (Dkt. 49), and June 22, 2022 (Dkt. 74) and the operative complaint on August 30, 2024 (Dkt. 96-1). The First through Fourth Amended Complaints alleged, on behalf of putative classes of female Analyst Trainees and Agent Trainees, that Defendant engaged in a pattern or practice of intentional discrimination against female Analyst Trainees and Agent Trainees, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, when issuing Suitability Notations, initiating Suitability Reviews, referring Analyst Trainees and Agent Trainees for Trainee Review Boards (previously known as New Agent Review Boards) and making discharge, recycling, and reinstatement decisions. The Complaints also alleged that the FBI maintained a system for discharge from the Academy that had an adverse impact on female Analyst Trainees and Agent Trainees in violation

of Title VII, 42 U.S.C. § 2000e, *et seq.* The First through Fourth Amended Complaints also

included individual Title VII claims brought on behalf of four Plaintiffs—Gabrielle Barbour,

Spencer Lee, Erika Wesley, and "B.G."—as well as individual claims under the Rehabilitation

Act, 29 U.S.C. § 794 *et seq.*, by Plaintiffs Lee and Wesley.

On April 6, 2020, Defendant filed a Partial Motion to Dismiss. Dkt. 51. That motion was

denied by Order on April 15, 2022, and the Court orally provided its reasons for the denial at a

hearing on August 18, 2022. Dkt. 63. Fact discovery commenced on May 6, 2022. Dkt. 70. Per

the Court's June 10, 2024 order, the fact discovery deadline was extended to October 10, 2024.

Thus far in discovery, Plaintiffs have produced 2,536 documents, and Defendant has produced

17,562 documents. Declaration of Christine E. Webber ("Webber Decl.") ¶¶ 31, 34, 36, attached

to the forthcoming Plaintiffs' Motion for Attorneys' Fees and Costs. Plaintiffs have served and

Defendant has responded to two sets of interrogatories and four sets of requests for the

production of documents. *Id.* ¶¶ 25-26, 31 & n.3. Defendant has served and Plaintiffs have

responded to one set of interrogatories and two sets of requests for the production of documents.

*Id.* ¶¶ 32-38. Plaintiffs issued their Notice of 30(b)(6) Deposition on July 5, 2023, but otherwise

no depositions have been noticed. *Id.* ¶ 39. None have been conducted due to ongoing document

discovery. *Id.* ¶ 40.

In December 2022, the FBI's Office of the Inspector General released a report,[4] attached

as Exhibit 2, concluding that female Agent Trainees received discipline in the form of Suitability

Notations at a disproportionate rate, particularly during the tactical portions of Basic Training.

Ex. 2 at i. The report also determined that female Agent Trainees were sent to and dismissed by

---

[4] Dep't of Justice, Off. of the Inspector Gen., *Evaluation of Gender Equity in the Federal Bureau of Investigation's Training Process for New Special Agents and Intelligence Analysts at the FBI Academy* (Dec. 6, 2022), https://oig.justice.gov/sites/default/files/reports/23-008.pdf.

Trainee Review Boards at disproportionate rates. *Id.* The OIG report asked the FBI to make certain limited changes to some of the practices highlighted in the report. *Id.* at ii-iii. Subsequently the FBI reported to the OIG on changes made, and an iterative process followed between the FBI and OIG regarding steps the FBI was taking to satisfy the OIG's concerns.[5] However, the changes did not fully address Plaintiffs' concerns. Webber Decl. ¶ 42. Following the revelations in the OIG report that there were too few dismissed female Analyst Trainees to form a class, and confirmation of such via document discovery, Plaintiffs determined to pursue the Analyst Trainee claims individually only, and not on behalf of a putative class. *Id.* ¶ 43 n.4. The Fifth Amended Complaint, filed on August 30, 2024, therefore does not include the Analyst Trainee subclass claims. Dkt. 96-1.

The parties have since separately agreed to settle the individual claims of Plaintiffs Barbour and B.G. and filed Stipulations of Dismissal on September 16, 2024. Dkt. 98, 99.[6] The Parties will file a Joint Status Report regarding the continuation of discovery and related deadlines for the Plaintiffs Lee and Wesley's claims on September 30, 2024. *See* Dkt. 95. The Settlement Agreement for which Plaintiffs seek preliminary approval is only related to the Agent Trainee class claims.

Shortly after the OIG report was issued in late 2022, Plaintiffs reached out to Defendant

---

[5] Details of the status of the OIG's recommendations are available at: https://oig.justice.gov/reports/evaluation-gender-equity-federal-bureau-investigations-training-process-new-special-agents.

[6] The Parties negotiated the settlements of Plaintiff Barbour and Plaintiff B.G.'s claims simultaneously with the class Settlement on which Plaintiffs seek the Court's approval here. Webber Decl. ¶ 5. However, neither Plaintiff Barbour nor B.G. were members of the putative class of Agent Trainees, and the proposed Agreement reached here was not contingent upon settlement of the individual claims or vice versa. *Id.* Nonetheless, if the Court wishes, Plaintiffs will file a Fed. R. Civ. P. 23(e)(3) statement identifying these agreements and providing the Court with copies.

to invite settlement discussions based on the OIG findings, proposing to discuss a classwide settlement for the Agent Trainee Class and individual settlements for the remaining named Plaintiffs. Webber Decl. ¶ 43. But Defendant was not prepared to discuss settlement at that time. *Id.* ¶ 44. In early 2024, Defendant approached Plaintiffs expressing interest in discussing the potential of a settlement. *Id.* On February 14, 2024, the Parties filed a joint motion for referral to the United States Court of Appeals for the D.C. Circuit Executive's Mediation Program and held their first joint mediation session on April 4, 2024. Dkt. 87; Webber Decl. ¶ 45. Throughout the following five months, the Parties engaged in extensive, arm's length settlement negotiations, including both joint sessions, and many separate sessions with the mediators. *Id.* ¶¶ 45, 47.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

Plaintiffs brought suit to ensure that substantive changes were made to the policies and procedures used during Basic Training to evaluate and discipline Agent Trainees, specifically to eliminate the adverse effects on female Agent Trainees. Plaintiffs sought the ability to be reinstated to Basic Training in order to fulfill their longstanding desire to serve as FBI Special Agents. They also sought to secure compensation for themselves and fellow Class Members who were forced to pursue alternative employment or careers that often paid less than a career as an FBI Special Agent and/or did not come with the same benefits. This Settlement Agreement achieves those goals.

### A.    The Settlement Class

The proposed Settlement seeks relief for the following Class:

[A]ll female New Agent Trainees who received suitability notations and were dismissed from the FBI's [Basic Field Training Course] (previously New Agent training program) after appearing before a Trainee Review Board . . . or New Agent Review Board . . . between April 17, 2025, and August 10, 2024, excluding any individual whose dismissal was based solely on an Honor Code violation and any individual who previously signed a settlement agreement with Defendant

> waiving any and all claims arising from her time at the [Basic Field Training Course] as of the effective date of her settlement agreement.

Ex. 1, § III.B (omitting abbreviations).

This definition varies slightly from the class definition included in the First through Fifth Amended complaints in that it excludes those who were dismissed from Basic Training due solely to Honor Code violations or who previously signed a settlement agreement with Defendant related to claims from their time at the Academy. *Compare id. with*, *e.g.*, Dkt. 96-1, ¶ 56. These alterations led to the exclusion of three individuals from the Settlement Class definition who were encompassed by the class definition contained in each of the Amended Complaints. The Settlement Agreement provides for those three individuals to receive an Exclusion Notice (Ex. D) informing them of their exclusion from the Settlement Class and their resulting rights.

B.     Injunctive Relief Provided by the Proposed Settlement

The proposed Settlement achieves one of the Plaintiffs' main objectives when commencing this lawsuit: reform of the FBI's policies and procedures for evaluating Agent Trainees at Basic Training. If approved, the Parties will engage two well-known experts in the field of Industrial and Organizational Psychology—Dr. Wayne Cascio and Dr. Sheldon Zedeck[7] ("I/OPs")—to review those policies and procedures for evaluating and disciplining trainees at Basic Training *as they function* in practice. Ex. 1, § VIII.C. (emphasis in original). Subject to the Agreement's approval, the I/OPs will do the following. These experts will identify any potential for bias and identify ways to mitigate that potential and increase the objectivity of evaluations.

---

[7] Subject to Dr. Cascio and Dr. Zedeck obtaining the necessary security clearance, as detailed in Exhibit 1, § VII.A.1. Dr. Cascio and Dr. Zedeck's CVs are attached hereto as Exhibits 3 and 4, respectively.

*id.* Once the I/OPs conduct their review, they will submit a report with recommendations to both Parties. *Id.* § VIII.B. Some of the proposed topics for review could include methods for observation and evaluation of trainees, Suitability Notation criteria and processes, and Trainee Review Board criteria and process, amongst others, subject to the I/OPs' expertise and independent determinations. *Id.* § VIII.C.3.

The I/OPs will have access to relevant documents and the chance to interview requested personnel. *Id.* § VIII.C.4. The Named Plaintiffs will also have an opportunity to meet with the I/OPs to share their personal experiences and provide feedback based on those experiences that may inform the I/OPs' review. *Id.* Once the I/OPs submit their report and recommendations to the Parties, Defendant will submit a response to both Class Counsel and the I/OPs that identifies which recommendations they are accepting as well as a written explanation of any they intend to modify or reject. *Id.* §§ VIII.B.1-2. The Parties and the I/OPs will then meet to discuss the recommendations Defendant desires to modify or reject and will continue to discuss those differences until Class Counsel declares an impasse. *Id.* §§ VIII.B.3-4. Once an impasse is declared, the dispute will be submitted to the Director or the Deputy Director of the FBI, who will meet with the I/OPs and Class Counsel, review any written submissions, and provide Defendant's final decision. *Id.* § VIII.B.4.

Defendant will contract directly with the I/OPs and will be responsible for paying them for their services, not to exceed $500,000. *Id.* § VIII.C.5. Any remainder of the $500,000 allocated for the I/OP review will be transferred by Defendant to the Settlement Administrator to add to the Class Settlement Fund for distribution to the Class Members. *Id.*; Ex. H, § II.D.2.

      C.    <u>Ability to Elect Reinstatement</u>

The proposed Settlement provides Class Members with another key remedy they sought when commencing this litigation: the opportunity to be reinstated to the FBI's Basic Training to

pursue their goal of becoming an FBI Special Agent. Class Members will be provided the

Reinstatement Election Form (Ex. C) alongside the Class Action Notice and must return it within

thirty (30) days of Final Approval if they wish to pursue reinstatement. Ex. 1, § VI.B; Ex. C.

Class Members are eligible to elect reinstatement if their dismissal from the Academy was not

due in any part to violation of the Honor Code, FBI Core Values, FBI Standards of Conduct, or

other misconduct. Ex. 1, §§ VI.A.1-3. They must also either already have, or be able to obtain

and maintain, a valid FBI Top Secret security clearance. *Id.* Class Members who are ineligible to

elect reinstatement will be notified of their ineligibility to elect reinstatement along with the

Class Action Notice. *Id.* § VI.A.4. Eligible Class Members may elect reinstatement as either an

Agent Trainee or as an Analyst Trainee and must meet the same requirements as all Agent

Trainees or Analyst Trainees for entrance to or graduation from Basic Training.[8] *Id.* § VI.B; Ex.

C.

A Class Member who elects reinstatement as an Agent Trainee and successfully

graduates will be guaranteed placement in one of her top three field office preferences for her

first placement post-graduation. Ex. 1, § VI.E.1. Additionally, once she has graduated and

completed the New Agent Development Program in her first field office as a Special Agent, the

FBI will adjust the Class Member's grade and step under the General Schedule pay scale for

federal employees to what it would have been had she graduated with her original class. *Id.*

§ VI.E.2.

---

[8] If a Class Member does not graduate from Basic Training as the result of a test failure or lack of suitability unrelated to the Honor Code, FBI Core Values, FBI Standards of Conduct, or other misconduct, the FBI will either make every effort to place her in her previous field office if currently on staff, or she may seek a professional staff position within the FBI. Ex. 1, § VI.B.

D.     Monetary Relief Provided by the Proposed Settlement

The proposed Agreement provides meaningful monetary relief to Class Members to compensate them both for lost income and for the emotional distress they suffered as a result of the FBI's actions. Under the terms of the Agreement, the FBI will pay $22,100,000 into a Qualified Settlement Fund ("QSF"). Ex. 1, § VII.E.1. This sum includes $19,400,000 for damages award payments to be made to Class Members and the employer portion of payroll taxes for the portions of the Damages Awards designated as wages ("Class Settlement Fund"). Ex. 1, § VII.E.2. It also includes $2,700,000 for attorneys' fees and costs (subject to Court approval) and third-party settlement administration expenses. *Id.* If any of the $500,000 allocated for the I/OP remains at the conclusion of their review, the remainder will be transferred by the FBI to the Settlement Administrator to add to the Class Settlement Fund for a subsequent distribution. *Id.* § VIII.C.5.[9]

Exhibit H contains a detailed plan for allocation of the $19,400,000 of the Class Settlement Fund. The process will involve the completion of a Claim Form (Ex. B) and calculation of each Class Member's economic damages. Class Counsel will assist every Class Member with the Claim Form and calculations, unless the Class Member chooses not to accept such assistance. Each Class Member who does not opt out will receive a minimum of $50,000 for compensatory damages, regardless of whether she submits a Claim Form. Ex. H, § II.A.1. The economic damages will consist of back pay, interest on back pay, front pay, Thrift Savings Plan losses, pension losses, and other documented economic damages that resulted from Defendant's treatment of Class Members. However, if a Class Member elects reinstatement and

---

[9] If any Class Members opt out, $500,000 for each opt out will be deducted from the sum that Defendant will pay into the QSF. Ex. 1, § V.A.4.

is permitted to re-enroll at Basic Training, she will only be eligible to receive economic damages (including back pay, interest, Thrift Savings Plan losses, and other economic damages) accrued through December 31, 2024, and will not be eligible to receive front pay or pension loss adjustment as part of her damages award. Ex. 1, § VI.D.1. The consequences of electing reinstatement on a Class Member's potential Damages Award are clearly indicated in both the Class Action Notice (Ex. A at 8) and the Reinstatement Election Form (Ex. C). Completed claim packets are due to Class Counsel sixty (60) days after Final Approval.

Completed claims packets will be submitted by Class Counsel to the Honorable Judge Ellen Huvelle (inactive), subject to the Court's approval of her as Appointed Neutral, who will determine the total Damages Award for each Class Member. *See* Ex. H, § II.B. (describing the proposed duties of the Appointed Neutral). As part of this process, the Appointed Neutral will determine compensatory damages for each Class Member beyond the $50,000 minimum based on a statement the Class Members will submit as part of their Claim Form and any medical records or documentation submitted to support their compensatory damages claim. *Id.* §§ III.F.2-3. After the Appointed Neutral determines what each Class Members' damages would be unconstrained by the size of the Class Settlement Fund, the Settlement Administrator will calculate each Class Member's share of the total damages and allocate the Class Settlement Fund accordingly. Thus, if the total damages for all Class Members as determined by the Appointed Neutral exceeds the Class Settlement Fund, each Class Member's award will be reduced proportionately. *See id.* §§ III.C.2-3 (describing the method by which the Settlement Administrator will calculate each Class Member's final Damages Award).

E.     Notice

Within seven (7) days after this Court grants preliminary approval, should the Court so order, the FBI will provide Class Counsel the last known addresses and email addresses for each

11

Class Member, as well as for the three individuals who fell within the original definition of the proposed class but did not fall within the definition of the Settlement Class. Ex. 1, § IV.B.3. Then within fifteen (15) days of the Court granting this Motion, Class Counsel will send the Notice of Settlement (Ex. A), Claim Form (Ex. B), and Reinstatement Form (Ex. C) to all Class Members. *Id.* § IV.B. For the three individuals excluded from the Settlement Class definition, Class Counsel will send them the Notice of Exclusion (Ex. D) within fifteen (15) days of the Court's ruling on Plaintiffs' Motion. Class Members will have forty-five (45) days from the date the Notice is mailed to opt out or object to the Settlement, in accordance with the procedure detailed in Exhibit 1 §§, IV.C-D.

      F.    <u>Attorneys' Fees and Costs</u>

Plaintiffs are submitting a Motion for Attorneys' Fees and Costs the same day as this Motion for Preliminary Approval. During mediation, the Parties negotiated monetary relief on behalf of the Class first, and then subsequently negotiated a separate amount for attorneys' fees and costs to ensure that any fees, costs, or expenses did not decrease the funds allocated for the Class Members. Plaintiffs' application for attorneys' fees and costs does not exceed $2,700,000 and is not opposed by Defendant. Ex. 1, § IX.A. This amount is based on Class Counsel's lodestar and costs to date, as well as anticipated lodestar for both Class Counsel's work with Class Members throughout the claims process, as well as Class Counsel's participation in the I/OP review process.[10] Approval of the Settlement Agreement is not dependent upon the Court awarding the full amount of attorneys' fees and costs sought.

---

[10] Due to the small size of the Class, Class Counsel will be responsible for many of the administrative tasks a settlement administrator would normally undertake, such as issuing notice and receiving objections. Therefore, the cost for the Settlement Administrator will likely be encompassed by the interest earned on the $22,100,000 held in the QSF.

## IV.    ARGUMENT

Under Federal Rule of Civil Procedure 23(e), a Court may approve a proposed class action settlement if the Court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The district court has the authority to approve or reject proposed settlements. *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004) (citing *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996)). At this stage, if the Court determines that it "will likely be able to approve the [proposed agreement] under Rule 23(e)(2)" and "certify the class for purposes of judgment on the proposal," then the Court "must" decide to issue notice to the class. Fed. R. Civ. P. 23(e)(1)(B); *see also Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 190 (D.D.C. 2017) (Jackson, J.). There is a "long-standing judicial attitude favoring class action settlements." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 103; *see also Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 191-92 (D.D.C. 2011) ("Although the Court should undertake careful scrutiny of the settlement terms, the discretion to reject a settlement is restrained by the principle of preference that encourages settlements." (internal quotations omitted)). When considering approving a proposed settlement agreement, the Court "need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy," but rather need only to decide that "the settlement is fair, adequate, reasonable, and appropriate[.]" *United States v. Dist. of Columbia*, 933 F. Supp. at 47. The proposed Settlement Agreement here satisfies the requirements of Rule 23(e). Therefore, Plaintiffs' request for certification of the Settlement Class, issuance of notice, and scheduling of a Final Approval hearing should be granted.

### A.    The Class Should be Certified for Settlement Purposes

For a class to be certified for settlement purposes, it must meet all of the prerequisites in Rule 23(a) and at least one of the requirements of Rule 23(b). *Ross*, 267 F. Supp. 3d at 190. The

proposed Settlement Class, as defined in Section III.A. above, meets the requirements of Rule

23(a) and Rule 23(b)(3), and this Court should therefore conditionally certify the proposed

Settlement Class for settlement purposes only.

          1.      <u>Plaintiffs Satisfy the Requirements of Rule 23(a)</u>

First, the proposed Settlement Class is sufficiently large that joinder is impracticable, and

therefore Rule 23(a)'s numerosity requirement is satisfied. Fed. R. Civ. P. 23(a)(1). The

numerosity requirement does not impose "absolute limitations" or specify a threshold size a class

must meet in order to be found sufficient; instead, it requires a fact-specific analysis to make that

determination. *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 160 (D.D.C. 2014)

(internal citation omitted); *Moore v. Napolitano*, 269 F.R.D. 21, 27 (D.D.C. 2010). While courts

in this district routinely find that proposed classes of forty or more establish that joinder is

impracticable, numerosity is also found by courts making case-specific evaluations for classes

smaller than forty. *Alvarez*, 303 F.R.D. at 160; *see also Meijer, Inc. v. Warner Chilcott Holdings

Co.*, 246 F.R.D. 293, 307 (D.D.C. 2007) (numerosity satisfied for class with 30 members);

*Coleman v. District of Columbia*, 306 F.R.D. 68, 81-82 (D.D.C. 2015) (numerosity satisfied for

class with 34 members); *Moore*, 269 F.R.D. at 26 (numerosity satisfied for class with 36

members, and collecting cases holding same).

A fact-specific evaluation here indicates that a class size of thirty-four is appropriately

numerous. Many Plaintiffs feared disclosing their identity because of their work in law

enforcement, and only some were able to proceed anonymously. Consequently, other Class

Members likely would be fearful of participating in the case through joinder, where their

anonymity could not be assured in advance. Such considerations, in addition to the class size,

support finding impracticability of joinder. The proposed class here of thirty-four members is

fully consistent with the other cases from this Court finding numerosity satisfied by classes of

30-36 members. *E.g.*, *Meijer*, 246 F.R.D. at 307; *Coleman*, 306 F.R.D. at 81-82; *Moore*, 269 F.R.D. at 26. The class is also ascertainable: the proposed class definition is objective, and data exist to permit identification based on objective criteria. Indeed, the Parties already reviewed the record and confirmed the identity of the thirty-four women who meet the proposed class definition.[11] Therefore, the proposed Class satisfies the requirements of Rule 23(a)(1).

Second, there are several common questions of law and fact at issue, satisfying the commonality requirement of Fed. R. Civ. P. 23(a)(2). A common question is one that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Coleman*, 306 F.R.D. at 82 ("The touchstone of the commonality inquiry is 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" (quoting *Wal-Mart*, 564 U.S. at 350)). All members of the Settlement Class were issued Suitability Notations and were subsequently called before and dismissed by a Trainee Review Board[12]—practices that Plaintiffs allege were used to discriminate against women Agent Trainees and that adversely impacted the Class Members. *See* Dkt. 96-1, ¶¶ 56-59, 61.

The OIG Report confirmed that female Agent Trainees "received a disproportionate number of Suitability Notations (SN) in several areas and were dismissed at rates higher than their overall representation in the [Basic Field Training Course] population." Ex. 2 at i. Specifically, the OIG report identified that while female Agent Trainees suffered from disparate

---

[11] The class members are identified in Exhibit I. However, the Parties agreed that the names should not be listed publicly. As a result, Exhibit I is redacted. Plaintiffs can file Exhibit I under seal or provide a copy *in camera* if the Court desires.

[12] Previously this was referred to as the New Agent Review Board, which was the name in use during the first several months of the class period.

treatment throughout Basic Training, the disparate treatment was more prevalent "especially [in] the Academy's handling of tactical and defensive tactics training." *Id.* While female Agent Trainees made up only 25% of all Agent Trainees, they received a greater proportion—36%—of all Suitability Notations issued. *Id.* Further, while only 25% percent of Agent Trainees were women between 2015 and 2020, female Agent Trainees represented 44% of those referred to Trainee Review Boards and 46% of those dismissed. *Id.* Significant numbers of women responding to an OIG survey also reported that they believed male Agent Trainees were treated more favorably during tactics evaluations and that the difference in scrutiny was due to their gender. *Id.*

       The OIG report, as well as evidence already elicited by Plaintiffs during the document discovery conducted thus far, demonstrates that the question of whether the FBI's practices and policies at Basic Training violated Title VII is common to all members of the Settlement Class and can be satisfied using evidence common to the Class. Plaintiffs have received in discovery data and other evidence of practices at Basic Training, which show an adverse impact on women. This common evidence demonstrates a common practice and adverse impact against female Agent Trainees in Basic Training. The OIG report, conducted completely autonomously of Plaintiffs' discovery, provides further common evidence of such practices. The common questions as identified in the Fifth Amended Complaint apply to all Class Members and can be answered using evidence common to the class, therefore satisfying the Rule 23(a)(2) commonality requirement. *See Jones v. Chopra*, No. 18-2132, 2023 WL 6037295, at *4 (D.D.C. Sept. 15, 2023) (Howell, J.) (the standard for meeting the commonality requirement is "not demanding, as 'even a single common question' will do" (quoting *Wal-Mart*, 564 U.S. at 359)).

       Third, the Rule 23(a)(3) typicality requirement is satisfied. Typicality requires that "the

Case 1:19-cv-01581-JMC   Document 100-1   Filed 09/30/24   Page 21 of 31

representative parties' claims or defenses must be typical of the claims or defenses of the class."
*Chopra*, 2023 WL 6037295, at *5. Typicality is satisfied when "the claims . . . of the
representatives and the members of the class stem from . . . a unitary course of conduct[.]" *Id.*
(quoting *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019)). Here, the Named Plaintiffs' claims
and Class Members' claims arise out of the same course of conduct—the FBI's disciplinary
policies, practices, and procedures at Basic Training that Plaintiffs allege had an adverse impact
on female Agent Trainees when they were disproportionately issued Suitability Notations and
disproportionately dismissed by Trainee Review Boards, as detailed above. The operative
complaint details how each Named Plaintiff was subject to those same policies, practices, and
procedures, issued Suitability Notations—often in circumstances where similar conduct from
male Agent Trainees was not similarly punished—and then dismissed by a Trainee Review
Board or New Agent Review Board. *See* Dkt. 96-1, ¶¶ 69-72 (Paula Bird); *id.* ¶¶ 85-90 (Clare
Coetzer); *id.* ¶¶ 100-01 (Lauren Rose); *id.* ¶¶ 107-08 (Danielle Snider); *id.* ¶¶ 148-49 ("D.A.");
*id.* ¶¶ 153-54, 156 ("S.B."); *id.* ¶¶ 160-63 ("D.C."); *id.* ¶¶ 168, 170 ("P.E."); *id.* ¶¶ 183-85
("W.M."); *id.* ¶¶ 189-92 ("C.S."); *id.* ¶ 200 ("L.S."); *id.* ¶¶ 205-06 ("G.T."); *id.* ¶¶ 211, 213
("T.S."). Each member of the Class was subject to the same policies and practices, was issued
Suitability Notations, and was dismissed via a Trainee Review Board or New Agent Review
Board. Therefore, typicality is satisfied.

      Finally, both prongs of the Rule 23(a)(4) adequacy requirement are satisfied. Two criteria
are used to determine whether proposed Class Representatives adequately protect the interests of
the class: "(1) the named representative must not have antagonistic or conflicting interests with
the unnamed members of the class, and (2) the representative must appear able to vigorously
prosecute the interests of the class through qualified counsel." *Chopra*, 2023 WL 6037295, at *5

(quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)). Named Plaintiffs Paula Bird, Clare Coetzer, Lauren Rose, Danielle Snider, "D.A.", "S.B.", "D.C.", "P.E.", "W.M.", "C.S.", "L.S.", "G.T.", and "T.S." have fully participated in this litigation for more than five years, including maintaining regular contact with their counsel, providing information and documents on counsel's request, familiarizing themselves with the facts and issues presented in the case and participating in the months long mediation process. If appointed as Class Representatives, the Named Plaintiffs will continue to adequately represent the interests of the Class. There are no conflicts of interest between the Named Plaintiffs and the Class Members.

The Settlement Class is also adequately represented by qualified attorneys with significant experience in Title VII and other employment class actions. Plaintiffs are represented by the Washington, D.C. law firms Cohen Milstein Sellers & Toll PLLC, one of the leading plaintiff-side class action litigation firms in the country, and David Shaffer Law PLLC, who specializes in civil rights class actions against federal law enforcement agencies on behalf of women, people of color, and individuals with disabilities. *See* Declarations of Christine E. Webber and David J. Shaffer, attached to the forthcoming Plaintiffs' Motion for Attorneys' Fees and Costs. Therefore, both prongs of the Rule 23(a)(4) adequacy requirement, as well as Rule 23(g), are satisfied, and Plaintiffs have met all the requirements of Rule 23(a).

### 2. Plaintiffs Satisfy the Requirements of Rule 23(b)(3)

Plaintiffs seek certification of a Rule 23(b)(3) class, which requires "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy both predominance and superiority.

To meet the Rule 23(b)(3) predominance requirements, "the plaintiffs must show that the

issues identified as common in the Rule 23(a) commonality inquiry predominate over non-common issues for both their pattern and practice claim and their disparate impact claim." *Moore v. Napolitano*, 926 F. Supp. 2d 8, 33 (D.D.C. 2013) (citing *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)); *see also Chopra*, 2023 WL 6037295, at *6 (the predominance inquiry "turns on 'whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating individual issues.'" (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016))). The common, aggregation-enabling questions identified above affect all Class Members in the same way. Therefore, they predominate over any individual issues that may be present.

To demonstrate disparate treatment by the FBI, Plaintiffs must establish generalized, class-wide proof of a systemwide pattern or practice that is closer to a "standard operating procedure" than isolated occurrence. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). To establish their disparate impact claim, Plaintiffs must identify "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another[.]" *Moore*, 926 F. Supp. 2d at 19 (quoting *Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C. Cir. 1999)). Then, Plaintiffs must present statistical evidence that the practice has an adverse impact on women. *See id.* (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1998)).

Using the common evidence detailed above, including the statistics in the OIG report regarding the disproportionate rates of Suitability Notations issued to and the dismissals of female versus male Agent Trainees, Plaintiffs can sufficiently satisfy their burden to demonstrate "that unlawful discrimination has been a regular procedure or policy." *Teamsters*, 431 U.S. at 360. Further, Plaintiffs have identified the Suitability Notation system and the Trainee Review

Board processes as facially neutral policies, and the OIG report contains evidence showing those processes had an adverse impact on women Agent Trainees. Whether there was a standard operating procedure and whether there was disparate impact are questions that would be answered in the same way for all class members.

If Plaintiffs succeeded in establishing either systemic disparate treatment or a disparate impact, a presumption of discrimination would then apply to all Class Members. *Id.* at 362. While individualized questions on damages may remain, those questions could be addressed in individual *Teamsters* hearings—which, for thirty-four Class Members, would be entirely manageable. *Id.* at 361. Those individual issues do not predominate over the common issues discussed above and do not bar certification. *Id.* Because common questions are more significant than individualized ones, the proposed Class is "sufficiently cohesive to warrant adjudication by representation" and satisfies the predominance inquiry. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Superiority requires a showing that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The requirement ensures that class action resolution will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences.'" *Chopra*, 2023 WL 6037295, at *6 (quoting *Amchem Prods.*, 521 U.S. at 615). A class action is the superior method for adjudicating this case due to the uniformity of the issues faced by Plaintiffs. Therefore, both requirements of Rule 23(b)(3) are satisfied, and the Class should be certified for settlement purposes.

B.    The Proposed Agreement Is Fair, Reasonable, and Adequate

Preliminary approval should be granted if the Court finds that the proposed settlement

agreement is fair, reasonable, and adequate, and that it was not the product of collusion between the parties. *Ross*, 267 F. Supp. 3d at 194. In considering a proposed settlement, "the district court's duty is to the class members themselves[.]" *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000); *see also In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 103-04 ("Generally, in determining whether settlement should be approved, courts consider. . . whether the interests of the class as a whole are being served if the litigation is resolved by settlement rather than pursued." (internal quotations omitted)). To determine whether a proposed settlement is fair, reasonable, and adequate, courts in this circuit generally consider the following factors: (1) whether the settlement is the result of arm's length negotiations; (2) the terms of the settlement in relation to the strength of the plaintiffs' case; (3) the status of the litigation at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel. *Trombley*, 826 F. Supp. 2d at 194; *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104. The proposed Settlement Agreement satisfies all five of these factors. Therefore, the Court should direct notice be issued to the Class Members.

       1.      <u>The Agreement Is the Result of Arm's Length Negotiations by Experienced Counsel</u>

This proposed Agreement was reached after months of negotiations between experienced counsel, and after over two years of discovery was conducted. Based on these factors, a "presumption of fairness, adequacy and reasonableness" attaches. *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104. The lengthy negotiations that preceded this Agreement were facilitated by the D.C. Circuit Executive's Mediation Program. Thus, the Court can be assured that the Agreement was the result of arms-length negotiations that protected the interests of all Class Members.

       2.      <u>The Terms of the Proposed Settlement Agreement Provide Class Members with Appropriate Relief</u>

Next, the Court "must evaluate the relief provided in the proposed settlement against the relative strength of the plaintiffs' case, including their ability to obtain recovery at trial." *Trombley*, 826 F. Supp. 2d at 195 (internal citations omitted). Here, the terms of the Agreement would provide significant relief that Plaintiffs set out to achieve at the outset of the litigation. The Agreement includes not only substantial monetary relief, but also programmatic relief in the form of the I/OP review, and the opportunity to elect reinstatement. The monetary relief, enough to average $570,000 per Class Member, and the review and recommendations for programmatic changes by two preeminent experts both present significant benefits to the Class that may not be available even if Plaintiffs were successful at trial. While it is possible some Class Members might be able to obtain greater monetary awards after a successful trial, such awards would depend on finding a lengthy award of front pay appropriate, one sufficient to trigger the full 20-year Special Agent Pension. Obtaining this level of relief is not a foregone conclusion, even with success on the merits. *See Alvarez*, 303 F.R.D. at 164 (noting that the potential for greater monetary recovery for wage claims "would ultimately be somewhat discounted, given the uncertainty of recovering such damages and the time and money that it would have taken to litigate this case to a verdict"). Juxtaposing the potential significant recovery and relief afforded to Plaintiffs by the proposed Agreement with the risks inherit to continued litigation, the proposed Agreement is fair, reasonable, and adequate, and this factor should weigh in favor of a finding as such.

       3.      <u>Settlement Is Appropriate at this Stage of Litigation</u>

A settlement "should not 'come too early to be suspicious nor too late to be a waste of resources;' rather it should be proposed 'at a desirable point in the litigation for the parties to

reach an agreement to resolve these issues without further delay, expense, and litigation.'"
*Abraha v. Colonial Parking, Inc.*, No. 16-680, 2020 WL 4432250, at *9 (D.D.C. July 31, 2020)
(quoting *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 117 (D.D.C. 2007)). To determine when this
"desirable point" in the ligation falls, courts consider "whether counsel had sufficient
information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the
probability of success and range of recovery." *Id.* (quoting *In re Lorazepam & Clorazepate
Antitrust Litig.*, No. 99MS276, 2003 WL 22037741, at *4 (D.D.C. June 16, 2003)).

This Agreement was reached at a desirable point in the litigation. Extensive document
discovery has been completed, as discussed above, to understand the strengths and weaknesses
of the claims at issue and the evidence supporting those claims, but resources have not yet been
exhausted on depositions or completing expert reports. As noted above, both Parties have
responded to multiple sets of document request and interrogatories, and nearly twenty thousand
documents have been produced. *See Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 488
(D.D.C. 2019) ("Particularly at the preliminary approval stage, 'it is enough that the parties
represent that formal and informal discovery facilitated a significant investigation of the relevant
facts contributing to arms-length settlement negotiation." (quoting *Trombley*, 759 F. Supp. 2d at
26)).

Moreover, given the amount of time that has lapsed since the action was filed, several
Plaintiffs have since aged out of being able to apply for admission to Basic Training without
receiving an age waiver first (which the Settlement Agreement provides for, *see* Ex. 1,
§ VI.B.1.a.ii). Several Plaintiffs who plan on electing reinstatement have been waiting for years
for the opportunity to re-enroll at Basic Training and begin anew their path to becoming an FBI
Special Agent. If the parties were to continue to litigate, and continue to trial, more Plaintiffs and

Class Members would age out of being able to be reinstated to Basic Training *sans* age waiver, and they would continue growing in their current jobs and lives, further complicating their potential ability to re-enroll at Basic Training. *See Luevano v. Campbell*, 93 F.R.D. 68, 89 (D.D.C. 1981) ("Even putting aside all consideration of the risks of litigation, the delay in providing relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties."). Therefore, because the Parties have engaged in discovery that has facilitated a sufficient investigation of the facts, strengths, and weaknesses of their case, and the urgency of resolution due to the age of the Plaintiffs and their ability to be reinstated, this action has reached an appropriate stage to settle. This factor should weigh in favor of approving this proposed Agreement.

      C.     <u>Both the Named Plaintiffs and Experienced Counsel Approve of the Agreement</u>

While the Court usually cannot gauge the reaction of the class until after notice is sent and class members are given the chance to object, in this case the fact that the thirteen Named Plaintiffs approve of the proposed Agreement and comprise nearly 40% of the Class Members can be used as a predictive measure of the reaction of the remainder of the Class. Additionally, "it is well established that the opinion of experienced counsel 'should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'" *Alvarez*, 303 F.R.D. at 164 (quoting *Chilcott*, 522 F. Supp. 2d at 121). The proposed Agreement was negotiated with the expert assistance of the mediators of the D.C. Circuit Executive's Mediation Program, and agreed to by Counsel from both parties, who are all experienced litigators in their own rights. Therefore, the opinions of the Named Plaintiffs and qualified counsel that the settlement is fair, adequate, and reasonable should weigh in favor of approving this proposed Agreement.

D.    The Proposed Notice Satisfies Rule 23(e) and Due Process

Notice must be "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Stephens*, 329 F.R.D. at 490. The proposed Class Action Notice here (Ex. A) was drafted using the Impact Fund's class action notice template, which has been approved by several federal courts.[13] The proposed Class Action Notice informs Class Members of their legal rights and options (*id.* at 1, 3), provides background information about the case and the terms of the settlement agreement (*id.* at 4-8), and offers directions for how to object (*id.* at 13), opt-out (*id.* at 11) and submit a claim form (*id.* at 10). The proposed Class Action Notice also clearly states the consequences of objecting, opting out, or doing nothing, and of submitting a claim form or reinstatement election form. *Id.* at 3, 9, 10, 13. Additionally, the Notice explains what factors will be considered in determining each Class Member's final monetary award (*id.* at 8-9) and provides contact information for Class Counsel if Class Members have questions or seek Class Counsel's assistance in calculating their economic damages. *Id.* at 14. Should the Court find the proposed Notice acceptable, Class Members will have forty-five (45) days from mailing of the Notice to opt out or object—a deadline that is listed in several places throughout the Notice itself. *Id.* at 1, 3, 12, 13. Class Counsel will send the Notice by first class mail to the thirty-four Class Members using addresses provided by Defendant, and they will also send the Notice by email to the extent that email addresses are provided. Because the proposed Class Action Notice is reasonably calculated to

---

[13] The Impact Fund's Notice Project provides class action litigators with free templates and software for creating easy to understand class action notices. Notices based on the Impact Fund's templates have been approved in several cases, including *Geiser v. The Salvation Army*, No. 1:22-cv-1968 (S.D.N.Y), *Edge v. RoundPoint*, No. 1:21-cv-00122-TSK (N.D. W. Va.), and *Forsyth v. HP Inc.*, No. 5:16-cv-04775-EJC (N.D. Cal.), amongst others. For more information see: https://noticeproject.org.

apprise Class Members of the pendency of this action, and their right to object or opt out, Plaintiffs respectfully request that this Court approve the proposed Notice and allow it to be issued to the proposed Class Members.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (1) conditionally certifying the Settlement Class for settlement purposes; (2) appointing Plaintiffs Paula Bird, Clare Coetzer, Lauren Rose, Danielle Snider, "D.A.", "S.B.", "D.C.", "P.E.", "W.M.", "C.S.", "L.S.", "G.T.", and "T.S." as Class Representatives, and appointing undersigned counsel as Class Counsel; (3) approving the proposed Class Action Notice and directing that the Notice be distributed to Class Members by Class Counsel; (4) setting a date forty-five (45) days from the date the Notice is disseminated as the deadline for submission of any objections to the proposed Settlement or for Class Members to opt out; and (5) scheduling a Final Approval Hearing on or after eighty (80) days after preliminary approval, which is twenty (20) days after the deadline for Class Members to object to the proposed Settlement Agreement.

September 30, 2024                                 Respectfully submitted,

*/s/ Christine E. Webber*
Joseph M. Sellers (#318410)
Christine E. Webber (#439368)
Rebecca A. Ojserkis (#1781442)
Dana Busgang (#90006138)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
rojserkis@cohenmilstein.com
dbusgang@cohenmilstein.com

David J. Shaffer (#413484)
David Shaffer Law PLLC

5012 Aurora Dr.
Kensington, MD 20895
(202) 508-1490
david.shaffer@davidshafferlaw.com

*Attorneys for Plaintiffs*