# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULA BIRD, *et al.*, ) | |
| ) | Civil Action No. 1:19-CV-1581 (JMC) |
| Plaintiffs, ) | |
| ) | |
| v. ) | Judge: Jia M. Cobb |
| ) | |
| MERRICK GARLAND, Attorney General of ) | |
| the United States, named in his official ) | |
| Capacity, as head of the Department of Justice, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED
MOTION TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES AND
TO GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | History of the Litigation | 1 |
| III. | Summary of the Proposed Settlement | 3 |
| | A. | The Settlement Class | 4 |
| | B. | Injunctive Relief Provided by the Proposed Settlement | 4 |
| | C. | Ability to Elect Reinstatement | 5 |
| | D. | Monetary Relief Provided by the Proposed Settlement | 6 |
| | E. | Attorneys' Fees and Costs | 8 |
| IV. | Notice and Claims Process | 9 |
| V. | Argument | 10 |
| | A. | Notice Was Adequate | 11 |
| | B. | The Class Should be Certified for Settlement Purposes | 12 |
| | | 1. Plaintiffs Satisfy the Requirements of Rule 23(a) | 12 |
| | | 2. Plaintiffs Satisfy the Requirements of Rule 23(b)(3) | 15 |
| | C. | The Settlement Agreement Is Fair, Reasonable, and Adequate | 17 |
| | | 1. The Agreement Is the Result of Arm's Length Negotiations by Experienced Counsel | 18 |
| | | 2. The Terms of the Proposed Settlement Agreement Provide Class Members with Appropriate Relief | 18 |
| | | 3. Settlement Is Appropriate at this Stage of Litigation | 19 |
| | D. | The Named Plaintiffs, Class Members, and Experienced Counsel Approve of the Agreement | 21 |
| VI. | Conclusion | 21 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraha v. Colonial Parking, Inc.*,
No. 16-680, 2020 WL 4432250 (D.D.C. July 31, 2020) ........................................................19

*Alvarez v. Keystone Plus Constr. Corp.*,
303 F.R.D. 152 (D.D.C. 2014)........................................................................................12, 19, 21

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).........................................................................................................17

*Anderson v. Zubieta*,
180 F.3d 329 (D.C. Cir. 1999)..........................................................................................16

*Cohen v. Chilcott*,
522 F.Supp.2d 105 (D.D.C. 2007) ................................................................................19, 21

*Coleman v. District of Columbia*,
306 F.R.D. 68 (D.D.C. 2015) .........................................................................................12, 13

*Int'l Bhd. of Teamsters v. United States*,
431 U.S. 324 (1977)........................................................................................................16, 17

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) .........................................................................................13

*Jones v. Chopra*,
No. 18-2132, 2023 WL 6037295 (D.D.C. Sept. 15, 2023)...................................13, 14, 15, 17

*Kinard v. E. Capitol Fam. Rental, L.P.*,
331 F.R.D. 206 (D.D.C. 2019)..........................................................................................11

*In re Lorazepam & Clorazepate Antitrust Litig.*,
No. 99MS276, 2003 WL 22037741 (D.D.C. June 16, 2003) .................................................19

*Little v. Wash. Metro. Area Transit Auth.*,
313 F.Supp.3d 27 (D.D.C. 2018)......................................................................................17

*Luevano v. Campbell*,
93 F.R.D. 68 (D.D.C. 1981)..............................................................................................20

*Meijer, Inc. v. Warner Chilcott Holdings Co.*,
246 F.R.D. 293 (D.D.C. 2007).........................................................................................12

## TABLE OF AUTHORITIES

Page(s)

*Moore v. Napolitano*,
    269 F.R.D. 21 (D.D.C. 2010)................................................................................12

*Moore v. Napolitano*,
    926 F.Supp.2d 8 (D.D.C. 2013)......................................................................15, 16

*Stephens v. Farmers Rest. Grp.*,
    329 F.R.D. 476 (D.D.C. 2019)........................................................................11, 20

*Trombley v. Nat'l City Bank*,
    826 F.Supp.2d 179 (D.D.C. 2011)...........................................................10, 18, 20

*United States v. District of Columbia*,
    933 F.Supp. 42 (D.D.C. 1996)...............................................................................11

*In re Vitamins Antitrust Class Actions*,
    215 F.3d 26 (D.C. Cir. 2000).................................................................................17

*In re Vitamins Antitrust Litig.*,
    305 F.Supp.2d 100 (D.D.C. 2004).............................................................10, 17, 18

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002)...............................................................................15

*Twelve John Does v. District of Columbia*,
    117 F.3d 571 (D.C. Cir. 1997)...............................................................................14

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)...............................................................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...............................................................................................13

*Watson v. Fort Worth Bank & Trust*,
    487 U.S. 977 (1998)...............................................................................................16

**Rule**

Fed. R. Civ. P. 23 ................................................................................... *passim*

## I.    INTRODUCTION

Plaintiffs Paula Bird, Clare Coetzer, Lauren Rose, Danielle Snider, "D.A.", "S.B.", "D.C.", "P.E.", "W.M.", "C.S.", "L.S.", "G.T.", and "T.S." ("Plaintiffs"), on behalf of themselves and the Settlement Class, submit this Memorandum in Support of their Unopposed Motion to Certify the Class for Settlement Purposes and to Grant Final Approval of the Class Action Settlement. Plaintiffs seek final approval of the previously filed Class Action Settlement Agreement ("Settlement" or "Agreement"), Dkt. 100-2, that has been entered into by and between Plaintiffs and Defendant. Defendant does not oppose Plaintiff's Motion.[1]

On October 16, 2024, the Court conditionally certified the Settlement Class and directed the distribution of Notice. Dkt. 104 at 1-5 ("Preliminary Approval Order"). Notice was provided to the Settlement Class in accordance with the Court's Order and the terms of the Agreement. The response of the Settlement Class to the Settlement has been uniformly positive: zero Settlement Class Members filed objections or opted out. For the same reasons the Court found that it would "likely be able to approve the proposed Settlement" as "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2), *id.* at 4, and for the reasons detailed herein, Plaintiffs respectfully request that the Court grant their Motion and enter the Final Approval Order, attached as Exhibit 1, and Final Judgment, attached as Exhibit 2.

## II.    HISTORY OF THE LITIGATION

On May 29, 2019, Plaintiffs filed a putative class complaint in the U.S. District Court for the District of Columbia, in which they allege sex discrimination against a proposed class of Agent Trainees and New Intelligence Analyst Trainees ("Analyst Trainees") while attending the

---

[1] Defendant agrees that the Class should be certified for settlement, but it does not take a position on every statement contained in this Motion.

1

FBI's Basic Training. Plaintiffs subsequently filed amended complaints, which alleged that Defendant engaged in a pattern or practice of intentional discrimination against subclasses of female Analyst Trainees and Agent Trainees, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, when issuing Suitability Notations, initiating Suitability Reviews, referring Analyst Trainees and Agent Trainees for Trainee Review Boards (previously known as New Agent Review Boards) and making discharge, recycling, and reinstatement decisions. Dkt. 22, 42, 49, 74, 96-1. The Complaints also alleged that the FBI maintained a system for discharge from the Academy that had an adverse impact on female Analyst Trainees and Agent Trainees in violation of Title VII, 42 U.S.C. § 2000e, *et seq. Id.*[2] On April 15, 2022, the Court denied Defendant's operative Motion to Dismiss.

Fact discovery commenced on May 6, 2022. Dkt. 70. The parties exchanged written discovery, and Plaintiffs completed their document production. Declaration of Christine E. Webber ("Webber Decl."), Dkt. 101-3, ¶¶ 25-38. Defendant has not completed its production of responsive ESI. *Id.* ¶ 31. No depositions have been conducted. *Id.* ¶ 40.

In December 2022, the FBI's Office of the Inspector General released a report, concluding that female Agent Trainees received discipline in the form of Suitability Notations at a disproportionate rate, particularly during the tactical portions of Basic Training. Dkt. 100-3 at i. The report also determined that female Agent Trainees were sent to and dismissed by Trainee Review Boards at disproportionate rates. *Id.* The OIG report asked the FBI to make certain limited changes to some of the practices highlighted in the report. *Id.* at ii-iii. Subsequently, the FBI reported to the OIG on changes made, and an iterative process followed between the FBI and OIG regarding steps the FBI was taking to satisfy the OIG's concerns. However, the changes

---

[2] The Complaints also involved claims on behalf of four individuals not at issue here.

2

did not fully address Plaintiffs' concerns. Webber Decl. ¶ 42. Following the revelations in the

OIG report that there were too few dismissed female Analyst Trainees to form a class, and

confirmation of such via document discovery, Plaintiffs determined to pursue the Analyst

Trainee claims individually only, and not on behalf of a putative class. *Id.* ¶ 43 n.4. The Fifth

Amended Complaint, filed on August 30, 2024, therefore does not include the Analyst Trainee

subclass claims. Dkt. 96-1. The Settlement Agreement for which Plaintiffs seek final approval is

only related to the Agent Trainee class claims.

On February 14, 2024, the Parties filed a joint motion for referral to the United States

Court of Appeals for the D.C. Circuit Executive's Mediation Program and held their first joint

mediation session on April 4, 2024. Dkt. 87; Webber Decl. ¶ 45. Throughout the following five

months, the Parties engaged in extensive, arm's length settlement negotiations, including both

joint sessions, and many separate sessions with the mediators. *Id.* ¶¶ 45, 47.

On September 30, 2024, Plaintiffs filed their Unopposed Motion to Certify the Class for

Settlement Purposes and Direct Notice of Settlement to the Class. Dkt. 100 ("Prelim. Approval

Motion"). Plaintiffs filed on the same day an Unopposed Motion for Attorneys' Fees and Costs.

Dkt. 101. On October 16, 2024, the Court granted the Preliminary Approval Motion and entered

an order: (1) conditionally certifying the Settlement Class, (2) directing notice of the settlement

to the Settlement Class, (3) appointing Plaintiffs as the Settlement Class Representatives,

(4) appointing Cohen Milstein Sellers & Toll PLLC and David Shaffer Law PLLC as Class

Counsel, and (5) scheduling a Final Approval Hearing. *See* Dkt. 104 at 3, 5, 6, 7.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

Plaintiffs brought suit to ensure that substantive changes were made to the policies and

procedures used during Basic Training to evaluate and discipline Agent Trainees, specifically to

eliminate the adverse effects on female Agent Trainees. Plaintiffs sought the ability to be

reinstated to Basic Training in order to fulfill their longstanding desire to serve as FBI Special

Agents. They also sought to secure compensation for themselves and fellow Class Members who

were forced to pursue alternative employment or careers that often paid less than a career as an

FBI Special Agent and/or did not come with the same benefits. This Settlement Agreement

achieves those goals.

A.    The Settlement Class

The proposed Settlement seeks relief for the following Class:

[A]ll female New Agent Trainees who received suitability notations and were
dismissed from the FBI's [Basic Field Training Course] (previously New Agent
training program) after appearing before a Trainee Review Board . . . or New
Agent Review Board . . . between April 17, 2025, and August 10, 2024, excluding
any individual whose dismissal was based solely on an Honor Code violation and
any individual who previously signed a settlement agreement with Defendant
waiving any and all claims arising from her time at the [Basic Field Training
Course] as of the effective date of her settlement agreement.

Dkt. 100-2, § III.B (omitting abbreviations).

B.    Injunctive Relief Provided by the Proposed Settlement

The proposed Settlement achieves one of the Plaintiffs' main objectives when

commencing this lawsuit: reform of the FBI's policies and procedures for evaluating Agent

Trainees at Basic Training. If approved, the Parties will engage two well-known experts in the

field of Industrial and Organizational Psychology—Dr. Wayne Cascio and Dr. Sheldon Zedeck[3]

("I/OPs")—to review those policies and procedures for evaluating and disciplining trainees at

Basic Training *as they function* in practice. Dkt. 100-2, § VIII.C. (emphasis in original). Once

the I/OPs conduct their review, they will submit a report with recommendations to both Parties.

*Id.* § VIII.B. Some of the proposed topics for review could include methods for observation and

---

[3] Subject to Dr. Cascio and Dr. Zedeck obtaining the necessary security clearance, as
detailed in Dkt. 100-2, § VIII.A.1.

evaluation of trainees, Suitability Notation criteria and processes, and Trainee Review Board criteria and process, amongst others, subject to the I/OPs' expertise and independent determinations. *Id.* § VIII.C.3.

The I/OPs will have access to relevant documents and the chance to interview requested personnel. *Id.* § VIII.C.4. The Named Plaintiffs will also have an opportunity to meet with the I/OPs to share their personal experiences and provide feedback based on those experiences that may inform the I/OPs' review. *Id.* Once the I/OPs submit their report and recommendations to the Parties, Defendant will submit a response to both Class Counsel and the I/OPs that identifies which recommendations they are accepting as well as a written explanation of any they intend to modify or reject. *Id.* §§ VIII.B.1-2. The Parties and the I/OPs will then meet to discuss the recommendations Defendant desires to modify or reject and will continue to discuss those differences until Class Counsel declares an impasse. *Id.* §§ VIII.B.3-4. Once an impasse is declared, the dispute will be submitted to the Director or the Deputy Director of the FBI, who will meet with the I/OPs and Class Counsel, review any written submissions, and provide Defendant's final decision. *Id.* § VIII.B.4.

Defendant will contract directly with the I/OPs and will be responsible for paying them for their services, not to exceed $500,000. *Id.* § VIII.C.5. Any remainder of the $500,000 allocated for the I/OP review will be transferred by Defendant to the Settlement Administrator to add to the Class Settlement Fund for distribution to the Class Members. *Id.*; Ex. H to Dkt. 100-2, § II.D.2.

C.    <u>Ability to Elect Reinstatement</u>

The proposed Settlement provides Class Members with another key remedy they sought when commencing this litigation: the opportunity to be reinstated to the FBI's Basic Training to pursue their goal of becoming an FBI Special Agent. Class Members are eligible to elect

reinstatement if their dismissal from the Academy was not due in any part to violation of the

Honor Code, FBI Core Values, FBI Standards of Conduct, or other misconduct. Dkt. 100-2,

§§ VI.A.1-3. They must also either already have, or be able to obtain and maintain, a valid FBI

Top Secret security clearance. *Id.* Eligible Class Members may elect reinstatement as either an

Agent Trainee or as an Analyst Trainee and must meet the same requirements as all Agent

Trainees or Analyst Trainees for entrance to or graduation from Basic Training.[4] *Id.* § VI.B; Ex.

C to Dkt. 100-2. Class Members were provided the Reinstatement Election Form (Ex. C to Dkt.

100-2) alongside the Class Action Notice and must return it within thirty (30) days of Final

Approval if they wish to pursue reinstatement. Dkt. 100-2, § VI.B; Ex. C to Dkt. 100-2. Class

Members who are ineligible to elect reinstatement were notified of their ineligibility to elect

reinstatement along with the Class Action Notice. *Id.* § VI.A.4.

  A Class Member who elects reinstatement as an Agent Trainee and successfully

graduates will be guaranteed placement in one of her top three field office preferences for her

first placement post-graduation. Dkt. 100-2, § VI.E.1. Additionally, once she has graduated and

completed the New Agent Development Program in her first field office as a Special Agent, the

FBI will adjust the Class Member's grade and step under the General Schedule pay scale for

federal employees to what it would have been had she graduated with her original class. *Id.*

§ VI.E.2.

  D. <u>Monetary Relief Provided by the Proposed Settlement</u>

  The proposed Agreement provides meaningful monetary relief to Class Members to

---

[4] If a Class Member does not graduate from Basic Training as the result of a test failure or lack of suitability unrelated to the Honor Code, FBI Core Values, FBI Standards of Conduct, or other misconduct, the FBI will either make every effort to place her in her previous field office if currently on staff, or she may seek a professional staff position within the FBI. Dkt. 100-2, § VI.D.2.

compensate them both for lost income and for the emotional distress they suffered as a result of the FBI's actions. Under the terms of the Agreement, the FBI will pay $22,100,000 into a Qualified Settlement Fund ("QSF"). Dkt. 100-2, § VII.E.1. This sum includes $19,400,000 for damages award payments to be made to Class Members and the employer portion of payroll taxes for the portions of the Damages Awards designated as wages ("Class Settlement Fund"). *Id.* § VII.E.2. It also includes $2,700,000 for attorneys' fees and costs (subject to Court approval) and third-party settlement administration expenses. *Id.* If any of the $500,000 allocated for the I/OP remains at the conclusion of their review, the remainder will be transferred by the FBI to the Settlement Administrator to add to the Class Settlement Fund for a subsequent distribution. *Id.* § VIII.C.5.

Plaintiffs submitted a detailed plan for allocation of the $19,400,000 of the Class Settlement Fund. Ex. H to Dkt. 100-2. The process will involve the completion of a Claim Form (Ex. B) and calculation of each Class Member's economic damages. Class Counsel will assist— and has already begun doing so—every Class Member with the Claim Form and calculations, unless the Class Member chooses not to accept such assistance. Each Class Member will receive a minimum of $50,000 for compensatory damages, regardless of whether she submits a Claim Form. Ex. H to Dkt. 100-2, § II.A.1. The economic damages will consist of back pay, interest on back pay, front pay, Thrift Savings Plan losses, pension losses, and other documented economic damages that resulted from Defendant's treatment of Class Members. However, if a Class Member elects reinstatement and is permitted to re-enroll at Basic Training, she will only be eligible to receive economic damages (including back pay, interest, Thrift Savings Plan losses, and other economic damages) accrued through December 31, 2024, and will not be eligible to receive front pay or pension loss adjustment as part of her damages award. Dkt. 100-2, § VI.D.1.

The consequences of electing reinstatement on a Class Member's potential Damages Award are clearly indicated in both the Class Action Notice (Ex. A to Dkt. 100-2 at 8) and the Reinstatement Election Form (Ex. C to Dkt. 100-2). Completed claim packets are due to Class Counsel sixty (60) days after Final Approval.

Completed claims packets will be submitted by Class Counsel to the Honorable Judge Ellen Huvelle (inactive), subject to the Court's approval of her as Appointed Neutral, who will determine the total Damages Award for each Class Member. *See* Ex. H to Dkt. 100-2, § II.B. (describing the proposed duties of the Appointed Neutral). As part of this process, the Appointed Neutral will determine compensatory damages for each Class Member beyond the $50,000 minimum based on a statement the Class Members will submit as part of their Claim Form and any medical records or documentation submitted to support their compensatory damages claim. *Id.* §§ III.F.2-3. After the Appointed Neutral determines what each Class Members' damages would be, unconstrained by the size of the Class Settlement Fund, the Settlement Administrator will calculate each Class Member's share of the total damages and allocate the Class Settlement Fund accordingly. Thus, if the total damages for all Class Members as determined by the Appointed Neutral exceeds the Class Settlement Fund, each Class Member's award will be reduced proportionately. *See id.* §§ III.C.2-3 (describing the method by which the Settlement Administrator will calculate each Class Member's final Damages Award).

E.    Attorneys' Fees and Costs

Plaintiffs submitted a Motion for Attorneys' Fees and Costs the same day as their Motion for Preliminary Approval. Dkt. 101. During mediation, the Parties negotiated monetary relief on behalf of the Class first, and then subsequently negotiated a separate amount for attorneys' fees and costs to ensure that any fees, costs, or expenses did not decrease the funds allocated for the Class Members. Plaintiffs' application for attorneys' fees and costs of $2,700,000 is not opposed

by Defendant. Dkt. 100-2, § IX.A. This amount is based on Class Counsel's lodestar and costs to date, as well as anticipated lodestar for both Class Counsel's work with Class Members throughout the claims process, as well as Class Counsel's participation in the I/OP review process.[5] The Court preliminarily found that the requested fees and costs did not appear to be excessive. Dkt. 104 at 4. In the over three months since filing their Preliminary Approval Motion, Plaintiffs have incurred an additional $269,673.28 in fees and $2,076.84 in costs as a result of Class Counsel's work during the notice and claims process. *See* Declaration of Christine E. Webber, attached as Exhibit 3 ("2d Webber Decl."), ¶¶ 9-11. Thus, Plaintiffs' current total lodestar plus costs is $2,543,596.53, and these figures will only continue to increase throughout the remainder of the settlement administration process. *Id.* ¶ 7; *see* Dkt. 101-3, ¶ 66.

## IV.   NOTICE AND CLAIMS PROCESS

The Parties have complied with the Court's Preliminary Approval Order directing notice to be distributed pursuant to the terms of the Settlement Agreement. *See* Dkt. 104 at 5. The period for Settlement Class Members to submit objections and requests for exclusion ended on December 13, 2024, and the reaction of the Settlement Classes has been uniformly positive, with no objections or requests for exclusion. 2d Webber Decl. ¶ 6. Class Counsel has already been working with Named Plaintiffs and absent class members to complete their claims forms. *Id.* ¶ 7. As a result, Plaintiffs anticipate that each Class Member will receive meaningful relief under the Settlement.

On October 21, 2024, Defendant provided to Class Counsel the last known addresses and

---

[5] Due to the small size of the Class, Class Counsel will be responsible for many of the administrative tasks a settlement administrator would normally undertake, such as issuing notice and receiving objections. Therefore, the cost for the Settlement Administrator will likely be encompassed by the interest earned on the $22,100,000 held in the QSF.

email addresses for each Class Member, as well as for the three individuals who fell within the original definition of the proposed class but did not fall within the definition of the Settlement Class. *Id.* ¶ 4; Dkt. 100-2, § IV.B.3. On October 29, 2024, Class Counsel sent by mail and email (where an email address was available) the Notice of Settlement, Claim Form, and Reinstatement Form to all Settlement Class Members. *Id.* ¶ 5; Exs. 4, 5, 6. The Notice informed Settlement Class Members that they could exclude themselves from the Settlement by submitting a written, signed statement emailed or postmarked by no later than December 13, 2024. *See* Ex. 4 at 12. The Notice also informed Settlement Class Members that if they did not request exclusion, they had the right to object to the proposed Settlement by written statement postmarked no later than December 13, 2024. *Id.* at 13. The anticipated date, time, and place of the Final Approval Hearing was included in the Notice as required by the Court. *See id.* at 5; Dkt. 104 at 5. Since September 30, 2024, Class Counsel have communicated with all but one of the Settlement Class Members. 2d Webber Decl. ¶ 6. No notices were returned as undeliverable. *Id.* No Class Members have opted out or objected to the Settlement. *Id.* On October 29, 2024, Class Counsel also notified by mail and email (where an email address was available) the three individuals who fell within the original definition of the proposed class but did not fall within the definition of the Settlement Class. *Id.* ¶ 5 n.1. Class Counsel has communicated with one of these individuals. *Id.*

## V.    ARGUMENT

Under Federal Rule of Civil Procedure 23(e), a Court may approve a proposed class action settlement if the Court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). While the district court has the authority to approve or reject proposed settlements, there is a "long-standing judicial attitude favoring class action settlements." *In re Vitamins Antitrust Litig.*, 305 F.Supp.2d 100, 103 (D.D.C. 2004) (internal citation omitted); *see also Trombley v. Nat'l City Bank*, 826 F.Supp.2d 179, 191-92 (D.D.C. 2011) ("Although the

Court should undertake careful scrutiny of the settlement terms, the discretion to reject a settlement is restrained by the principle of preference that encourages settlements." (internal quotations omitted)). When considering approving a proposed settlement agreement, the Court "need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy," but rather need only to decide that "the settlement is fair, adequate, reasonable, and appropriate[.]" *United States v. Dist. of Columbia*, 933 F.Supp. 42, 47 (D.D.C. 1996); *see also Kinard v. E. Capitol Fam. Rental, L.P.*, 331 F.R.D. 206, 215 (D.D.C. 2019). The proposed Settlement Agreement here satisfies the requirements of Rule 23(e), and Notice was adequate. Therefore, Plaintiffs' Motion should be granted.

      A.    <u>Notice Was Adequate</u>

      Notice "must be reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 490 (D.D.C. 2019) (citation omitted). The Class Action Notice (Ex. 4): informed Class Members of their legal rights and options (*id.* at 1, 3); provided background information about the case and the terms of the settlement agreement (*id.* at 4-9); and offered directions for how to object (*id.* at 13), opt-out (*id.* at 12), and submit a claim form (*id.* at 11-12). The Class Action Notice also clearly stated the consequences of objecting, opting out, or doing nothing, and of submitting a claim form or reinstatement election form. *Id.* at 3, 9, 10, 13, 14. Additionally, the Notice explained what factors will be considered in determining each Class Member's final monetary award (*id.* at 8-9) and provided contact information for Class Counsel if Class Members have questions or seek Class Counsel's assistance in calculating their economic damages. *Id.* at 14.

      Here, the Court has already determined that the Notice as proposed constituted the "best notice practicable under the circumstances" and satisfied Rule 23(e) and due process. Dkt. 104 at

4. The Parties have complied with this Court's Order to distribute Notice pursuant to the terms of the Settlement Agreement, the Notice was reasonably tailored to reach absent settlement class members, it contained all of the information required by Rule 23, and all Settlement Class Members were given sufficient opportunity to file an objection or request for exclusion. *See* Section IV.A *supra*. Thus, Notice was adequate.

      B.     <u>The Class Should be Certified for Settlement Purposes</u>

The Court previously found that the requirements of Rule 23 were met when it conditionally certified the Class for purposes of settlement. Dkt. 104 at 1-3. For the same reasons, the Court should now finally certify the Settlement Class.

      1.     <u>Plaintiffs Satisfy the Requirements of Rule 23(a)</u>

First, the Settlement Class is sufficiently large that joinder is impracticable, and therefore Rule 23(a)'s numerosity requirement is satisfied. Fed. R. Civ. P. 23(a)(1). The numerosity requirement does not impose "absolute limitations" or specify a threshold size a class must meet in order to be found sufficient; instead, it requires a fact-specific analysis to make that determination. *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 160 (D.D.C. 2014) (internal citation omitted); *Moore v. Napolitano*, 269 F.R.D. 21, 27 (D.D.C. 2010). The Class here of thirty-four members is fully consistent with the other cases from this Court finding numerosity satisfied by classes of 30-36 members. *Alvarez*, 303 F.R.D. at 160; *see also Meijer, Inc. v. Warner Chilcott Holdings Co.*, 246 F.R.D. 293, 307 (D.D.C. 2007) (numerosity satisfied for class with 30 members); *Coleman v. District of Columbia*, 306 F.R.D. 68, 81-82 (D.D.C. 2015) (numerosity satisfied for class with 34 members); *Moore*, 269 F.R.D. at 26 (numerosity satisfied for class with 36 members, and collecting cases holding same).

Second, there are several common questions of law and fact at issue, satisfying the commonality requirement of Fed. R. Civ. P. 23(a)(2). A common question is one that is "of such

a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Coleman*, 306 F.R.D. at 82 ("The touchstone of the commonality inquiry is 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" (quoting *Dukes*, 564 U.S. at 350)). All members of the Settlement Class were issued Suitability Notations and were subsequently called before and dismissed by a Trainee Review Board[6]—practices that Plaintiffs allege were used to discriminate against women Agent Trainees and that the OIG Report and discovery confirmed adversely impacted the Class Members. *See* Dkt. 96-1, ¶¶ 56-59, 61; Dkt. 100-3 at i. Whether the FBI's practices and policies at Basic Training violated Title VII is common to all members of the Settlement Class and can be satisfied using evidence common to the Class, therefore satisfying the Rule 23(a)(2) commonality requirement. *See Jones v. Chopra*, No. 18-2132, 2023 WL 6037295, at *4 (D.D.C. Sept. 15, 2023) ("the standard" for meeting the commonality requirement "is not demanding, as 'even a single common question' will do" (quoting *Dukes*, 564 U.S. at 359)).

Third, the Rule 23(a)(3) typicality requirement is satisfied. Typicality requires that "the representative parties' claims or defenses must be typical of the claims or defenses of the class." *Chopra*, 2023 WL 6037295, at *5. Typicality is satisfied when "the claims . . . of the representatives and the members of the class stem from . . . a unitary course of conduct[.]" *Id.* (quoting *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019)). Here, the Named Plaintiffs' claims and Class Members' claims arise out of the same course of conduct—the FBI's disciplinary

---

[6] Previously this was referred to as the New Agent Review Board, which was the name in use during the first several months of the class period.

policies, practices, and procedures at Basic Training that Plaintiffs allege had an adverse impact on female Agent Trainees when they were disproportionately issued Suitability Notations and disproportionately dismissed by Trainee Review Boards, as detailed above. The operative complaint details how each Named Plaintiff was subject to those same policies, practices, and procedures, issued Suitability Notations—often in circumstances where similar conduct from male Agent Trainees was not similarly punished—and then dismissed by a Trainee Review Board or New Agent Review Board. *See* Dkt. 96-1, ¶¶ 69-72 (Paula Bird); *id.* ¶¶ 85-90 (Clare Coetzer); *id.* ¶¶ 100-01 (Lauren Rose); *id.* ¶¶ 107-08 (Danielle Snider); *id.* ¶¶ 148-49 ("D.A."); *id.* ¶¶ 153-54, 156 ("S.B."); *id.* ¶¶ 160-63 ("D.C."); *id.* ¶¶ 168, 170 ("P.E."); *id.* ¶¶ 183-85 ("W.M."); *id.* ¶¶ 189-92 ("C.S."); *id.* ¶ 200 ("L.S."); *id.* ¶¶ 205-06 ("G.T."); *id.* ¶¶ 211, 213 ("T.S."). Each member of the Class was subject to the same policies and practices, was issued Suitability Notations, and was dismissed via a Trainee Review Board or New Agent Review Board. Therefore, typicality is satisfied.

Finally, both prongs of the Rule 23(a)(4) adequacy requirement are satisfied. Two criteria are used to determine whether proposed Class Representatives adequately protect the interests of the class: "(1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Chopra*, 2023 WL 6037295, at *5 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)). Named Plaintiffs Paula Bird, Clare Coetzer, Lauren Rose, Danielle Snider, "D.A.", "S.B.", "D.C.", "P.E.", "W.M.", "C.S.", "L.S.", "G.T.", and "T.S." have fully participated in this litigation for more than five years, including maintaining regular contact with their counsel, providing information and documents on counsel's request, familiarizing themselves with the facts and

issues presented in the case and participating in the months long mediation process. Since being appointed as Settlement Class Representatives, Dkt. 104 at 5, the Named Plaintiffs have continued to adequately represent the interests of the Class. There are no conflicts of interest between the Named Plaintiffs and the Class Members.

The Settlement Class is also adequately represented by qualified attorneys with significant experience in Title VII and other employment class actions. Plaintiffs are represented by the Washington, D.C. law firms Cohen Milstein Sellers & Toll PLLC, one of the leading plaintiff-side class action litigation firms in the country, and David Shaffer Law PLLC, who specializes in civil rights class actions against federal law enforcement agencies on behalf of women, people of color, and individuals with disabilities. *See* Dkt. 100-2, 101-3. Therefore, both prongs of the Rule 23(a)(4) adequacy requirement, as well as Rule 23(g), are satisfied, and Plaintiffs have met all the requirements of Rule 23(a).

2.    <u>Plaintiffs Satisfy the Requirements of Rule 23(b)(3)</u>

Plaintiffs seek certification of a Rule 23(b)(3) class, which requires "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy both predominance and superiority.

To meet the Rule 23(b)(3) predominance requirements, "the plaintiffs must show that the issues identified as common in the Rule 23(a) commonality inquiry predominate over non-common issues for both their pattern and practice claim and their disparate impact claim." *Moore v. Napolitano*, 926 F.Supp.2d 8, 33 (D.D.C. 2013) (citing *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)); *see also Chopra*, 2023 WL 6037295, at *6 (the predominance inquiry "turns on 'whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating individual issues.'"

15

(quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016))). The common, aggregation-enabling questions identified above affect all Class Members in the same way. Therefore, they predominate over any individual issues that may be present.

To demonstrate disparate treatment by the FBI, Plaintiffs must establish generalized, class-wide proof of a systemwide pattern or practice that is closer to a "standard operating procedure" than isolated occurrence. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). To establish their disparate impact claim, Plaintiffs must identify "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another[.]" *Moore*, 926 F.Supp.2d at 19 (quoting *Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C. Cir. 1999)). Then, Plaintiffs must present statistical evidence that the practice has an adverse impact on women. *See id.* (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1998)).

Using the common evidence detailed above, including the statistics in the OIG report regarding the disproportionate rates of Suitability Notations issued to and the dismissals of female versus male Agent Trainees, Plaintiffs can sufficiently satisfy their burden to demonstrate "that unlawful discrimination has been a regular procedure or policy." *Teamsters*, 431 U.S. at 360. Further, Plaintiffs have identified the Suitability Notation system and the Trainee Review Board processes as facially neutral policies, and the OIG report contains evidence showing those processes had an adverse impact on women Agent Trainees. Whether there was a standard operating procedure and whether there was disparate impact are questions that would be answered in the same way for all class members.

If Plaintiffs succeeded in establishing either systemic disparate treatment or a disparate impact, a presumption of discrimination would then apply to all Class Members. *Id.* at 362.

While individualized questions on damages may remain, those questions could be addressed in individual *Teamsters* hearings—which, for thirty-four Class Members, would be entirely manageable. *Id.* at 361. Those individual issues do not predominate over the common issues discussed above and do not bar certification. *Id.* Because common questions are more significant than individualized ones, the proposed Class is "sufficiently cohesive to warrant adjudication by representation" and satisfies the predominance inquiry. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Superiority requires a showing that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The requirement ensures that class action resolution will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences.'" *Chopra*, 2023 WL 6037295, at *6 (quoting *Amchem Prods.*, 521 U.S. at 615). A class action is the superior method for adjudicating this case due to the uniformity of the issues faced by Plaintiffs. Therefore, both requirements of Rule 23(b)(3) are satisfied, and the Class should be certified for settlement purposes.

C.    The Settlement Agreement Is Fair, Reasonable, and Adequate

Final approval should be granted if the Court finds that the proposed settlement agreement is fair, reasonable, and adequate, and that it was "not the product of collusion between the parties." *Little v. Wash. Metro. Area Transit Auth.*, 313 F.Supp.3d 27, 33 (D.D.C. 2018). In considering a proposed settlement, "the district court's duty is to the class members themselves[.]" *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000); *see also In re Vitamins Antitrust Litig.*, 305 F.Supp.2d at 103-04 ("Generally, in determining whether settlement should be approved, courts consider. . . whether the interests of the class as a whole

17

are being served if the litigation is resolved by settlement rather than pursued." (internal

quotations omitted)). To determine whether a proposed settlement is fair, reasonable, and

adequate, courts in this circuit generally consider the following factors: (1) whether the

settlement is the result of arm's length negotiations; (2) the terms of the settlement in relation to

the strength of the plaintiffs' case; (3) the status of the litigation at the time of settlement; (4) the

reaction of the class; and (5) the opinion of experienced counsel. *Trombley*, 826 F.Supp.2d at

194; *In re Vitamins Antitrust Litig.*, 305 F.Supp.2d at 104. The proposed Settlement Agreement

satisfies all five of these factors. Therefore, the Court should direct notice be issued to the Class

Members.

1.     The Agreement Is the Result of Arm's Length Negotiations by
       Experienced Counsel

This proposed Agreement was reached after months of negotiations between experienced

counsel, and after over two years of discovery was conducted. Based on these factors, a

"presumption of fairness, adequacy and reasonableness" attaches. *In re Vitamins Antitrust Litig.*,

305 F.Supp.2d at 104. The lengthy negotiations that preceded this Agreement were facilitated by

the D.C. Circuit Executive's Mediation Program. Thus, the Court can be assured that the

Agreement was the result of arms-length negotiations that protected the interests of all Class

Members.

2.     The Terms of the Proposed Settlement Agreement Provide Class Members
       with Appropriate Relief

Next, "[t]he Court must evaluate the relief provided in the proposed settlement against

the relative strength of the plaintiffs' case, including their ability to obtain recovery at trial."

*Trombley*, 826 F.Supp.2d at 195 (internal citations omitted). Here, the terms of the Agreement

would provide significant relief that Plaintiffs set out to achieve at the outset of the litigation.

The Agreement includes not only substantial monetary relief, but also programmatic relief in the

form of the I/OP review, and the opportunity to elect reinstatement. The monetary relief, enough to average $570,000 per Class Member, and the review and recommendations for programmatic changes by two preeminent experts both present significant benefits to the Class that may not be available even if Plaintiffs were successful at trial. While it is possible some Class Members might be able to obtain greater monetary awards after a successful trial, such awards would depend on finding a lengthy award of front pay appropriate, one sufficient to trigger the full 20-year Special Agent Pension. Obtaining this level of relief is not a foregone conclusion, even with success on the merits. *See Alvarez*, 303 F.R.D. at 164 (noting that the potential for greater monetary recovery for wage claims "would ultimately be somewhat discounted, given the uncertainty of recovering such damages and the time and money that it would have taken to litigate this case to a verdict"). Juxtaposing the potential significant recovery and relief afforded to Plaintiffs by the proposed Agreement with the risks inherit to continued litigation, the proposed Agreement is fair, reasonable, and adequate, and this factor should weigh in favor of a finding as such.

### 3.   Settlement Is Appropriate at this Stage of Litigation

"[A] settlement should not 'come too early to be suspicious nor too late to be a waste of resources;' rather it should be proposed 'at a desirable point in the litigation for the parties to reach an agreement to resolve these issues without further delay, expense, and litigation.'" *Abraha v. Colonial Parking, Inc.*, No. 16-680, 2020 WL 4432250, at *9 (D.D.C. July 31, 2020) (quoting *Cohen v. Chilcott*, 522 F.Supp.2d 105, 117 (D.D.C. 2007)). To determine when this "desirable point" in the ligation falls, courts consider "whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery." *Id.* (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99MS276, 2003 WL 22037741, at *4 (D.D.C. June 16, 2003)).

This Agreement was reached at a desirable point in the litigation. Extensive document discovery has been completed, as discussed above, to understand the strengths and weaknesses of the claims at issue and the evidence supporting those claims, but resources have not yet been exhausted on depositions or completing expert reports. As noted above, both Parties have responded to multiple sets of document request and interrogatories, and nearly twenty thousand documents have been produced. *See Stephens*, 329 F.R.D. at 488 ("Particularly at the preliminary approval stage, 'it is enough that the parties represent that formal and informal discovery facilitated a significant investigation of the relevant facts contributing to arms-length settlement negotiation." (quoting *Trombley*, 759 F.Supp.2d at 26)).

Moreover, given the amount of time that has lapsed since the action was filed, several Plaintiffs have since aged out of being able to apply for admission to Basic Training without receiving an age waiver first (which the Settlement Agreement provides for, *see* Dkt. 100-2, § VI.B.1.a.ii). Several Plaintiffs who plan on electing reinstatement have been waiting for years for the opportunity to re-enroll at Basic Training and begin anew their path to becoming an FBI Special Agent. If the parties were to continue to litigate, and continue to trial, more Plaintiffs and Class Members would age out of being able to be reinstated to Basic Training *sans* age waiver, and they would continue growing in their current jobs and lives, further complicating their potential ability to re-enroll at Basic Training. *See Luevano v. Campbell*, 93 F.R.D. 68, 89 (D.D.C. 1981) ("Even putting aside all consideration of the risks of litigation, the delay in providing relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties."). Therefore, because the Parties have engaged in discovery that has facilitated a sufficient investigation of the facts, strengths, and weaknesses of their case, and the urgency of resolution due to the age of the Plaintiffs and their ability to be reinstated, this

action has reached an appropriate stage to settle. This factor should weigh in favor of approving this proposed Agreement.

D.    The Named Plaintiffs, Class Members, and Experienced Counsel Approve of the Agreement

The thirteen Named Plaintiffs approve of the proposed Agreement and comprise nearly 40% of the Class Members. Their views were indeed representative of the class—no class members have objected or opted out. Additionally, "it is well established that the opinion of experienced counsel 'should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'" *Alvarez*, 303 F.R.D. at 164 (quoting *Chilcott*, 522 F.Supp.2d at 121). The proposed Agreement was negotiated with the expert assistance of the mediators of the D.C. Circuit Executive's Mediation Program, and agreed to by Counsel from both parties, who are all experienced litigators in their own rights. Therefore, the opinions of the Named Plaintiffs, Class Members, and qualified counsel that the settlement is fair, adequate, and reasonable should weigh in favor of approving this proposed Agreement.

**VI.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Unopposed Motion and Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs, Dkt. 101.

January 2, 2025                                      Respectfully submitted,

                                                    */s/ Christine E. Webber*
                                                    Joseph M. Sellers (#318410)
                                                    Christine E. Webber (#439368)
                                                    Rebecca A. Ojserkis (#1781442)
                                                    Dana Busgang (#90006138)
                                                    Cohen Milstein Sellers & Toll PLLC
                                                    1100 New York Ave. NW, Suite 800
                                                    Washington, DC 20005
                                                    (202) 408-4600
                                                    jsellers@cohenmilstein.com
                                                    cwebber@cohenmilstein.com

rojserkis@cohenmilstein.com
dbusgang@cohenmilstein.com

David J. Shaffer (#413484)
David Shaffer Law PLLC
5012 Aurora Dr.
Kensington, MD 20895
(202) 508-1490
david.shaffer@davidshafferlaw.com

*Attorneys for Plaintiffs*